IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| MARK MOORE, MICHAEL HARROD, and WILLIAM CHRIS JOHNSON, ....Plaintiffs | ) ) ) ) ) | |
| v. | ) ) | Case No. 4:14-cv-00065-JM |
| MARK MARTIN, in his official capacity as Secretary of State for the State of Arkansas; ....Defendant. | ) ) ) ) ) ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT**

I.  STATEMENT OF THE ISSUES IN QUESTION

The instant case is a ballot access case in behalf of three individuals who are Independent candidates for elective office in Arkansas.  On April 7, 2014, the Defendant Mark Martin, Secretary of State for the State of Arkansas (hereinafter sometimes referred to as "Secretary of State") filed a Motion to Dismiss and Alternative Motion for More Definite Statement along with a Brief in Support [Doc. Nos. 6 and 7].  The Secretary of State's pleadings allege that Plaintiffs lack standing, the Court does not have jurisdiction because there is no case or controversy pursuant to Article III of the United States Constitution, Plaintiffs' complaint fails to state a claim upon which relief can be granted, a necessary party Defendant is missing for the Plaintiff William Chris Johnson, and Plaintiffs' complaint is so vague and ambiguous that the Court—if it does not dismiss the case—should require the Plaintiffs to provide a more definite statement of their claims and contentions by granting the Secretary of State's Motion for More Definite Statement.  Since the complained of election laws have been the subject of numerous decisions by the United States District Court for the Eastern District of Arkansas which have established precedent for this case, there is a clear case or controversy raised by Plaintiffs' complaint for Independent candidates for the 2014 election cycle—as well as future election cycles, so as to grant Plaintiffs standing, and the

claims and contentions of Plaintiffs are clear and not ambiguous, so that the Defendant Secretary of State's Motion to Dismiss and Alternate Motion for More Definite Statement are without merit and, therefore, should be denied.

## II.  STANDARD OF REVIEW

While Defendant Secretary of State's motion to dismiss has attacked Plaintiffs' standing to continue their Constitutional challenge to certain Arkansas election statutes which require an early petition filing deadline, limited petitioning time, and an unfavorable petitioning period, it is well settled that a Court in ruling on such a challenge to standing must accept as true all material allegations of the Plaintiffs' complaint, and construe the complaint in favor of the Plaintiffs. *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 109 (1979).  The essence of Plaintiffs' complaint herein is that the challenged Arkansas election laws requiring an early March deadline for petition signatures and declarations of candidacy are unconstitutionally burdensome and early because of arbitrariness, vagueness, and lack of necessity to serve any compelling state interest.  Motions to Dismiss pursuant to Fed. R. Civ. Proc. 12(b) (6) are not viewed with favor.  So strongly is the Motion to Dismiss held in disfavor that generally, a complaint may be dismissed as a matter of law for two reasons: (1) lack of any cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  *Kentucky Central Life Ins. Co. v. LeDuc*, 814 F.Supp. 832, 835 (N.D. Cal. 1992); and *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992).  As one United States Court of Appeals has stated: "Generally, a motion to dismiss on the grounds that Petition does not state a claim on which relief can be granted, admits all facts well pleaded, and the legal question presented thereby is governed by the facts as pleaded." *Galbreath v. Metropolitan Trust Co.,* 134 F.2d 569, 570 (10th Cir. 1943).  Further, at least one Circuit Court of Appeals has held that to dismiss under a Fed. R. Civ. Proc. 12(b)(6) Motion "It must appear to be a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Wool v. Tandem Computers, Inc.,* 818 F.2d 433, 439 (9th Cir. 1987).  More importantly, the United States Supreme Court has stated that a

claim should not be dismissed for failure to state a claim ". . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Finally, in regard to a Motion for More Definite Statement under Fed. R. Civ. Proc. 12(e), the U.S. Supreme Court has not required the complaint of a plaintiff to set out in detail the facts upon which the claim is based, but rather all that is required is short and plain statement of the claim that will give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests. *Conley v. Gibson, Id.* Fed. R. Civ. Proc. 12(e) was designed to strike at unintelligibility rather than want of detail. *Juneau Square Corp. v. First Wisconsin Nat'l. Bank,* 60 F.R.D. 46, 17 F.R.Serv.2d 940 (E.D. Wis. 1973).

### III.  ARGUMENT AND AUTHORITIES

This case is a ballot access case on behalf of individual Arkansas voters and candidates for elective office. Plaintiffs seek declaratory and injunctive relief from the Court. Plaintiffs specifically seek to have ARK. CODE ANN., §§ 7-7-101, 7-7-103, and 7-7-203(c)(1) as applied to the Plaintiffs herein for the 2014 Arkansas General Election and all subsequent general elections in the State of Arkansas and the facts and circumstances relating thereto, declared unconstitutional. The aforesaid Arkansas election laws complained of serve to keep off the Arkansas ballot the names of Plaintiffs as independent candidates for the Arkansas general election ballot, and should be permanently enjoined from being enforced for the reason that said laws violate in their application Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, § 1983, in that said laws are unnecessarily burdensome, oppressive, discriminatory, unnecessarily early in setting up a deadline, vague,

arbitrary, and further, violate Plaintiffs' rights to equal protection and due process of the law. In essence, Arkansas has set up an unconstitutional discrimination by requiring Independent candidates to file petitions and other documents well before the general and primary elections in Arkansas. While such discrimination can be justified from the standpoint of ballot access for the formation of new political parties, it cannot be justified and is unconstitutional when applied to Independent candidates and their campaigns because of the heightened constitutional scrutiny required to judge state election laws which regulate Independent candidates and their supporters. Also, the March 1 deadline of ARK. CODE ANN., §§ 7-7-103 and 7-7-203(c)(1)—which is Monday, March 3, in the 2014 election cycle--is before the preferential primary election of the Republican and Democratic parties on May 20, 2014, as well as more than three months before the Arkansas General Primary runoff election on June 10, 2014, and more than eight months before the Arkansas General Election on November 4, 2014. The issue of too early a deadline and/or the petition signature requirement for Independent candidates in Arkansas has been addressed to one extent or another in numerous previous cases decided by this Court. *Lendall v. Bryant*, 387 F.Supp. 397 (E.D. Ark., 1975) (hereinafter *Lendall I*); Lendall *v. Jernigan*, No. LR-76-C-184, *aff'd mem.*, 433 U.S. 901 (1977) (hereinafter *Lendall II*); *Lendall v. Jernigan*, 424 F.Supp. 951 (E.D. Ark., 1977) (hereinafter *Lendall III*); Rock v. Bryant, 459 F. Supp. 64 (E.D. Ark., W.D. 1978); and *Lendall v. McCuen*, No. LR-C-88-311 (E.D. Ark., W.D., Aug. 16, 1988) (hereafter *Lendall IV*).

This proceeding also seeks an injunction, both temporary and permanent, against Defendant Secretary of State, prohibiting him from following and enforcing the provisions of Ark. Code. Ann. §§ 7-7-101, 7-7-103, and 7-7-203(c)(1) as applied to the Plaintiffs herein for the 2014 Arkansas General Election, and all subsequent Arkansas General Elections, to the extent that said statutes set

4

an unconstitutional early and vague deadline of March 3, 2014, during election years for Independent candidates, coupled with a loss of two months of petitioning time closer to the election as a result of the Arkansas Legislature in 2013, moving the Independent candidate petition deadline from May to March of the General Election year, along with the requirement for the gathering of numerous petition signatures at a time when the weather is not as good nor the political interest as high as in the petitioning time period allowed by the previous law.  Ark. Code Ann., § 7-7-103(b)(1)(A) was amended in 2013 to move the petition filing deadline for independent candidates from May 1 of an election year to the party filing period for the year in which the election is to be held.  Amended by laws 2013, Act 1356 (HB 2036).  However, because of the requirements of Ark. Code Ann., §§ 7-1-108 and 7-7-203(c)(1), the petition filing deadline for independent candidates for 2014 will be on Monday, March 3, 2014.  The foregoing change in the ballot access law for independent candidates made petitioning even more difficult by setting a petitioning deadline farther away from the date of the Arkansas General Election when political interest among the voting public is less and placing the ninety (90) day petitioning time during weather conditions in December, January, and February when Arkansas weather is generally not the most conducive for petitioning, the hours of daylight after normal working hours are minimal, and the holidays take many voters out of their place of residence.

On the 3rd day of March, 2014, the independent candidates were required to turn in petition signatures for recognition and certification of themselves as independent candidates under the current election laws in question at a time when there is relatively less interest in politics, there is uncertainty as to who the major party candidates will be and what issues they will campaign on, and the unsettled final results of who will be nominated as the major party candidates.  Under current

Arkansas law, 10,000 valid petition signatures of registered Arkansas voters are required for a statewide independent candidate, with three percent required for districts or counties.  Arkansas's unnecessarily early aforesaid petition signature deadline for independent candidates, coupled with the petition signature requirement, the lowered political interest of the voting public further removed from the election dates in Arkansas, and the inconvenient petitioning time period is unconstitutional, is constitutionally unnecessary and vague, lacks any compelling interest, and unequally and unfairly impacts in a discriminatory manner the rights of Independent candidates in Arkansas.

There is no merit to the Secretary of State's contention that Plaintiffs lack standing and that their complaint was, in fact, filed too early to create a case or controversy under Article III of the United States Constitution.  In reviewing ballot regulations "our primary concern is not the interest of [the] candidate . . . but rather, the interests of the voters who chose to associate together to express their support for [that] candidacy and the views . . . espoused." *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983).  The Plaintiffs herein are both candidates and voters and, thus, have ". . . standing to challenge a state law regulating elections when that law 'would restrict [their] ability to vote for the candidate of [their] choice or dilute the effect of [their] vote if [their] chosen candidate were not fairly presented to the voting public.'" *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (holding that voter had standing to challenge ballot access law that he claimed was overly restrictive in signature requirements and deadlines).  Also see, *Miller v. Moore*, 169 F.3d 1119. 1123 (8th Cir. 1999).  In order to show standing and invoke a federal trial court's jurisdiction, a litigant "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

Plaintiffs face in the laws challenged herein a "sufficiently particularized and concrete injury" to give them standing in this case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In fact, the *Lujan* case was cited and quoted by the Eighth Circuit in its recent decision on standing in the case of *Constitution Party of South Dakota v. Nelson*, 639 F.3d 417 (8th Cir. 2011).  The injury in fact which the Plaintiffs have suffered in the instant case is the unconstitutional deadline for independent candidates--which can be redressed by a favorable decision in the granting of a later filing deadline for petitions and other required documents and/or the placement of Plaintiffs on the ballot.  Certainly, as noted by the U.S. Supreme Court in *Lujan*, "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  *Lujan v. Defenders of Wildlife*, 504 U.S. at 561; quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).  In contrast, the recent Eighth Circuit decision in *Constitution Party of South Dakota v. Nelson* concerned a decision on a motion for summary judgment, not a motion to dismiss.

As to the issue of whether the case at bar presents a case or controversy, the Court should consider the prior related decisions by this Court and the threatened harm to the Plaintiffs in their role as both candidates and voters.

> The basic inquiry in determining whether a case or controversy exists is whether the "conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Thus the requirement focuses on the issues in the case rather than on the party seeking to present them.  The difference between a case or controversy and an abstract question is, however, one of degree and "is not discernable by any precise test."  It depends on, among other factors, the imminence of the harm, the adversariness of the parties' positions, and the reality of injury to the plaintiff.  *KVUE, Inc. v. Austin Broadcasting Corp.*, 709 F.2d 922, 927

(5th Cir. 1983) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945); and *Babbitt*, 442 U.S. at 297).

The unnecessarily early petition deadline for Independent candidates in Arkansas is subject to a challenge by potential candidates and there is no merit in an argument alleging that the case has been filed too soon.  Likewise, if the deadline for turning in petitions is unconstitutionally too soon, so are other requirements which are impacted by that deadline.  Not only do the Plaintiffs have standing, but they bring up issues which will impact future elections as they asserted in their complaint and, therefore, the issues raised herein are capable of repetition yet evading review.  Numerous ballot access cases have allowed cases to continue even after the elections are over which the candidates and their supporters were contesting.  It is well established that ballot access cases are cases were the controversy is "capable of repetition, yet evading review" and, therefore, an exception to the usual mootness rule which would deny Plaintiffs' standing.  *Anderson v. Celebrezze,* 460 U.S. 780, 784 n.3 (1983); *Mandel v. Bradley*, 432 U.S. 173, 175 n.1 (1977); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 332 n.2 (1972); *Moore v. Ogilvie,* 394 U.S. 814, 816 (1969); and *McLain v. Meier,* 637 F.2d 1159, 1162 n.5 (8th Cir. 1980).  Because the election laws in question herein will affect candidates in similar situations in future elections, this case presents a controversy capable of repetition, yet evading review.  As the Eighth Circuit has commented, regardless of the Plaintiff's ". . . candidacy in any future election, election law controversies tend not to become moot."  *McLain v. Meier, Id*.  Thus, Plaintiffs have standing under Article III of the U.S. Constitution.  In the context of election cases, application of the doctrine is appropriate in both "as applied" challenges as well as facial challenges. *Storer v. Brown,* 415 U.S. at 737 n.8.  Further, the

doctrine should be applied to election statutes when "[t]he construction of the statute, and understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held. *Id.*

In considering Defendant Secretary of State's next argument that Plaintiffs' Complaint fails to state a claim upon which relief can be granted, the Court should consider that Arkansas has previously had deadlines for Independent candidates and political party candidates declared unconstitutional which were both much more liberal and closer to the primary and general elections and more restrictive than currently exists in the election laws at issue herein. *Lendall v. Jernigan*, No. LR-76-C-184, *aff'd mem.*, 433 U.S. 901 (1977) (*Lendall II*); *Lendall v. Jernigan*, 424 F.Supp. 951 (E.D. Ark. 1977) (*Lendall III*), *Green Party of Arkansas v. Priest*, 159 F.Supp.2d 1140 (E.D. Ark. 2001).  Therefore, in that regard, the "binding precedent which this Court must follow is the case of . . . *Lendall II* in which the sole issue was the deadline for filing petitions by independent candidates.  In *Lendall II,* which was affirmed by the United States Supreme Court without opinion, the three-judge panel held that the first Tuesday in April was an unconstitutionally early deadline." *Lendall IV* at 5.  Then*, in Lendall III*, the Chief Judge of this Court, "who was one of the members of the three-judge panel in *Lendall II*, again made the ruling of the Court in that case abundantly clear:"

> At the time of three-judge court decision in the second proceeding (*Lendall II),* we concluded that in no event could the April deadline be justified for independent candidates. *Lendall III*, 424 F.Supp. at 954; *Lendall IV*, at 5-6.

Therefore, since this Court has held a filing deadline in early April to be unconstitutional, and this Court in *Lendall III* recognized that a rule had been laid down to which the Court must adhere,

therefore a filing deadline in early April was unconstitutional, and the Court found that a filing deadline in *Lendall IV* was also unconstitutional. Further, the Court in *Lendall IV,* while finding that "Mr. Lendall made no attempt to comply with the January filing deadline", was convinced ". . . that this factor alone would not factually distinguish this case from the clear ruling of *Lendall II* that any filing deadline set for independent candidates before the first Tuesday in April is unconstitutional." *Lendall IV,* at 6.  Thus, a filing deadline in early March for Independent candidates is also unconstitutional.  To ignore the history of this litigation and the facts that were the bases for this Court's prior rulings, is unrealistic, imprudent and contrary to applicable law. As the Supreme Court observed in an election controversy, the historical record of political parties' participation in elections is relevant as "[p]ast experience will be a helpful, if not always an unerring, guide." *Storer*, 415 U.S. at 742.  In addition, for Plaintiffs' equal protection claim based upon the effects of Ark. Code Ann. § 2-13-107(f), the U.S. Supreme Court stated in an election controversy: "In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification". *Williams v. Rhodes*, 393 U.S. 23, at 31 (1968). (emphasis added and footnote omitted).  Thus, in deciding this current controversy that directly impacts the named Plaintiffs, the Court should consider this challenge to be an "as applied" challenge.

In addition in deciding whether Plaintiffs' complaint states a claim upon which relief can be granted in the instant case, the Court should also consider carefully in judging the early deadline question the cases of *Anderson v. Celebrezze, Id.*; and *McCarthy v. Noel*, 420 F.Supp. 799 (D.R.I. 1976).  These two cases paid particular attention as to the date of the election and the primary

election in comparison to the petitioning deadline date. Thus, one of the earlier cases decided by a Federal Court in Rhode Island struck down as unconstitutional a deadline of August 12, 1976, which was about a month before the state primary was set. Additionally, the Rhode Island Federal Court noted that while only 1,000 signatures were even required to obtain ballot status for an Independent presidential candidate, only 519 had been collected by the August 12, 1976, deadline of which only 382 were valid. *McCarthy v. Noel,* 420 F.Supp. at 801. However, the Court went on to note that by August 22, 1976, an additional 1,210 signatures had been collected as petitioning efforts had continued, of which 744 signatures were accepted, 141 were tendered but not accepted, and 325 signatures were in possession of the supporters of Senator McCarthy but were not tendered. As the *McCarthy v. Noel* Court went on to say

> [T]he early deadline is unfair to plaintiffs in their circumstances, and an unnecessary burden on their rights. The goals of the stability and integrity of the political process can effectively be served by a filing deadline later than August 22 (the date on which plaintiff had tendered sufficient signatures to qualify). These goals would be better served and less burdensome to independents by a deadline related to the analogous events of state primaries, major party nominations, and elector-designations.
>
> * * * *
>
> . . . [T]he Court places particular emphasis on the fact that Rhode Island cannot finalize its ballot until after the party primary; there is thus simply no meaningful justification under the cases for requiring independents to qualify a month earlier than that. *McCarthy v. Noel, supra,* at 803.

The final part of the *Anderson* test is that the Court must consider the extent to which legitimate state interests make it necessary to burden the rights of the Plaintiffs. *Anderson v. Celebrezze, Id.*, at 789. Considering the pleading stage of the case at bar, these factors should all be considered upon either trial or motion for summary judgment.

In regard to the Secretary of State's claim that the Plaintiff William Chris Johnson should have joined a necessary defendant, viz.: the County Clerk of White County, Plaintiffs disagree. The County Clerk of White County is not necessary for any declaratory relief declaring the laws in question unconstitutional as same relate to Mr. Johnson, nor is the County Clerk of White County necessary for injunctive relief that would extend the petitioning time or even order Mr. Johnson placed on the ballot. It is inconceivable that the County Clerk of White County would enforce an unconstitutional law pending a favorable ruling by this court. In any event, the Secretary of State cites no cases under this portion of his brief, and since it only applies potentially to injunctive relief and not the declaratory relief requested, this portion of the Secretary of State's argument is premature and without merit.

As to the final request by the Secretary of State for the granting of his Motion for More Definite Statement under Fed. R. Civ. Proc. 12(e), the standard set forth by the U.S. Supreme Court in *Connelly v. Gibson*, *Id.,* requires that a claim set out its allegations in a short and plain statement that gives the Defendant fair notice of what the claim is and the grounds upon which it rests. It seems to Plaintiffs that this has been done in their Complaint and Defendant's brief seems to indicate that they have sufficient understanding of Plaintiffs' claims. Plaintiffs have asserted an injury by a deadline which is clearly unconstitutional under prior rulings of this Court. The requirements of the Secretary of State's job involve his enforcement of the laws in question. What remedy the Court should grant should be decided upon proper hearing. As stated in the standard of review hereinabove, Fed. R. Civ. Proc. 12(e) was designed to strike at unintelligibility rather than want of detail. *Juneau Square Corp. v. First Wisconsin Nat'l Bank, Id.*

IV.  CONCLUSION

WHEREFORE, premises considered, the Plaintiffs herein pray that this Court will deny Defendant's Motion to Dismiss and Alternative Motion for More Definite Statement.

Respectfully submitted this 15th day of April, 2014.

    MARK MOORE, MICHAEL HARROD, and
    WILLIAM CHRIS JOHNSON, Plaintiffs

    /s/ James C. Linger
    James C. Linger, OBA #5441
    *Counsel for Plaintiffs*
    1710 South Boston Avenue
    Tulsa, OK 74119-4810
    Telephone (918) 585-2797
    Facsimile (918) 583-8283
    bostonbarristers@tulsacoxmail.com

    JEFF ROSENZWEIG, AB No. 77115
    *Counsel for Plaintiffs*
    300 Spring Street, Suite 310
    Little Rock, Arkansas 72201
    Telephone (501) 372-5247
    Facsimile (501) 376-0770
    jrosenzweig@att.net

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record via the Court's CM/ECF e-mail notification system on the 15th day of April, 2014.

    /s/ James C. Linger
    James C. Linger