IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

_____
                                                          )
MARK MOORE, MICHAEL HARROD,        )
and WILLIAM CHRIS JOHNSON,             )
                                        ....Plaintiffs       )
                                                          )
        v.                                                )        Case No. 4:14-cv-00065-JM
                                                          )
MARK MARTIN, in his official               )
capacity as Secretary of State             )
for the State of Arkansas;                    )
                                        ....Defendant.   )
_____ )

**PLAINTIFFS' RESPONSE AND MEMORANDUM BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.  STATEMENT OF THE CASE AND ISSUES IN QUESTION

The case at bar is a ballot access case which challenges certain election laws of Arkansas

which govern ballot access for independent candidates.  Plaintiffs are registered Arkansas voters,

were unsuccessful in meeting petitioning requirements as Independent candidates for the 2014

General Election in Arkansas, and are potential future independent candidates in the State of

Arkansas.  The Court previously entered a final scheduling order on September 17, 2014 [Doc. No.

15], which set a discovery cutoff date of March 6, 2015, a deadline for all motions, with the

exception of motions in limine, for May 13, 2015, and a bench trial for sometime during the week

of July 27, 2015.   While the 2014 General Election in Arkansas is over, the instant case involves an

important, continuing constitutional issue which is capable of repetition.

On November 26, 2014, the Defendant Mark Martin, Secretary of State for the State of

Arkansas (hereinafter sometimes referred to as "Secretary of State") filed a Motion for Summary

Judgment, Brief in Support of Motion for Summary Judgment, and Statement of Material Facts Not

in Dispute [Doc. Nos. 16, 17, and 18].  The Defendant Secretary of State's aforesaid Motion for

Summary Judgment, Supporting Brief, and Statement of Material Facts Not in Dispute are to a certain extent an expanded version of Defendant's previously filed Motion to Dismiss and Alternative Motion for More Definite Statement and Supporting Brief [Doc. Nos. 6 and 7], filed on April 7, 2014, which was denied by this Court on August 4, 2014 [Doc. No. 13]. On December 10, 2014, an unopposed Motion for Extension of Time to File Response to Defendant's Motion for Summary Judgment [Doc. No. 19] was filed by Plaintiffs, and, on December 12, 2014, the Court granted Plaintiffs' request to extend the time to file their response to Defendant's summary judgment motion up to and including December 29, 2014.

The Secretary of State's aforesaid pleadings allege that Plaintiffs lack standing, the Court does not have jurisdiction because there is no case or controversy pursuant to Article III of the United States Constitution, the case is now moot because the Arkansas 2014 General Election is over, and a necessary party defendant has not been joined in the case. Since the complained of election laws have been the subject of numerous decisions by the United States District Court for the Eastern District of Arkansas which have established precedent for this case, there is a clear case or controversy raised by Plaintiffs' case for Independent candidates in Arkansas for future election cycles, so as to grant Plaintiffs standing as both Arkansas voters and potential candidates in the future, and the case at bar is not moot because a decision by this Court granting declaratory and injunctive relief can not only settle an important constitutional issue which is capable of repetition in the future, but such declaratory and injunctive relief can allow a remedy in line with the Court's decision which will allow the Legislature of Arkansas to timely address the problem before the next General Election cycle in Arkansas in the year 2016.

Ark. Code. Ann. §§ 7-7-101, 7-7-103, and 7-7-203(c)(1) as those provisions applied to the

Plaintiffs herein for the recent 2014 Arkansas General Election cycle, and all subsequent Arkansas General Election cycles, set an unconstitutional early and vague deadline of March 3, 2014 (or March 1 for future deadlines for Independent candidate petitions),[1] during election years for Independent candidates and their supporters.  Ark. Code Ann., § 7-7-103(b)(1)(A) was amended in 2013 to move the petition filing deadline for independent candidates from May 1 of an election year to the party filing period for the year in which the election is to be held.  Amended by laws 2013, Act 1356 (HB 2036).  Because of the requirements of Ark. Code Ann., §§ 7-1-108 and 7-7-203(c)(1), the petition filing deadline for independent candidates for 2014 was Monday, March 3, 2014, but will normally be on March 1 in future general election years.  The foregoing change in the ballot access law for independent candidates made petitioning even more difficult by setting a petitioning deadline farther away from the date of the Arkansas General Election when political interest among the voting public is less and placing the ninety (90) day petitioning time during weather conditions in December, January, and February when Arkansas weather is generally not the most conducive for petitioning, the hours of daylight after normal working hours are minimal, and the holidays take many voters out of their place of residence.

On the 3rd day of March, 2014 (which will be March 1 of even numbered years for future election cycles), independent candidates were required, and will be required in the future, to turn in petition signatures for recognition and certification of themselves as independent candidates under the current election laws in question at a time when there is relatively less interest in politics, there is uncertainty as to who the major party candidates will be and what issues they will campaign on. In this regard, it is interesting to note that the U.S. Court of Appeals for the Eighth Circuit has held that ". . . it is important that voters be permitted to express their support for independent and new

---

[1]   The petition deadline for Independent candidates was March 3, 2014, because the regular deadline date of March

party candidates during the time of the major parties' campaigning and for some time after the selection of candidates by party primary." *McLain v. Meier*, 637 F.2d 1159, at 1164 (8th Cir. 1980). Under current Arkansas law, the lesser of three percent of the qualified voters in the State or 10,000 valid petition signatures of registered Arkansas voters are required for a statewide independent candidate, with the lesser of three percent of qualified voters in the district or county or 2,000 petition signatures required for districts or counties.  ARK. CODE ANN., §§ 7-7-103(b)(1)(A) and (b)(1)(B).  Arkansas's unnecessarily early aforesaid petition signature deadline for independent candidates, coupled with the petition signature requirement, the lowered political interest of the voting public further removed from the election dates in Arkansas, and the inconvenient petitioning time period is unconstitutional, is constitutionally unnecessary and vague, lacks any compelling interest, and unequally and unfairly impacts in a discriminatory manner the rights of Independent candidates and their supports in Arkansas.

In Defendant's Statement of Material Facts Not in Dispute [Doc. No. 18], Defendant set forth a statement of 58 material facts not in dispute.  One of the facts set forth in Defendant's Statement of Material Facts Not in Dispute (No. 56) is immaterial and partly disputed by Plaintiffs hereinbelow, while an additional material fact not in dispute set forth by Defendant (No. 58) is not only disputed by Plaintiffs, but is an incorrect legal conclusion, rather than a fact.  The remaining 56 undisputed facts in Defendant's aforesaid statement of material facts not in dispute, while admitted by Plaintiffs, are insufficient alone to justify summary judgment for Defendant Secretary of State. Plaintiffs now submit their Response and Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment.

---

1 fell on a Saturday.  In the next general election cycle in Arkansas in 2016, March 1st falls on a Tuesday.

II.   CONCISE STATEMENT OF MATERIAL FACTS TO WHICH THE
PLAINTIFFS ASSERT GENUINE ISSUES OF FACT EXIST

The Plaintiffs admit the allegations contained in Defendant's Statement of Material Facts Not in Dispute which are numbered 1-55, and 57.  Plaintiffs assert that the following facts put forth by Defendant Secretary of State are incorrect, immaterial, a legal conclusion, are not supported by particular parts of materials in the record pursuant to Fed. R. Civ. P. 56(c)(1)(A) and (c)(3), and/or a genuine issue exists thereto.   Plaintiffs contest the materiality and specific correctness of Defendant's Statement of Material Facts Not in Dispute which are numbered 56 and 58.  Further, the Plaintiffs assert that there is a genuine issue existing as to Defendant's Statement of Material Facts Not in Dispute which is numbered 58.   These alleged material facts not in dispute by Defendant Secretary of State are specifically denied by Plaintiffs.   In disputing the following specific facts, Plaintiffs will refer to the numerical designation used in Defendant's Statement of Material Facts Not in Dispute in Plaintiffs' separately filed Concise Statement of the Material Facts as to Which the Plaintiffs Contend a Genuine Dispute Exists to be Tried with attached Exhibits as required by Local Rule 56.1(b).  Plaintiffs will also refer to documents, pleadings, affidavits, and exhibits, which are part of the record in the case at bar.

III.  STANDARD OF REVIEW FOR SUMMARY JUDGMENT

There is no question as to the appropriate standard for a trial court to apply in deciding a motion for summary judgment.  The trial court should ". . . grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); also see Fed.R.Civ.P. 56(c). However, the trial court should remember ". . . at the summary judgment stage the Judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether

5

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249.  In essence, the inquiry for the trial court is ". . . whether there is the need for a trial. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.  In reviewing the evidence and record supporting and opposing the summary judgment motion, the trial court must view all facts and inferences in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255.  *Nelson v. City of McGehee*, 876 F.2d 56 (8th Cir. 1989); *Counts v. MK-Ferguson Co*., 862 F.2d 1338 (8th Cir. 1988).  "In general a summary judgment should not be granted on an issue, the resolution of which is dependent upon another issue which itself raises genuine questions of material fact." *Sonobond Corp. v. Uthe Techology, Inc.,* 314 F.Supp. 878, 882 (N.D. Cal. 1970).  In fact, the ". . . necessity of expert testimony to translate and interpret material, technical facts is a justifiable ground for denying summary judgment." *Sunobond Corp. v. Uthe Technology, Inc.,* 314 F.Supp. at 881.

## IV.  ARGUMENT AND AUTHORITIES

### PROPOSITION I

#### PLAINTIFFS CONTINUE TO HAVE STANDING AS VOTERS TO CHALLENGE THE CONSTITUTIONALITY OF ARKANSAS' STATUTES FOR OBTAINING RECOGNITION AS AN INDEPENDENT CANDIDATE

This case is a ballot access case on behalf of individual Arkansas voters who had intended to be Independent candidates for elective office.  Defendant admitted in his answer that each of the Plaintiffs was a registered Arkansas voter (Plaintiffs' Exhibit "3", Defendant's Answer filed August 14, 2014, ¶¶ 1-3).  Further, the Plaintiff Mark Moore intends to be an Independent candidate for Arkansas Lieutenant Governor for the General Election to be held in November of 2018 (Plaintiffs' Exhibit "4", Affidavit of Mark Moore, ¶ 5).  Plaintiffs still seek declaratory and injunctive relief from the Court as to future Arkansas general election cycles.  Plaintiffs specifically seek to have

ARK. CODE ANN., §§ 7-7-101, 7-7-103, and 7-7-203(c)(1) as applied to the Plaintiffs herein as both voters and future Independent candidates for all subsequent general elections in Arkansas declared unconstitutional and a permanent injunction issued against its enforcement.  The aforesaid Arkansas election laws complained of impact Independent candidates and their supporters and serve to keep off the Arkansas ballot the names of Plaintiffs as independent candidates for the Arkansas general election ballot, and should be permanently enjoined from being enforced for the reason that said laws violate in their application Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, § 1983, in that said laws are unnecessarily burdensome, oppressive, discriminatory, unnecessarily early in setting up a deadline for Independent candidates, vague, arbitrary, and further, violate Plaintiffs' rights to equal protection and due process of the law.  In essence, Arkansas has set up an unconstitutional discrimination by requiring Independent candidates to file petitions and other documents well before the general  and  primary elections in Arkansas.  While such discrimination can be justified from the standpoint of ballot access for the formation of new political parties, it cannot be justified and is unconstitutional when applied to Independent candidates and their voter supporters because of the heightened constitutional scrutiny required to judge state election laws which regulate Independent candidates and their supporters.  The Eighth Circuit Court of Appeals has held, following the Supreme Court of the United States, that the "Supreme Court has recognized that "the political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other."  *Storer v. Brown*, 415 U.S. 724, 745 (1974), *McLain v. Meier*, 637 F.2d at 1165.

The March 1 deadline of ARK. CODE ANN., §§ 7-7-103 and 7-7-203(c)(1)—which was

Monday, March 3, in the 2014 election cycle--is and will be before the preferential primary elections of the Republican and Democratic parties (which was on May 20, 2014 for the most recent general election cycle), as well as more than three months before the Arkansas General Primary runoff election (which was on June 10, 2014 for the most recent general election cycle), and more than eight months before the most recent Arkansas General Election on November 4, 2014. While the completion of the 2014 elections in Arkansas is now past, Plaintiffs--as both voters in Arkansas and as potential future Independent election candidates--can still seek declaratory and injunctive relief as to the election laws complained of herein and their impact on future Arkansas General Elections as to Independent candidates and the right of Arkansas voters to cast their vote effectively.

There is no merit to the Secretary of State's contention that Plaintiffs lack standing and that there is no case or controversy under Article III of the United States Constitution.  In reviewing ballot regulations "our primary concern is not the interest of [the] candidate . . . but rather, the interests of the voters who chose to associate together to express their support for [that] candidacy and the views . . . espoused." *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983).  The Plaintiffs herein are both candidates and voters and, thus, have ". . . standing to challenge a state law regulating elections when that law 'would restrict [their] ability to vote for the candidate of [their] choice or dilute the effect of [their] vote if [their] chosen candidate were not fairly presented to the voting public.'"  *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (holding that voter had standing to challenge ballot access law that he claimed was overly restrictive in signature requirements and deadlines), cited with approval on the standing issue in *Miller v. Moore*, 169 F.3d 1119. 1123 (8th Cir. 1999).  In order to show standing and invoke a federal trial court's jurisdiction,

8

a litigant "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S.289, 298 (1979). Plaintiffs face in the laws challenged herein a "sufficiently particularized and concrete injury" to give them standing in this case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In fact, the *Lujan* case was cited and quoted by the Eighth Circuit in its recent decision on standing in the case of *Constitution Party of South Dakota v. Nelson*, 639 F.3d 417 (8th Cir. 2011).  While Defendant cites the *Nelson* case as supporting his position that Plaintiffs have no standing in this case, the Eighth Circuit was clear in *Nelson* that the reason it reversed the District Court's holding of standing for the Plaintiff Pickens was because there was no evidence offered in the form of Affidavits or other evidence in the record to support the Trial Court's opinion that Plaintiff Pickens had standing as a resident of Arizona who would be prevented by the law in question from circulating petitions in South Dakota because he was an out-of-state resident.  In fact, Defendant had not even filed an Answer in the *Nelson* case at the time of the Court's decision.  *Id.*  In contrast, the Secretary of State in the instant case has filed an answer admitting that the Plaintiffs are registered Arkansas voters (Plaintiffs' Exhibit "3") and there is an Affidavit of Mark Moore (Plaintiffs' Exhibit "4") of his intent to run as an Independent candidate for Governor in 2018.

The injury, in fact, which the Plaintiffs have suffered in the instant case is the unconstitutional deadline for independent candidates--which can be redressed by a favorable decision in the granting of a later filing deadline for petitions and other required documents.  It is clear from the provision of 42 U.S.C. § 1983 and the U.S. Supreme Court's decision in *Bullock v. Carter*, 405 U.S. 134 (1972), that the Plaintiffs herein, as citizens and registered voters of Arkansas, have standing to challenge the Arkansas election laws in question since the laws at issue impact

their rights as Arkansas voters as well as the rights of candidates who might attempt to stand for elective office in Arkansas as Independent candidates.  As the U.S. Supreme Court stated in the *Bullock* decision, ". . . the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock v. Carter*, 405 U.S. at 143.  Also see, *McLain v. Meier*, 851 F.2d at 1048.  The U.S. Supreme Court has made clear that it is the voter's interest that are of "primary concern". *Anderson v. Celebrezze*, 460 U.S. at 786.  It does not make sense that a voter would have to try to meet ballot access requirements before claiming that those requirements are "limit[ing] the field of candidates from which [he] might choose." *Id.* (Internal citation and quotation marks omitted).  Of course, the instant case involves three Plaintiffs who sue in their capacity as Arkansas voters.

While the Eighth Circuit's decision in *Nelson* is the only real election law case on standing cited by Defendant in his Brief (the other cases on standing being non-election law cases), other decisions of the U.S. Court of Appeals for the Eighth Circuit on standing in election law cases are more helpful because the Eighth Circuit has recognized voters' standing to challenge election laws. For example, in *Coalition for Sensible and Humane Solutions v. Wamser*, 771 F.2d 395 (8th Cir. 1985), a city resident who was eligible to vote but was not registered, had standing to bring suit against a city board of election commissioners, alleging that her failure to register resulted from the board's unconstitutional refusal to make voter registration facilities reasonably accessible and convenient to her and others like her.  Similarly, in the 1988 Eighth Circuit decision in *McLain v. Meier* cited above, it was held that a voter had standing to challenge the constitutionality of North Dakota's ballot access laws because of the inherent linkages between voters' and candidates' rights. *McLain v. Meier*, 851 F.2d at 1048.  Further, the *McLain* case provides an additional insight on the

standing question because the Eighth Circuit reversed the decision of the District Court entering

summary judmgent against the Plaintiff *McLain* on the standing issue because he did not meet the

age qualification for the Presidency and hence, the District Court thought, lacked standing to pursue

his claims. *Id*. at 1047-1048. However, the Eighth Circuit reversed the District Court and held that

*McLain* could sue in his capacity as an individual voter. *Id*. at 1048. While Defendant may

question the impact of the laws in question on Plaintiffs, it should be remembered that the Eighth

Circuit Court of Appeals has held that "The loss of First Amendment freedoms, for even minimal

periods of time, unquestionably constitutes irreparable injury." *Kirkaby v. Furness*, 52 F.3d 772,

775 (8th Cir. 1995) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The continued existence of the early petition signature deadline of March 1st is fairly

traceable to the Defendant, with the resulting injury to the Plaintiffs likely to be redressed by the

relief requested in this declaratory and injunctive relief action. Such a finding was specifically

made by the U. S. District Court for the Eastern District of Kentucky in the case of *Libertarian*

*Party of Kentucky v. Ehrler*, 776 F.Supp. 1200, at 1202 (E.D. Ky., 1991). In the *Ehrler* decision, no

attempt had been made by the Plaintiffs to petition. In fact, the *Ehrler* decision noted that in

another case decided by the U. S. Supreme Court, the Socialists Labor Party had been granted

standing to challenge Ohio's restrictions on minor party access to the election ballot, including the

petition signature requirement, even though the Plaintiff had not filed any petition signatures at all.

*Williams v. Rhodes*, 393 U.S. 23 (1968). More importantly, the U.S. Supreme Court in *Storer v.*

*Brown*, 415 U.S. 724 (1973), allowed independent presidential and vice presidential candidates to

have standing to challenge California's restrictions on independent candidate ballot access, even

though they had not filed any petition signatures. While not binding for District Courts in the

11

Eighth Circuit, two other cases from other Circuits are persuasive authority. *Stephenson v. State Bd. of Elections*, 794 F.2d 1176 (7th Cir. 1986) allowed an independent presidential candidate to have standing to challenge Illinois' early filing deadline even though he had not submitted any petition signatures, and in *Rainbow Coalition of Oklahoma v. Oklahoma State Election Bd.*, 844 F.2d 740 (10th Cir. 1988) minority parties and voters were found to have standing and were permitted to contest Oklahoma's petition requirements and filing deadline for third parties even though they had not attempted to comply with the statutes. Clearly, Plaintiffs have standing to continue the case at bar.

PROPOSITION II

THE CASE AT BAR IS NOT MOOT BECAUSE IT PRESENTS AN ISSUE
WHICH IS CAPABLE OF REPETITION, YET EVADING REVIEW, BECAUSE
IT IS AN ELECTION CASE WHICH BINDING CASE LAW HAS ESTAB-
LISHED IS AN EXCEPTION TO MOOTNESS

Not only do the Plaintiffs have standing, but they bring up issues which will impact future elections as they asserted in their complaint and, therefore, the issues raised herein are "capable of repetition yet evading review." Numerous ballot access cases have allowed cases to continue even after the elections are over which the candidates and their supporters were contesting. It is well established that ballot access cases are cases were the controversy is "capable of repetition, yet evading review" and, therefore, an exception to the usual mootness rule which would deny Plaintiffs' standing. *Anderson v. Celebrezze,* 460 U.S. 780, 784 n.3 (1983); *Mandel v. Bradley*, 432 U.S. 173, 175 n.1 (1977); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 332 n.2 (1972); *Moore v. Ogilvie,* 394 U.S. 814, 816 (1969); and *McLain v. Meier,* 637 F.2d at 1162 n.5. Because the election laws in question herein will affect candidates in similar situations in future elections, this case presents a

12

controversy capable of repetition, yet evading review.   As the Eighth Circuit has commented,

regardless of the Plaintiff's   ". . . candidacy in any future election, election law controversies tend

not to become moot."   *McLain v. Meier, Id*.   Thus, Plaintiffs not only have standing under Article

III of the U.S. Constitution, but the instant case is not moot.   In the context of election cases,

application of the doctrine is appropriate in both "as applied" challenges as well as facial

challenges.   *Storer v. Brown,* 415 U.S. at 737 n.8.   Even though the Storer court noted that the

election was "long over," and ". . . no effective relief can be provided to the candidates or voters,"

"this case is not moot, since the issues properly presented, and their effects on independent

candidacies, will persist as the California statutes are applied in future elections."   *Id*. Further, the

doctrine should be applied to election statutes when "[t]he construction of the statute, and

understanding of its operation, and possible constitutional limits on its application, will have the

effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be

adjudicated before an election is held.   *Id.*

PROPOSITION III

SINCE THE PLAINTIFFS ONLY SEEK NOW A DECLARATION THAT THE
ARKANSAS ELECTION LAWS IN QUESTION ARE UNCONSTITUTIONAL
FOR FUTURE ELECTIONS AND AN INJUNCTION AGAINST THEIR
ENFORCEMENT, THE ISSUE OF NECESSARY PARTY DEFENDANTS IS
NO LONGER MATERIAL

In regard to the Secretary of State's claim that the Plaintiff William Chris Johnson should

have joined a necessary defendant, viz.: the County Clerk of White County, Plaintiffs disagree.

This issue is no longer material because the 2014 General Election in Arkansas has passed and

Plaintiffs are no longer seeking any injunctive relief as to placing their names on the Arkansas

ballot for the 2014 General Election.   The County Clerk of White County is not necessary for any

declaratory relief declaring the laws in question unconstitutional as same relate to Mr. Johnson or the other Plaintiffs for future election cycles in Arkansas, nor is the County Clerk of White County necessary for injunctive relief as to enforcement of the laws at issue in the future.  In any event, the Secretary of State cites no cases under this section of his brief, and since it only applies to the recently passed election, and not to future elections and Plaintiffs' request for declaratory and injunctive relief for future election cycles, this section of the Secretary of State's argument is no longer material and germaine to this case.

PROPOSITION IV

THE MARCH PETITION DEADLINE FOR INDEPENDENT CANDIDATES
IN ARKANSAS IS UNCONSTITUTIONAL UNDER THE AUTHORITY OF
PREVIOUS DECISIONS DECIDED BY THIS COURT

The issue of too early a deadline and/or the petition signature requirement for Independent candidates in Arkansas has been addressed to one extent or another in numerous previous cases decided by this Court.  *Lendall v. Bryant*, 387 F.Supp. 397 (E.D. Ark., 1975) (hereinafter *Lendall I*); Lendall *v. Jernigan*, No. LR-76-C-184, *aff'd mem.*, 433 U.S. 901 (1977) (hereinafter *Lendall II*); *Lendall v. Jernigan*, 424 F.Supp. 951 (E.D. Ark., 1977) (hereinafter *Lendall III*); Rock v. Bryant, 459 F. Supp. 64 (E.D. Ark., W.D. 1978); and *Lendall v. McCuen*, No. LR-C-88-311 (E.D. Ark., W.D., Aug. 16, 1988) (hereafter *Lendall IV*).  The Court should consider that Arkansas has previously had deadlines for Independent candidates and political party candidates declared unconstitutional which were both much more liberal and closer to the primary and general elections, as well as more restrictive, than currently exists in the election laws at issue herein. *Lendall II*; *Lendall III*; *Lendall IV*; and *Green Party of Arkansas v. Priest*, 159 F.Supp.2d 1140 (E.D. Ark. 2001).  Therefore, in that regard, the "binding precedent which this Court must follow is

14

the case of . . . *Lendall II* in which the sole issue was the deadline for filing petitions by independent

candidates.  In *Lendall II,* which was affirmed by the United States Supreme Court without opinion,

the three-judge panel held that the first Tuesday in April was an unconstitutionally early

deadline*."Lendall IV* at 5.  Then*, in Lendall III*, the Chief Judge of this Court, "who was one of the

members of the three-judge panel in *Lendall II*, again made the ruling of the Court in that case

abundantly clear:"

> At the time of three-judge court decision in the second proceeding (*Lendall II),*
> we concluded that in no event could the April deadline be justified for
> independent candidates. *Lendall III*, 424 F.Supp. at 954; *Lendall IV*, at 5-6.

Therefore, since this Court has held a filing deadline in early April to be unconstitutional, and this

Court in *Lendall III* recognized that a rule had been laid down to which the Court must adhere,

therefore, a filing deadline in early April was unconstitutional, and the Court found that a filing

deadline in *Lendall IV* was also unconstitutional. Further, the Court in *Lendall IV,* while finding

that "Mr. Lendall made no attempt to comply with the January filing deadline", was convinced  ". . .

that this factor alone would not factually distinguish this case from the clear ruling of *Lendall II* that

any filing deadline set for independent candidates before the first Tuesday in April is

unconstitutional." *Lendall IV,* at 6.  Thus, a filing deadline in early March for Independent

candidates is also unconstitutional.  To ignore the history of this repeated litigation issue and the

facts that were the basis for this Court's prior rulings would be a mistake and contrary to applicable

law.  As the U.S. Supreme Court observed in an election controversy, the historical record of

political parties' participation in elections is relevant as "[p]ast experience will be a helpful, if not

always an unerring, guide." *Storer*, 415 U.S. at 742.  In addition, for Plaintiffs' equal protection

claim based upon the effects of the Arkansas elections laws in question, the U.S. Supreme Court

stated in an election controversy: "In determining whether or not a state law violates the Equal

Protection Clause, we must consider the facts and circumstances behind the law, the interests which

the State claims to be protecting, and the interests of those who are disadvantaged by the

classification". *Williams v. Rhodes*, 393 U.S. 23, at 31 (1968).  In regard to other state laws of a

similar nature declared unconstitutional, and the past history of Arkansas independent candidate

procedures, see Plaintiffs' Exhibit "1", Affidavit of Richard Winger, ¶¶ 5, 6, 7, 8, 9, 11, and 12.

The Court should also consider carefully in judging the early deadline question the cases of

*Anderson v. Celebrezze, Id.*; and *McCarthy v. Noel*, 420 F.Supp. 799 (D.R.I. 1976), (which struck

down as unconstitutional a deadline of August 12, 1976, which was about a month before the state

primary was set and even though only 1,000 signatures were required to obtain ballot status for an

Independent presidential candidate).  These two cases paid particular attention as to the date of the

election and the primary election in comparison to the petitioning deadline date.  As the *McCarthy

v. Noel* Court went on to say:

> The goals of the stability and integrity of the political process can effectively be
> served by a filing deadline later than August 22 (the date on which plaintiff had
> tendered sufficient signatures to qualify).  These goals would be better served and
> less burdensome to independents by a deadline related to the analogous events of
> state primaries, major party nominations, and elector-designations.
>
> * * * *

"[T]he Court places particular emphasis on the fact that Rhode Island cannot finalize its ballot until

after the party primary; there is thus simply no meaningful justification under the cases for requiring

independents to qualify a month earlier than that." *McCarthy v. Noel, 420 F. Supp.* at 803.

Similarly, Arkansas cannot finalize its ballots until after the party primary, so there is no

meaningful justification under the cases for requiring independents to qualify by the petition

signature deadline in early March.

While Plaintiffs have not yet filed their Motion for Summary Judgment in the instant case so as to require the Court to invoke the three-prong test set forth by the U.S. Supreme Court in *Anderson v. Celebrezze*, *Id.*, the foregoing would indicate that the laws in question herein are unconstitutional under the *Anderson v. Celebrezze* test.  "It is clear that the Supreme Court has consistently required a showing of necessity for significant burdens on ballot access."  *Anderson v. Celebrezze*, 460 U.S. at 789; and *Storer v. Brown*, 415 U.S. at 743.  The final part of the *Anderson* test is that the Court must consider the extent to which legitimate state interests make it necessary to burden the rights of the Plaintiffs. *Anderson v. Celebrezze, Id.*  Particularly is such a conclusion warranted when you consider the foregoing cases and the fact that Plaintiffs' expert witness notes in his Affidavit that "Federal courts in Arkansas have repeatedly declared early petition deadlines for independent candidates and newly-qualifying parties unconstitutional, only to have the legislature ease the deadlines, but then a few years later restore the old, invalid deadlines."  (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 7, ¶ 12).

IV.  CONCLUSION

Plaintiffs have asserted an injury by a deadline which is clearly unconstitutional under prior rulings of this Court.  The requirements of the Secretary of State's job involve his enforcement of the laws in question.  However, Plaintiffs admit that they did not submit petitions to obtain party recognition for the most recent election cycle.  The Plaintiffs are no longer seeking to be put on the Arkansas ballot as Independent candidates at this time, but are rather simply challenging the early deadline for petition signatures, coupled with the relatively severe requirement of one percent of the last gubernatorial vote or 10,000 signatures in Arkansas for a statewide petition or three percent or

2,000 petition signatures for non-statewide offices.  A continuation of the early deadline constitutes a continued barrier and chilling effect on future attempts to obtain the necessary petitions to gain Independent candidate status in Arkansas.

It is not necessary for the Court to decide in the instant case at this time what specifically the Arkansas Legislature should do in reforming the election laws in question.  It is simply enough, as is asked by the Plaintiffs, to declare the election laws at issue which set a March 1st petition deadline for Independent candidates unconstitutional for the reasons asserted above and issue an injunction against its enforcement.  The Legislature can then decide to set a new specific and constitutional date for a petition filing deadline in line with this Court's decision.

WHEREFORE, premises considered, the Plaintiffs herein request that Defendants' Motion for Summary Judgment be denied.

Respectfully submitted this 29th day of December, 2014.

<div style="margin-left: 40%;">

MARK MOORE, MICHAEL HARROD, and
WILLIAM CHRIS JOHNSON, Plaintiffs

/s/ James C. Linger
James C. Linger, OBA #5441
*Counsel for Plaintiffs*
1710 South Boston Avenue
Tulsa, OK 74119-4810
Telephone (918) 585-2797
Facsimile (918) 583-8283
bostonbarristers@tulsacoxmail.com

JEFF ROSENZWEIG, AB No. 77115
*Counsel for Plaintiffs*
300 Spring Street, Suite 310
Little Rock, Arkansas 72201
Telephone (501) 372-5247
Facsimile (501) 376-0770
jrosenzweig@att.net

</div>

<u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that a true and exact copy of the foregoing has been served on all counsel

of record via the Court's CM/ECF e-mail notification system on the 29th day of December, 2014.

<u>/s/ James C. Linger</u>
James C. Linger