FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 12 2015

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN (LITTLE ROCK) DIVISION


MARK MOORE, MICHAEL HARROD,                                    PLAINITFFS
and WILLIAM CHRIS JOHNSON


VS.                              Case NO. 4:14-CV-65-JM


HONORABLE MARK MARTIN,
in his official capacity as
Arkansas Secretary of State                                    DEFENDANT


### DEFENDANT ARKANSAS SECRETARY OF STATE MARK MARTIN'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now Defendant, Arkansas Secretary of State Mark Martin, for his Reply Brief in Support of his Motion for Summary Judgment, by and through his attorney, and states that:

The Court should grant Defendant's Motion for Summary Judgment. Plaintiffs do not dispute the essential material facts of this matter: the 2014 election is over; Defendant did not prohibit any Plaintiff from having his name appear on the ballot solely by reason of his failure to file petition signatures with Defendant; Plaintiffs have not been reasonably diligent about the 2014 election. Defendant is entitled to judgment as a matter of law. Plaintiffs are estopped from changing their original "as applied" legal challenge to attempting to make a facial challenge to the statute, given their admission that other reasonably diligent independent candidates did

appear on the November 2014 ballot. Plaintiffs' single "future" claim – as first set forth in their Response to the Motion for Summary Judgment – is premature, not ripe for review, and unavailing on the facts set forth in the Statement of Material Facts not in dispute. The Court should not issue an advisory opinion about the filing period for an election that is more than four (4) years away.

This is a First Amendment challenge to Arkansas statutory law concerning access to the November, 2014, general election ballot. Plaintiffs challenge certain parts of the Arkansas Code, that is, the time for filing independent candidate petitions. The passage of time prevents Plaintiffs from succeeding on their "as-applied" challenge in 2014. Now, for the first time, Plaintiffs seek to have their claims adjudicated on an insufficient factual and legal record *for the 2018 election cycle*. Case law does not compel this Court to rule in favor of Plaintiffs, as the undisputed facts show.[1] The revised Arkansas election calendar was not, and has not been, an

---

[1] The "election calendar" in Arkansas was substantially modified in 2011 in response to federal legislation (Subtitle H, Public Law 111-84, 123 Stat. 2190 (October 28, 2009)) (MOVE Act, amending applicable sections of the UOCAVA Act, 42 U.S.C. §§1973ff *et seq.*). *See, e.g.*, Arkansas Act 1185 of 2011 (amending multiple provisions of the Arkansas Code). The Arkansas legislature likewise continued to revise the election calendar in Arkansas in the 2013 session in order to harmonize Arkansas law with applicable federal law, to improve election administration, to assist Independent Candidates in receiving timely review of their petition signatures in advance of other (non-state) filing deadlines (allowing them to file for another office should they have an insufficient number of valid signatures of registered voters), to allow time for litigation of any petition signature challenge in advance of the general election, to avoid the "wait and see" attitude of candidates who tender insufficient documents to see who might win the primary as well as which "non-standard" candidates might be nominated by minor parties that qualify for placement of all of their candidates on the ballot, to protect the integrity of the ballot process for the general election, to encourage compromise and political stability, to attempt to insure that the general election winner will represent a majority of the community, and to provide the electorate with a ballot that will eliminate or reduce voter confusion, *inter alia*.

**Reply Brief in Support of Defendant's Motion for Summary Judgment, page 2**

impediment to other similarly situated candidates, albeit the "reasonably diligent" independent candidates discussed in *Storer v. Brown*. The Eighth Circuit's recent case concerning ***ripeness*** in the specific context of a First Amendment challenge to an election issue, requires dismissal of the Complaint in its present form. *National Right to Life PAC v. Connor*, 323 F.3d 684, 693 (8th Cir. 2003), *rehearing and rehearing en banc denied* (8th Cir. April 24, 2003).

For the 2014 election cycle, this case is resolved by *Storer v. Brown*, on its face. Plaintiffs have admitted the essential facts, as set forth by Defendant in its Motion and Statement of Material Facts Not In Dispute. "[I]f a candidate is absolutely and validly barred from the ballot by one provision of the laws, he cannot challenge other provisions as applied to other candidates." *Storer v. Brown*, 415 U.S. 724, 737 (1974). This Court "need not" hear a challenge to the provisions of the Arkansas Code by these Plaintiffs who did not satisfy the *other, unchallenged* prerequisites to having their names placed on the ballot, and there is "no more reason to consider [Plaintiffs' challenge] at the request of [Plaintiffs] ***or at the request of voters who desire to support unqualified candidates.***" *Storer, id.,* at 737 (and see n.8: "The 1972 election is long over, and no effective relief can be provided to the candidates or voters...." Another timely filed case can be adjudicated before an election is held) (emphasis supplied) (plaintiffs properly barred from ballot).

Plaintiffs' new allegations – as made solely in their Motion response - convolute their requests for relief, to avoid *Storer*. Plaintiffs' herein undisputedly made an "as applied" challenge to the statute, and ***survived Defendant's Motion to Dismiss by characterizing their claims as purely a challenge to the Act "as applied" to them, personally.*** Docket No. 8,

**Reply Brief in Support of Defendant's Motion for Summary Judgment, page 3**

Plaintiffs' Brief in Opposition to Motion to Dismiss, at 7-8. Now, Plaintiffs' new allegation is that at least one of them "will suffer" in the future as a candidate and ask that the Court consider this a "facial challenge" to the constitutionality of the entire statutory framework. Plaintiffs have not plead sufficient facts, with sufficient detail, against the appropriate parties Defendant, to permit this matter to continue at this juncture.

The U.S. Supreme Court has agreed in an election context. All that is left of Plaintiffs' claims is a facial challenge to the statute with only hypothetical future allegations of harm *not in the 2016 election cycle, but in the 2018 election cycle.* This type of facial challenge to a legislative Act is the most difficult challenge to mount successfully, since Plaintiffs, as challengers, must establish that **no set of circumstances exists under which the Act would be constitutionally valid.** *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see*, *Washington State Grange v. Washington State Republican Party*, 522 U.S. 442, slip op. at 6 (1988). The successful petitions filed in this State by Jacky Louks for White County Judge, and George Pritchett, for State Senate, in 2014, preclude Plaintiffs from prevailing on their facial challenge. Plaintiffs have admitted these successful petitioners were on the ballot, in this State, in 2014. Defendant's Statement of Material Facts Not In Dispute, No. 43, 44. In other words, Defendant has already shown that two "reasonably diligent" independent candidates had access to the ballot in 2014.

A facial challenge "must fail where the statute has a 'plainly legitimate sweep.'" *Washington State Grange, id.*, quoting, *Washington v. Glucksberg*, 521 U.S. 702,739-740 and n. 7 (1997) (Stevens, J., concurring). As the facts have shown, at least two successful candidates

filed as Independent Candidates in 2014, obviating Plaintiffs' claims of facial invalidity. As the facts show, successful independent candidates meeting the revised statutory timeline obviate any and all claims of facial invalidity.

Plaintiffs, by their own inaction, have lost their ability to make a facial challenge to the Act, at this juncture of the proceedings. The Supreme Court has been explicit: any challenger who *could* prevail on an as-applied challenge to a legislative Act should not be permitted to make a facial challenge. *Brockett v. Spokane Arcades*, 472 U.S. 491 (1985). A facial challenge is prospective, because it seeks to prevent a law from being enforced on the claim that any and every enforcement, in itself, would violate someone's constitutional rights. An "as-applied" challenge is retrospective, as it seeks to redress a constitutional violation that has already purportedly occurred. On an as-applied challenge,"[t]he statute may ... be declared invalid to the extent" of its purported unconstitutionality, "but otherwise is left intact." *Brockett*, 472 U.S. at 504. Facial challenges are, and ought to be, rare; severability is the device through which statutes' constitutional problems should normally be cured.

Plaintiffs seek to avoid the explicit Supreme Court holding in *Brockett*. Plaintiffs continue to couch their newly-found claims in "as applied" language, but nevertheless seek a declaration of facial invalidity, as well as injunctive relief, precluding Defendant from enforcing entire sections of the Arkansas Code, **with absolutely no showing of their compliance with other sections of Arkansas election law that are not challenged in this suit.** Plaintiffs' claims must fail at this stage of the litigation, on the un-amended pleadings before the Court, given the undisputed material facts set forth in Defendant's Statement of Material Facts (numbers 1 to 55

and 57 are undisputed) since they have waited too long to make a successful challenge for access to the 2014 ballot.

Plaintiffs' single "prospective" but as yet unsubstantiated challenge, like every facial challenge, is disfavored for several reasons. "Claims of facial validity often rest on speculation. As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of barebones records.' Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' Finally, facial challenges threaten to short circuit the democratic process. . . ." *Washington State Grange*, id., slip op. at 7-8 (citations supporting quotations omitted). As putatively amended in their December 29 response, Plaintiffs cannot now mount a "facial" challenge, because they have not alleged all of the actual facts necessary to support their new "facial" claim.

Plaintiffs are estopped to make a future facial challenge as well, having survived the Motion to Dismiss by claiming that they were making an "as-applied" challenge alone. The doctrine of judicial estoppel protects the integrity of the judicial process. *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 738 n.6 (8th Cir. 1987). A court invokes judicial estoppel when a party abuses the judicial forum or process by making a misrepresentation to the Court. *Id.* The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742 (2001). Under the judicial estoppel doctrine, where a party

assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not, thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. *Id.* Plaintiffs in this matter seek to change their position on their facial challenge to the statute, after the Court accepted their "as applied" language in response to the Motion to Dismiss, to the detriment of Defendant. Courts routinely prohibit such changes in position. *Stalling v. Hussman Corp.*, 447 F.3d 1041, 1048 (8th Cir. 2006) (applying *New Hampshire*, 532 U.S. 742, 750 (three considerations for the Court)).

Plaintiffs' "as applied" claim for 2014 must also fail, given the admitted, undisputed, facts. In *Constitution Party of South Dakota v. Nelson*, 639 F.3d 417 (8th Cir. 2011), defendant Secretary of State Nelson raised the issue of standing on appeal. The case was a challenge to the constitutionality of certain in-state residency requirements for those persons gathering signatures for ballot access petitions. The Eighth Circuit agreed that standing could be raised on appeal as a jurisdictional issue. *Nelson*, 639 F.3d at 420. The *Nelson* Court then vacated the judgment of the district court in favor of Defendant Nelson, and remanded the case with instructions to dismiss the Complaint, for Plaintiffs' (Appellants') lack of standing. *Id.*

*Nelson* sets forth the Eighth Circuit's current standard for reviewing the issues of standing. The "irreducible constitutional minimum" of Article III standing requires **Plaintiffs** to establish that they have already suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; that there is a causal connection between the actual injury these Plaintiffs allege and the conduct of this Defendant; and that it is

"likely, as opposed to merely speculative," that the injury to *these Plaintiffs* will be redressed by a favorable decision *against this Defendant.* *Id.* Plaintiffs' cannot meet this standard.

This case is nearly identical to the facts of the case affirmed in *Nelson*. The District Court opinion in *Nelson* tells the whole story: a candidate who wanted to be listed as Governor on the South Dakota ballot lacked standing because she "did not submit a petition with any signatures for certification, thus the Secretary of State never denied such a petition." *Constitution Party of South Dakota v. Nelson*, 730 F. Supp. 2d 992, 999 (D.S.D. 2010), *aff'd in part*, 639 F.3d 417. Likewise, Plaintiffs now all admit that Defendant Secretary *did not deny any Plaintiff in this matter access to the ballot solely for lack of sufficient signatures on the petition, nor for solely failure to submit a petition.* Plaintiffs have now admitted that their failure to appear on the ballot in 2014 was not the fault of this Defendant applying the challenged law to them.

A plaintiff required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit (ballot access) who fails to do so, lacks standing to sue because he should have at least taken steps to attempt to satisfy that precondition to ballot access. *Constitution Party of South Dakota v. Nelson*, 730 F. Supp. 2d 992, 998-99, *quoting, Pucket v. Hot Springs Sch. Dist.*, 526 F.3d 1151, 1161 (8th Cir. 2008). Plaintiffs fail to provide this Court with sufficient facts upon which this Court can grant relief against this Defendant. It is Plaintiffs' burden to show, at this stage of the litigation, that Plaintiffs have met the standing requirements for this Circuit. Plaintiffs utterly fail to do so.

As Plaintiffs' own case law states, *Plaintiffs* must show that they are serious candidates who have been "reasonably diligent" as candidates in order to invoke the power of the federal district court. *Rock v. Bryant*, 459 F.Supp. 64, 73 (E.D. Ark. 1978) *citing*, *Lubin v. Parish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974) *and Pratt v. Begley*, 352 F.Supp. 328, 330 (E.D.Ky. 1970), *aff'd* 409 U.S. 943, 93 S.Ct. 282, 34 L.E.2d 214 (1972) (upholding statute requiring all candidates to file nominating petitions no later than March 31, 1970, i.e., 55 days before the primary elections and 7 months in advance of the general election). As the Supreme Court explained in *Storer v. Brown,* the experience of a "reasonably diligent ... candidate" is a helpful guide to the constitutionality of access requirements. Other independent candidates who have qualified for the ballot demonstrate that Plaintiffs' burden is all the more substantial. *Storer*, 415 U.S. 724, 742. In particular, Plaintiffs must demonstrate some manner in which they were each actually injured by this Defendant, no later than the March 3, 2014, petition deadline, before this court may consider their claims. They have not done so, and now admit that they cannot do so.

Nevertheless, Plaintiffs now seek an advisory opinion for the 2018 election cycle. These claims are not ripe for review. Plaintiffs' new contention, that one of them "intends to run for Lt. Governor in 2018," is far too remote and speculative for this Court to consider. Plaintiffs' new claims (made solely in their response to the Motion for Summary Judgment, and not by way of amended pleading) are "too immature and unfocused to be ripe for judicial review at this time." *Connor*, *id.* The Court should dismiss this case without issuing an advisory opinion, on unsubstantiated hopes, four years in advance of any claim to any putative harm.

**Reply Brief in Support of Defendant's Motion for Summary Judgment, page 9**

The ripeness doctrine prevents courts from entangling themselves in abstract disagreements over policies, and protects defendants from judicial interference until an executive decision has been formalized and its effects felt in a concrete way by the challenging parties. *Connor, id. (citations omitted)* The ripeness doctrine operates through the avoidance of premature adjudication. *Connor, id.* "Courts deciding whether a dispute is ripe should consider (1) the hardship to the plaintiffs caused by delayed review; (2) the extent to which judicial intervention would interfere with administrative action; and (3) whether the court would benefit from further factual developments." *Connor, id.* Under the Eighth Circuit standard, Plaintiffs' newly formulated claims are not ripe for review.

First, there is absolutely no hardship to any Plaintiff should this Court delay judicial consideration of the issues raised in the Complaint and Response to the Motion for Summary Judgment. Plaintiffs concede they do not have a live controversy concerning the November 2014 General Election. There is no longer a justiciable "as applied" controversy because Plaintiffs did not submit petition signatures, nor have they tendered to Defendant sufficient valid qualifying documents by the applicable (unchallenged) deadline, or taken any other action (excluding limited "polling") to advance this matter on this Court's docket prior to the November 2014 general election. The best Plaintiffs can do is claim that one of the "intends to run" for Lt. Governor in 2018, i.e., after the 2016 election cycle, with a filing period more than four (4) years away (as of the date of the filing of this Brief). This is not enough for this Court to exercise its power to declare invalid a statute that was successfully applied to at least two successful independent candidates for office in 2014, as Plaintiffs concede.

Second, the relief sought by Plaintiffs, declaratory *and injunctive* relief, will undoubtedly interfere with Defendant's administration of the 2016 election cycle, at a minimum, i.e., an election cycle in which Plaintiffs make no suggestion or claim to any interest. Moreover, Plaintiffs seek such relief in the face of undisputed contrary evidence of record in this case, that is the actual timely filing of valid petitions of Independent Candidates for White County Judge and State Senate for the 2014 General Election (Defendant's Statement of Undisputed Material Facts, No. 43 and 44). The successful filing of other "reasonably diligent" independent candidates in 2014 demonstrates that Plaintiffs problems in this case are largely of their own making. (Moore Aff., where he states that he refused to gather [any] petition signatures).

Third, this Court – and Defendant (along with the State of Arkansas and the Arkansas General Assembly) – would undoubtedly benefit from further factual developments. In the 2014 cycle, Defendant has shown, without dispute, that at least two candidates, one for State Senate, and one for County Judge, successfully petitioned to have their names placed on the ballot in a timely manner. (Undisputed Facts No. 43, 44). Moreover, Plaintiffs essentially concede that they do not have a valid, live, interest in any race in the 2016 election cycle. Having "missed" the 2014 election cycle by failing to take appropriate legal action in a timely manner in the instant case, Plaintiffs should not be allowed to "jump the gun" and assume that they will be able to make the requisite showing of unconstitutionality, *as applied to them*, four years down the road.

Defendant is also entitled to gather additional facts, including whether other candidates are "reasonably diligent" – and to run an additional election cycle in 2016 with reasonably

diligent candidates– where Plaintiffs make no allegations of prospective harm to them in 2016. This Court, the parties, and the unrepresented interests of the State of Arkansas will benefit from an additional election cycle under the current law, particularly where Plaintiffs make no claim to any suffer any harm at all to themselves in the 2016 election cycle. Additional successful Independent candidacies – particularly "reasonably diligent" candidacies - may well moot Plaintiffs' as yet unsupported contention that the revised deadline makes it "too difficult" to gather signatures. An additional general election cycle, in 2016, will be helpful to this Court to see whether or not the alleged "discriminatory effect" of the new petition filing deadline is merely speculative or has actually operated to keep reasonably diligent candidates off the ballot.

Plaintiffs' remaining claims are too indefinite, too speculative, and too premature to survive given the current facts as admitted. Given the undisputed material facts, Plaintiffs admit that their own actions and failures to act were the reasons why none of their names appeared on the general election ballot for 2014. In other words, Plaintiffs concede that *Defendant's actions* were not the basis for Plaintiffs names not appearing as Independent Candidates on the 2014 general election ballot. Consequently, Plaintiffs were not entitled to any relief *against this Defendant* in 2014, which is most likely the reason they have not asked the Court for any affirmative relief since their February 2014, filing of suit.

Previous case law in this federal district court does not dictate a different result. First, the "opinion" of Plaintiffs' "expert" is merely a recitation of case law, without legal analysis, and so is not entitled to any deference. Legal conclusions, which require the application of law to the facts, are the province of this Court, and are not left to the province of the trier of fact. *See*,

*Reagan v. City of Piggott,* 805 S.W.2d 636, 637 (Ark. 1991) (conclusion of law that are in dispute do not meet the moving party's requirements to show that there are genuine issues of material fact for a fact-finder to determine); Fed. R. Evid. 704; *Berckeley, Inv., Grp. v. Colkitt* 455 F.3d 195, 271 (3rd Cir. 2006) (expert witness prohibited from rendering a legal opinion dictating outcome on ultimate issue). Consequently, the affidavit of the "expert" does not create an issue of fact that precludes entry of judgment for Defendant.

Moreover, Defendant should not be penalized for formerly having had a later filing date for petition signatures, whether or not that date was the product of previous litigation, otherwise, an arbitrary difference will be created among the states. In other words, a constitutional ratchet is unacceptable. *Hall v. Simcox,* 766 F.2d 1171, 1175 (7th Cir. 1985); *Arutunoff v. Oklahoma State Election Bd.,* 687 F.2d 1375, 1380 (10th Cir. 1982).

There have been multiple reasons for the State of Arkansas, and its General Assembly, to move election law deadlines. Among those reasons are the following: **(1)** two substantial changes in federal law (UOCAVA and MOVE Act, note 1, *supra*); **(2)** the beginning of early voting at least two weeks before the "preferential primary election" in May of even numbered years, Ark. Code Ann. Sec. 7-5-418(a)(1)(A); **(3)** the beginning of absentee voting at least sixty (60) days before the preferential primary election, Ark. Code Ann. Sec. 7-5-405(a)(1); **(4)** the beginning of military and overseas voting at least 46 days before the preferential primary, *including an instant run-off for the general primary election*, Ark. Code Ann. Sec. 7-5-406; **(5)** the existence of another filing deadline for independent candidates for municipal offices running party-affiliated primaries, Ark. Code Ann. Sec. 14-42-206(d)(1)(A), combined with the statutory

prohibition on appearing on the ballot more than one time at any general election, Ark. Code Ann. Sec. 7-5-111, *Roberson v. Phillips County Election Commission*, 2014 Ark. 480 (2014); and (**6**) independent candidates in Arkansas can qualify for the ballot as write-in candidates, obviating any need for petition signatures, Ark. Code Ann. 7-10-103(d), *Hall v. Simcox*, 766 F.2d 1171 (electoral regulatory scheme must be viewed in its entirety, and existence of availability of write-in access to the ballot is one of the essential considerations for ballot access cases). Superseding, intervening causes – like a change in federal law - are valid bases for the General Assembly to make changes to Arkansas State law, even in the face of lower court's declaratory actions. *See, Vadnais, Treasurer of Swift County v. Federal National Mortgage Ass'n*, No. 13–2733, (8th Cir. June 6, 2014). The declaratory relief previously granted must be viewed in light of the entirety of Arkansas's current statutory scheme, as well as relevant federal law, substantially moving all election law deadlines so as to provide for better ballot delivery to military and overseas voters.

In short, there are multiple reasons why this Court should not make a decision on the merits of the legal argument concerning the filing deadline. Even if Plaintiffs have some slim shred of standing left, they cannot make a facial challenge to the statute, and their "as-applied" challenge is much too immature for them to invoke the federal judicial power for the 2018 election cycle. The lack of ripeness dictates that the court wait for a better case, with relevant facts, and actual, concrete harm to a reasonably diligent independent candidate. Nothing in *McLain v. Meier*, 851 F.2d 1045 (8th Cir. 1988) requires the Court to ignore the clear teaching of *Storer, id. at n. 8*, as more fully set forth as the standing requirement in *Nelson*, 639 F.3d at 420.

**Reply Brief in Support of Defendant's Motion for Summary Judgment, page 14**

**WHEREFORE**, and for the foregoing reasons, Defendant Secretary of State Mark Martin prays that this Court grant Defendant the relief he seeks herein and in his Motion for Summary Judgment; that the Court deny Plaintiffs any of the relief they seek on the undisputed facts set forth; that the Court dismiss Plaintiffs' Complaint on the undisputed facts; that the Court dismiss any claims concerning the 2018 election cycle as not ripe for review; and that the Court grant Defendant such additional relief to which he may be entitled under the circumstances.

Dated this 12th day of January, 2015.

Respectfully submitted,

HONORABLE MARK MARTIN
SECRETARY OF STATE
In his Official Capacity, Defendant

By: _____
A.J. Kelly
Deputy Secretary of State
PO Box 251570
Little Rock AR 72225-1570
(501) 682-3401
Fax: (501) 682-1213
Email: kellylawfedecf@aol.com

*Attorney for Defendant*
*Secretary of State*

## CERTIFICATE OF SERVICE

I do hereby certify that on the date set forth, January 12, 2015, I have served the foregoing via the electronic filing system in the Federal District Court Clerk's Office (CM/ECF), and by fax to the following:

James C. Linger
1710 South Boston Avenue
Tulsa  OK  74119-4810
Fax: 918-583-8283

Jeff Rosenzweig
300 Spring St, Suite 310
Little Rock  AR  72201
Fax: 501-376-0770

_____
A.J. Kelly