IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| MARK MOORE, MICHAEL HARROD, and WILLIAM CHRIS JOHNSON,<br>....Plaintiffs<br><br>v.<br><br>MARK MARTIN, in his official capacity as Secretary of State for the State of Arkansas;<br>....Defendant. | Case No. 4:14-cv-00065-JM |

### AFFIDAVIT OF RICHARD WINGER

STATE OF CALIFORNIA     )
                        ) ss.
COUNTY OF SAN FRANCISCO )

Richard Winger, being duly sworn, deposes and says that:

1. I am a resident of San Francisco, California, over 18 years of age, and make this Affidavit with the knowledge that it is to be used in support of Plaintiffs' Statement of Material Facts Not in Dispute, Plaintiffs' Motion for Summary Judgment and Plaintiffs' Memorandum Brief in Support of their Motion for Summary Judgment. I make this Affidavit based on my own personal knowledge and research that I have conducted.

2. I consider myself an expert in the field of minor political parties, independent candidates, and election and ballot access laws in the United States, and have been so recognized by the Wall Street Journal, Time Magazine, Congressional Quarterly, and numerous Federal and State courts. I hold an A.B. Degree in Political Science from the University of California at Berkeley, have done further graduate study in Political Science at the University of California at Los Angeles, and have written numerous articles and various publications and journals on the

publications and journals on the subject of ballot access for minor parties and independent candidates and third party and independent candidate political statistics. Since 1985, I have been the publisher of Ballot Access News, a non-partisan newsletter that reports on developments in some areas of election law.

3. As an expert witness, I have testified in Federal court in behalf of a number of ballot access lawsuits as set forth in my Curriculum Vitae, marked Exhibit "2" to my previous Affidavit filed herein on December 29, 2014, and made a part of this Affidavit as though fully set forth herein. In addition, I have advised various third party and independent candidates in regard to ballot access laws. Some of these parties and candidates include John Anderson's 1980 Independent Campaign for President, the Libertarian Party, the Prohibition Party, the Socialists Workers' Party, the National Unity Party, the Conservative Party, the New Alliance Party, the Communist Party, the American Independent Party, the Reform Party, the Populist Party, the Green Party, and the Constitution Party. I have been accepted as an expert witness in U.S. District Courts in ten states.

4. I am familiar with the election laws of all 50 states and the District of Columbia as to ballot access for political parties and independent candidates. I am further familiar with the election results in the United States as to the major and minor political parties, and independent candidates for elective office. I have conducted research in this area for many years, and have made a particular study for the purpose of this Affidavit of the ballot access laws of the State of Arkansas, both past and present, and the history of major and minor political parties and independent candidates in Arkansas. Also, in preparation for this Affidavit, I had previously read and reviewed Defendant's Motion for Summary Judgment, Defendant's Statement of Material Facts Not in Dispute, Defendant's Brief in Support of Motion for Summary Judgment,

Defendant's Exhibits in Support of their Motion for Summary Judgment, Plaintiffs' Complaint and Defendant's Answer filed in the instant case.

5. Federal courts, since 1983, have been virtually unanimous that petition deadlines for non-presidential independent candidates cannot be earlier than the date of partisan primaries, or, at worst, the day before the primary. The U.S. Supreme Court itself ruled against a February petition deadline for newly-qualifying parties, in *Williams v. Rhodes*, 393 U.S. 23 (1968). The single most important issue in *Williams v. Rhodes* was the early petition deadline for newly-qualifying parties, because the plaintiffs in that case, officers of the American Independent Party, showed that their party would have been on the Ohio general election ballot except for the early deadline. The party did submit enough valid signatures to qualify for the ballot, after the deadline. At the time Ohio did not require signers of the petition to be registered voters; they merely had to be eligible to register to vote. Many Ohio counties (generally, the rural counties) did not even have voter registration at the time, so there was no Ohio list of registered voters to check the party's petition against. The party needed 433,100 signatures, and it submitted 453,000 signatures, after weeding out all duplicate signatures. Although there is a lot of discussion in one concurrence in *Williams v. Rhodes* about the difficulties for the party in nominating party officers if it had been recognized, the state maintained in its briefs, and at the oral argument, that if the party had just met the February petition deadline, it would not have been limited in its ability to function under the election law. I have copies of all the briefs in *Williams v. Rhodes*, from both the U.S. 3-judge District Court and the U.S. Supreme Court; I also have the transcript of the oral argument and I am very familiar with the case.

6. After *Williams v. Rhodes*, courts were still not clear as to whether early petition deadlines for newly-qualifying parties and independent candidates were always unconstitutional,

3

or only unconstitutional in conjunction with a very large number of signatures. However, the U.S. Supreme Court clarified this in 1983, in *Anderson v. Celebrezze*, 460 U.S. 780. In that case, Ohio's March 20 petition deadline for independent presidential candidates was held unconstitutional, even though the petition burden on plaintiff John B. Anderson was only 5,000 signatures, which was only about one-tenth of 1% of the number of registered voters in Ohio at the time (footnote one of the decision mentions the 5,000 signature requirement). Furthermore, the case involved the 1980 presidential election, and as the decision notes, five presidential candidates other than John Anderson had successfully met the Ohio deadline that year, each using the independent candidate petition procedure (see footnote 12). Since *Anderson v. Celebrezze*, lower federal courts have applied the principle of that decision to non-presidential independent candidates, and struck down deadlines that were earlier than the date of the partisan primary (or the day before the primary), regardless of the number of signatures required.

7. Here is a list of decisions about petition deadlines (for independent candidates and newly-qualifying parties), in which the petition deadlines were earlier than primary day.

| Year | Case Name | Citation | State | Type | Deadline | Pri. Date |
|---|---|---|---|---|---|---|
| 1983 | Warrick v. Condre | IP-83-810-C, s.d. | In | Indp/new pty | Feb. 22 | May 3 |
| 1983 | Libt Pty v. Kundert | civ-83-3071 | SD | New party | Mar. 15 | June 5 |
| 1984 | Stoddard v. Quinn | 593 F Supp 300 | Me | Independent | April 1 | June 12 |
| 1984 | LaRouche v. Burgio | 594 F Supp 614 | NJ | Independent | April 26 | June 5 |
| 1984 | Denny v. Eyrich | C-1-84-531, s.d. | Oh | Independent | Feb. 23 | May 8 |
| 1984 | LaRouche v. Monson | 84-0262, m.d. | Pa | Indp/new pty | Apr 20 | Aug 21 |
| 1984 | Serrette v. Connolly | 68172, Suffolk Co. | Ma | Ind/new pty | May 8 | Sep 18 |
| 1985 | Cripps v Seneca Co | 629 F Supp 1335 | Oh | Independent | Feb 21 | May 7 |
| 1986 | Libt Pty v Waihee | cv-86-0439 | Hi | New party | Apr 21 | Sep 27 |
| 1986 | Libt Pty v. Swack. | 638 F Supp 565 | Nv | New party | Apr 1 | Sep 2 |
| 1988 | Sigler v. McAlpine | 3AN-88-8695 | Ak | Ind/new pty | June 1 | Aug 23 |
| 1988 | Lendall v. McKuen | LR-C-88-311, | Ar | Independent | Jan 5 | Mar 8 |

4

| | | e.d. | | | | |
|---|---|---|---|---|---|---|
| 1988 | Merritt v. Graves | 87-4264-R | Ks | Independent | June 10 | Aug 2 |
| 1990 | Sykes v. McAlpine | 3AN-90-7508 | Ak | Ind/new pty | Aug 1 | Aug 28 |
| 1990 | New All Pty v. Hand | 933 F2d 1568 (11th) | Al | New party | Apr 6 | June 5 |
| 1991 | Libt Pty v. Ehrler | 776 F Supp 1200 | Ky | Ind/new pty | Jan 30 | May 28 |
| 1992 | Libt Pty v. Coghill | 3AN-92-8181 | Ak | Ind/new pty | Aug 5 | Sep 8 |
| 1992 | Fulani v. Lau | cv-N-92-535 | Nv | Ind/new pty | June 10 | Sept 1 |
| 1996 | Reform Pty v Priest | 970 F Supp 690 | Ar | New party | Jan 2 | May 21 |
| 1997 | CAPP v. Hooks | 121 F 3d 876 (3rd) | NJ | Ind/new pty | Apr 10 | June 3 |
| 2004 | Lee v. Keith | 463 F 3d 763 | Il | Independent | Dec 15 | Mar 16 |
| 2004 | Libt Pty v Blackwell | 462 F 3d 579 | Oh | New party | Nov 3 | Mar 2 |
| 2004 | Nader v Brewer | 531 F 3d 1028 | Az | Independent | June 9 | Sep 7 |
| 2008 | Kelly v McCulloch | 2012WL 1945423 | Mt | Independent | Mar 13 | June 3 |
| 2010 | Libt Pty v Goins | 793 FSupp 2d 1064 | Tn | New party | Mar 10 | Aug 5 |
| 2012 | Cal Justice v Bowen | 2012WL 5057625 | Ca | New party | Jan 2 | June 5 |
| 2012 | Green Pty v Hargett | 882 F Supp 2d 959 | Tn | New party | Apr 5 | Aug 2 |
| 2012 | Const Pty v Duran | 1:12cv-325 | NM | New party | Apr 3 | June 5 |

8. In the chart above, the "year" refers to the election year in which plaintiffs sought to be included on the ballot. The "deadline" column shows the petition deadline that was successfully challenged in that case, and the "Pri. Date" column tells the date of that state's primary that year. All of the dates in those two columns refer to the year named in the far-left column, except that in the 2006 Illinois and Ohio entries, the petition deadline was so early, it was actually in the calendar year before the election year, so the deadline in those two cases was in 2005.

9. In all the cases mentioned above, the court either struck down the deadline, or enjoined it. In the Kansas and South Dakota cases, the state conceded the deadline was unconstitutional and consented to judgment.

5

10. The only cases since 1983 in which federal courts have upheld petition deadlines earlier than the date on which the primary is being held were: (1) *Stevenson v. Illinois State Board of Elections*, 794 F.2d 1176 (7th Cir. 1986). [However, that case was overruled by the U.S. Court of Appeals for the Seventh Circuit in the case cited above of *Lee v. Keith,* 463 F.3d 763 (7th Cir. 2006)]; (2) *Libertarian Party of Washington v. Munro*, 31 F.3d 759 (9th Cir. 1994). [However, in the *Munro* case, the U.S. Court of Appeals for the Ninth Circuit based its decision on the fact that no plaintiff candidates were injured by the deadline]; and (3) *Arizona Green Party v. Bennett*, U.S. Dist. Ct., Case No.: cv-14-375. [However, in the *Bennett* case, the U.S. District Court based its decision on the political party's failure to present any evidence that the deadline injured it, and the decision is being appealed to the Ninth Circuit].

<u>History of Arkansas Independent Candidate Procedures</u>

11. Arkansas has had government-printed ballots since 1891. Between 1891 and 1955, Arkansas independent candidate procedures were very lenient, yet Arkansas never had a crowded general election ballot during that period. In 1954, the year before the independent candidate procedures were made far more stringent, there was only one candidate on the Arkansas November ballot for U.S. Senator, and all six U.S. House races. That one candidate, for each race, was the Democratic nominee. Yet in 1955, the legislature made it virtually impossible for independent candidates to get on the ballot. Between 1891 and 1955, independent candidates only needed 50 signatures, no matter what office they were running for. The petition deadline was 20 days before the general election, until 1953, when the deadline was moved to 45 days before the general election. In 1955, the number of signatures was changed to 15% of the last gubernatorial vote within that district, or statewide, and the deadline was moved to 60 days before the general election. In 1969, the deadline was moved to the date on which candidates

running in a primary must file, a huge change from September to March. These changes were not made for any election-administration reason; they were made because legislators desired to reduce competition in elections.

12. Federal courts in Arkansas have repeatedly declared early petition deadlines for independent candidates and newly-qualifying parties unconstitutional, only to have the legislature ease the deadlines, but then a few years later restore the old, invalid deadlines. The Arkansas independent candidate petition deadline was invalidated in 1975, and again in 1976, and yet again in 1988. The U.S. Supreme Court summarily affirmed the 1976 decision. And yet, inexplicably, the 2013 Arkansas legislature ignored this history and moved the independent deadline to a date that had previously been struck down. Although the petition for newly-qualifying parties is not part of this lawsuit, it is noteworthy that the petition deadline for newly-qualifying parties was also declared invalid in 1977, and yet in 1987 the legislature re-enacted the early deadline for new parties as well. That deadline was again declared unconstitutional in 1996, and yet the 2013 legislature moved the newly-qualifying party deadline back to January, in defiance of the 1977 and 1996 decisions.

13. In the preparation of this Affidavit, I have consulted the pleadings in this case, the election results, ballots, and laws of Arkansas and the other 49 states and the District of Columbus, the work of other election experts, and my personal research.

Further Affiant sayeth not.

_____
Richard Winger

Subscribed and sworn to before me this __8__ day of May, 2015.

_____
Notary Public

Commission (and Expiration): March 26, 2016

(SEAL)      See attached notary.



MARIA CECILIA LUALHATI
Commission # 1973349
Notary Public - California
San Francisco County
My Comm. Expires Mar 26, 2016

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Francisco_

Subscribed and sworn to (or affirmed) before me on this _8th_ day of _May_, 20_15_, by _Richard Winger_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(Seal)

MARIA CECILIA LUALHATI
Commission # 1973349
Notary Public - California
San Francisco County
My Comm. Expires Mar 26, 2016

Signature _[signature]_