IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |
|---|---|
| MARK MOORE, et al., ) | |
| ....Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:14-cv-00065-JM |
| ) | |
| MARK MARTIN, in his official ) | |
| capacity as Secretary of State ) | |
| for the State of Arkansas; ) | |
| ....Defendant. ) | |

**PLAINTIFFS' MEMORANDUM BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

I.  STATEMENT OF THE CASE AND ISSUES IN QUESTION
WHICH JUSTIFY THE GRANT OF RELIEF SOUGHT

This case is a ballot access case on behalf of individual Arkansas voters who have been in the past and intend in the future to be Independent candidates for elective office in Arkansas. Plaintiffs seek declaratory and injunctive relief from the Court, but do not request of the Court at this time that the Court dictate to the Arkansas legislature what the pertinent law should be specifically as to the date for filing petitions for Independent candidate status in Arkansas. Rather, Plaintiffs only ask that the Court state that the current laws are unconstitutional as applied, and permanently enjoin the enforcement of said laws. While the 2014 General Election in Arkansas is over, the instant case involves an important, continuing constitutional issue which is capable of repetition.

The laws in question in the instant case are as follows, to-wit:

**Ark. Code Ann. § 7-7-101—Selection of nominees**

The name of no person shall be printed on the ballot in any general or special election in this states

as a candidate for election to any office unless the person shall have been certified as a nominee selected pursuant to this subchapter.

**Ark. Code Ann. § 7-7-103—Filing as an independent—Petitions--Disqualification**

(a)(1) A person desiring to have his or her name placed upon the ballot as an independent Candidate without political party affiliation for any United States office other than President of the United States or Vice President of the United States or state, county, township, or district office in any general election in this state shall file, during the party filing period for the year in which the election is to be held, a political practices pledge, an affidavit of eligibility, the petition under this section, and a notice of candidacy stating the name and title the candidate proposes to appear on the ballot and identifying the elective office sought, including the position number, if any.

(2)(A) An independent candidate shall state the same position, including the position number, if any, on his or her petition.

(B) When a candidate has identified the position sought on the notice of candidacy, the candidate shall not be allowed to change the position but may withdraw a notice of candidacy and file a new notice of candidacy designating a different position before the deadline for filing.

(b)(1)(A) The person shall file petitions signed by not less than three percent (3%) of the qualified electors in the county, township, or district in which the person is seeking office, but in no event shall more than two thousand (2,000) signatures be required for a district, county, or township office.

(B) If the person is a candidate for state office or for United States Senator in which a statewide race is required, the person shall file petitions signed by not less than three percent (3%) of the qualified electors of the state or which contain ten thousand (10,000) signatures of qualified electors, whichever is the lesser.

(2) Each elector signing the petition shall be a registered voter, and the petition shall be directed to the official with whom the person is required by law to file the petition to qualify as a candidate and shall request that the name of the person be placed on the ballot for election to the office mentioned in the petition.

(3) Petitions shall be circulated not earlier than ninety (90) calendar days before the deadlne for filing petitions to qualify as an independent candidate unless the number of days is reduced by a proclamation, ordinance, resolution, order, or other authorized document for a special election under 7-11-101, *et seq*.

(4) In determining the number of qualified electors in any county, township, or district or in the state, the total number of votes cast therein for all candidates in the preceding general election for the office of Governor shall be conclusive of the number of qualified electors therein for the purposes of this section.

(5)  If the number of days in which the petition for independent candidacy may be circulated is reduced by a proclamation, ordinance, resolution, order, or other authorized document for a special election under 7-11-101, *et seq.*, the number of signatures required on the petition shall be reduced proportionately.

**Ark. Code Ann., § 7-7-203(c)(1)**

(c)(1)  The party filing period shall be a one-week period ending at 12:00 noon on the first day in March and beginning at 12:00 noon one (1) week prior to the first day in March.

The laws in question in the case at bar, viz.: Ark. Code. Ann. §§ 7-7-101, 7-7-103, and 7-7-203(c)(1), as they applied to the Plaintiffs herein for the recent 2014 Arkansas General Election cycle, and all subsequent Arkansas General Election cycles, set an unconstitutional early and vague deadline of March 3, 2014 (or March 1 for future deadlines for Independent candidate petitions),[1] during election years for Independent candidates and their supporters. Ark. Code Ann., § 7-7-103(b)(1)(A) was amended in 2013 to move the petition filing deadline for independent candidates from May 1 of an election year to the party filing period for the year in which the election is to be held. Amended by laws 2013, Act 1356 (HB 2036). Because of the requirements of Ark. Code Ann., §§ 7-1-108 and 7-7-203(c)(1), the petition filing deadline for independent candidates for 2014 was Monday, March 3, 2014, but will normally be on March 1 in future general election years. The foregoing change in the ballot access law for independent candidates made petitioning even more difficult by setting a petitioning deadline farther away from the date of the Arkansas General Election when political interest among the voting public is less and placing the ninety (90) day petitioning time during weather conditions in December, January, and February when Arkansas weather is generally not the most conducive for petitioning, the hours of daylight after normal working hours are minimal, and the holidays take many voters out of their place of residence.

On the 3rd day of March, 2014 (which will be March 1 of even numbered years for future

3

election cycles), independent candidates were required, and will be required in the future, to turn in petition signatures for recognition and certification of themselves as independent candidates under the current election laws in question at a time when there is relatively less interest in politics, there is uncertainty as to who the major party candidates will be and what issues they will campaign on. In this regard, it is interesting to note that the U.S. Court of Appeals for the Eighth Circuit has held that ". . . it is important that voters be permitted to express their support for independent and new party candidates during the time of the major parties' campaigning and for some time after the selection of candidates by party primary." *McLain v. Meier*, 637 F.2d 1159, at 1164 (8th Cir. 1980). Under current Arkansas law, the lesser of three percent of the qualified voters in the State or 10,000 valid petition signatures of registered Arkansas voters are required for a statewide independent candidate, with the lesser of three percent of qualified voters in the district or county or 2,000 petition signatures required for districts or counties. Ark. Code Ann., §§ 7-7-103(b)(1)(A) and (b)(1)(B). Arkansas's unnecessarily early aforesaid petition signature deadline for independent candidates, coupled with the petition signature requirement, the lowered political interest of the voting public further removed from the election dates in Arkansas, and the inconvenient petitioning time period is unconstitutional, is constitutionally unnecessary and vague, lacks any compelling interest, and unequally and unfairly impacts in a discriminatory manner the rights of Independent candidates and their supports in Arkansas.

## II. CONCISE STATEMENT OF MATERIAL FACTS TO WHICH NO GENUINE ISSUE EXISTS

---

[1]  The petition deadline for Independent candidates was March 3, 2014, because the regular deadline date of March 1 fell on a Saturday.  In the next general election cycle in Arkansas in 2016, March 1st falls on a Tuesday.

The Plaintiffs to the instant case submit that there is no genuine issue as to the following material facts:

1.  Plaintiff Mark Moore, while he did not successfully comply with the petition signature deadline of March 3, 2014, for Independent candidates for Lieutenant Governor of Arkansas in 2014, did successfully comply with the previously existing later deadline for Independent candidates for the Arkansas State Legislature in 2012, when he was an Independent candidate for the Arkansas State Legislature. (Plaintiffs' Exhibit 6, Affidavit of Mark Moore, pp. 3-4, ¶¶ 3 and 4).

2.   It is Plaintiff Mark Moore's intention to be an Independent candidate for Lieutenant Governor of Arkansas in the General Election to be held in November of 2018. The current deadline to file petitions for an Independent candidacy for Lieutenant Governor in Arkansas in 2018 is March 1, 2018. (Plaintiff's Exhibit 6, Affidavit of Mark Moore, p.2, ¶5).

3.   Independent petition deadlines in which the petition deadline is earlier than the primary date for the selection of political party candidates have overwhelmingly been struck down as unconstitutional or enjoined. (Plaintiffs' Exhibit 5, Affidavit of Richard Winger, pp.3, 4, 5, and 6, ¶¶5, 6, 7, 8, 9, and 10).

4.  Arkansas has had government printed ballots since 1891.  Between 1891 and 1955, Arkansas Independent candidate procedures were very lenient, yet Arkansas never had a crowded general election ballot during that period. (Plaintiffs' Exhibit 5, Affidavit of Richard Winger, p.6, ¶11).

5.   Between 1891 and 1955, Independent candidates in Arkansas only needed 50 signatures, no matter what office they were running for, and the petition signature deadline for Independent candidates was 20 days before the General Election until 1953, when the deadline was moved to 45 days before the General Election. (Plaintiffs' Exhibit 5, Affidavit of Richard Winger, p.6, ¶11).

6.  In 1955, Arkansas increased the number of signatures required to 15 % of the last gubernatorial vote within the district or statewide, and moved the petition deadline to 60 days before the General Election. (Plaintiffs' Exhibit 5, Affidavit of Richard Winger, p.6, ¶11).

7.   In 1969 in Arkansas, the petition deadline was moved to the date on which candidates running in a political party primary must file, i.e., from September to March. These changes were not made for any election-administrative reason, but rather because legislature desired to reduce competition in elections. (Plaintiffs' Exhibit 5, Affidavit of Richard Winger, pp.6-7, ¶11).

8.   While there have been a number of federal court decisions in Arkansas which have declared early petition deadlines for Independent candidates unconstitutional, the Arkansas Legislature, after easing the petition deadline requirements, has a few years later, restored the old, invalid deadlines. After earlier deadlines were declared invalid by federal courts in Arkansas in 1975, 1976, and 1988, the Arkansas Legislature in 2013 moved the Independent deadline for the filing of petitions for Independent candidates to a date that had previously been struck down. (Plaintiffs' Exhibit 5, Affidavit of Richard Winger, p.7, ¶12).

### III.  STANDARD OF REVIEW

A ballot access case requires the use of a standard of review which weighs the affects of the election law challenged.  The United States Supreme Court has held in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) what the standard is to be used in determining whether election laws are unconstitutionally oppressive of potential voters' rights.  The Supreme Court held that such constitutional challenges to specific provisions of a state's election laws cannot be resolved by any litmus-paper test that will separate valid from invalid restrictions, but rather that the Trial Court ". . . must resolve such a challenge by an analytical process that parallels its work in ordinary litigation." *Anderson* at 789.  In a three-prong balancing test, the U.S. Supreme Court stated that the Trial Court must

> . . . first consider the character and magnitude of the asserted injury to the rights protected by the first and fourteenth amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interest put forth by the state as justifications for the burden imposed by its rules. In passing judgment, the court must not only determine legitimacy and strength of each of those interests; it also must consider the extent to which these interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. *Anderson* at 789.

Under this test, the trial court must apply a level of scrutiny which varies on a sliding scale with the extent of the asserted injury to Plaintiffs' constitutional rights. When, at the low end of that scale, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, the 'State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)(quoting *Anderson v. Celebrezze*, 460 U.S. at 788, 788-789 n.9. But when the law places "severe" burdens on the rights of political parties, candidates or voters, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

Arkansas' challenged election laws for Independent candidates and their supporters' burden "two different, although overlapping kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). Further, the appropriate standard for the Trial Court to apply in deciding a motion for summary judgment requires the Trial Court to ". . . grant summary judgment if there is no genuine issue as to any material fact and if the

moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Nelson v. City of McGehee, 876 F.2d 56 (8th Cir. 1989), and Fed.R.Civ.P. 56(c). In essence, the inquiry for the Trial Court is ". . . whether there is the need for a trial . . .." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250.

## IV.  ARGUMENTS AND AUTHORITIES

The requirement set forth by Arkansas that Independent candidates turn in their petition signatures by March 1st is unconstitutional as a matter of precedent as decided previously in several decisions by the United States District Court for the Eastern District of Arkansas.  There is no question but that the individual states of the Union have a legitimate interest in regulating access to the election ballot so as to prevent fraud and confusion and to ensure an orderly election process.  *American Party of Texas v. White,* 415 U.S. 767, 780-781 (1974); *Williams v. Rhodes*, *Id.*  It is undisputed that restrictions on access to the election ballot burden two distinct and fundamental rights, ". . . the right of individuals to associates for the advancement of political beliefs, the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes,* 393 U.S. at 30.  Access restrictions also implicate the right to vote because, absent recourse to referendums, 'Voters can assert their preferences only through candidates or parties or both,' *Lubin v. Panish*, 415 U.S. 709, 716 (1974); "*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, at 184 (1979).

It is the contention of the Plaintiffs urging this lawsuit that the State of Arkansas has gone too far in infringing the Plaintiffs' rights to political association and ballot access as to Independent candidates and their supporters.  The teaching of the United States Supreme Court is

that:

> "even when pursuing a legitimate interest, a State may not choose means that **unnecessarily restrict** constitutionally protected liberty," *Kusper v. Pontikes*, 414 U.S. 51, 58-59 . . . (1973), and we have required that states adopt the **least drastic means** to achieve their end. *Lubin v. Panish, supra*, at 716 . . .; *Williams v. Rhodes, supra*, at 31-33 . . . **This requirement is particularly important where restrictions on access to the ballot are involved.** [emphasis added] *Illinois State Board of Elections v. Socialist Workers Party, Id.,* at 185.

"As our past decisions have made clear, the significant encroachment upon associational freedom cannot be justified upon a mere showing of a legitimate state interest [citations omitted]. If the state has open to it a least drastic way of satisfying its legitimate interest, it may not choose a legislative scheme that broadly stifles the exercise of fundamental liberties. *Shelton v. Tucker*, 364 U.S. 479 [1960]." *Kusper v. Pontikes,* 414 U.S. at 58-59.  In deciding what the "least drastic or restrictive means," is, it is necessary for the Court to ". . . consider the facts and circumstances behind the law, the interest which the state claims to be protecting, and the interests of those who are disadvantaged by the classification." *Storer v. Brown*, 415 U.S. 724, at 730 (1974), citing *Williams v. Rhodes, Id.* and *Dunn v. Blumstein*, 405 U.S. 330 (1974).  Also see, *Mandel v. Bradley*, 432 U.S. 173 (1977); and *McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980).  In such a regard, it is interesting to look at the history of ballot access as to Independent candidates in Arkansas as set forth in Plaintiffs' Exhibit "5", Affidavit of Richard Winger, pp.6-7, ¶¶11 and 12.  Arkansas has continually had a history of first reasonable and constitutional deadlines for Independent candidates, subsequent unnecessary and unconstitutional petition deadlines for Independent candidates set by the Legislature—which are then struck down by the federal courts, new petition deadlines for Independent candidates in line with the federal court's decision which are subsequently changed by later legislatures so as to be unconstitutional and, thus, requiring

9

further legal action followed by subsequent remedial legislation by the Arkansas Legislature.

Of course, an Independent candidates in Arkansas could choose to run as the candidate of a political party. However, such a choice would deny him or her the option of running as an Independent candidate. The United States Supreme Court has stated that "The political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown,* 415 U.S. at 745.

As the United States Supreme Court has stated in regard to ballot access laws:

> A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties . . . . By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity in competition in the marketplace of ideas. Historically, political figures outside the two major parties have been fertile sources of new ideas and new programs; many other challenges to the status quo have in time made their way into the political mainstream. . . . In short, the primary values protected by the First Amendment--"a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan*, 376 U.S. 254, at 270 (1964)—are served when election campaigns are not monopolized by the existing political parties. *Anderson v. Celebrezze*, 460 U.S. at 793-794.

V.  THE MARCH PETITION DEADLINE FOR INDEPENDENT CANDIDATES
    IN ARKANSAS IS UNCONSTITUTIONAL UNDER THE AUTHORITY OF
    PREVIOUS DECISIONS DECIDED BY THIS COURT

The March 1 deadline of Ark. Code Ann., §§ 7-7-103 and 7-7-203(c)(1)—which was Monday, March 3, in the 2014 election cycle--is and will be before the preferential primary elections of the Republican and Democratic parties (which was on May 20, 2014 for the most

recent general election cycle), as well as more than three months before the Arkansas General Primary runoff election (which was on June 10, 2014 for the most recent general election cycle), and more than eight months before the most recent Arkansas General Election on November 4, 2014. While the completion of the 2014 elections in Arkansas is now past, Plaintiffs--as both voters in Arkansas and as potential future Independent election candidates--can still seek declaratory and injunctive relief as to the election laws complained of herein and their impact on future Arkansas General Elections as to Independent candidates and the right of Arkansas voters to cast their vote effectively.  Plaintiffs have previously discussed in their response and memorandum brief in opposition to Defendant's Motion for Summary Judgment filed herein on December 29, 2014 [Doc. No. 21], why they continue to have standing as voters to challenge the election laws in question, and why the case at bar is not moot because it presents an election law case which is capable of repetition, yet evading review.  Therefore, Plaintiffs will not again repeat their arguments herein.

However, the issue of too early a deadline and/or the petition signature requirement for Independent candidates in Arkansas has been addressed to one extent or another in numerous previous cases decided by this Court which established precedent for the issues in the instant case. *Lendall v. Bryant*, 387 F.Supp. 397 (E.D. Ark., 1975) (hereinafter *Lendall I*); Lendall *v. Jernigan*, No. LR-76-C-184, *aff'd mem.*, 433 U.S. 901 (1977) (hereinafter *Lendall II*); *Lendall v. Jernigan*, 424 F.Supp. 951 (E.D. Ark., 1977) (hereinafter *Lendall III*); *Rock v. Bryant*, 459 F. Supp. 64 (E.D. Ark., W.D. 1978); and *Lendall v. McCuen*, No. LR-C-88-311 (E.D. Ark., W.D., Aug. 16, 1988) (hereafter *Lendall IV*). Arkansas has previously had deadlines for Independent candidates and political party candidates declared unconstitutional which were both much more liberal and closer to the primary and general elections, as well as more restrictive, than currently exists in the election

11

laws at issue herein. *Lendall II*; *Lendall III*; *Lendall IV*; and *Green Party of Arkansas v. Priest*, 159 F.Supp.2d 1140 (E.D. Ark. 2001). Therefore, in that regard, the "binding precedent which this Court must follow is the case of . . . *Lendall II* in which the sole issue was the deadline for filing petitions by independent candidates. In *Lendall II,* which was affirmed by the United States Supreme Court without opinion, the three-judge panel held that the first Tuesday in April was an unconstitutionally early deadline.*"Lendall IV* at 5. Then*, in Lendall III*, the Chief Judge of this Court, "who was one of the members of the three-judge panel in *Lendall II*, again made the ruling of the Court in that case abundantly clear:"

> At the time of three-judge court decision in the second proceeding (*Lendall II),*
> we concluded that in no event could the April deadline be justified for
> independent candidates. *Lendall III*, 424 F.Supp. at 954; *Lendall IV*, at 5-6.

Therefore, since this Court has held a filing deadline in early April to be unconstitutional, and this Court in *Lendall III* recognized that a rule had been laid down to which the Court must adhere, therefore, a filing deadline in early April was unconstitutional, and the Court found that a filing deadline in *Lendall IV* was also unconstitutional. Further, the Court in *Lendall IV,* while finding that "Mr. Lendall made no attempt to comply with the January filing deadline", was convinced ". . . that this factor alone would not factually distinguish this case from the clear ruling of *Lendall II* that any filing deadline set for independent candidates before the first Tuesday in April is unconstitutional." *Lendall IV,* at 6. Thus, a filing deadline in early March for Independent candidates is also unconstitutional. To ignore the history of this repeated litigation issue and the facts that were the basis for this Court's prior rulings would be a mistake and contrary to applicable law. As the U.S. Supreme Court observed in an election controversy, the historical record of political parties' participation in elections is relevant as "[p]ast experience will be a helpful, if not

12

always an unerring, guide." *Storer*, 415 U.S. at 742.  In addition, for Plaintiffs' equal protection claim based upon the effects of the Arkansas elections laws in question, the U.S. Supreme Court stated in an election controversy: "In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification". *Williams v. Rhodes*, 393 U.S. 23, at 31 (1968).  In regard to other state laws of a similar nature declared unconstitutional, and the past history of Arkansas independent candidate procedures, see Plaintiffs' Exhibit "5", Affidavit of Richard Winger, ¶¶ 5, 6, 7, 8, 9, 11, and 12.

The Trial Court should further consider carefully in judging the early deadline question the cases of *Anderson v. Celebrezze, Id.*; and *McCarthy v. Noel*, 420 F.Supp. 799 (D.R.I. 1976), (which struck down as unconstitutional a deadline of August 12, 1976, which was about a month before the state primary was set and even though only 1,000 signatures were required to obtain ballot status for an Independent presidential candidate).  These two cases paid particular attention as to the date of the election and the primary election in comparison to the petitioning deadline date.  As the *McCarthy v. Noel* Court went on to say:

> The goals of the stability and integrity of the political process can effectively be served by a filing deadline later than August 22 (the date on which plaintiff had tendered sufficient signatures to qualify).  These goals would be better served and less burdensome to independents by a deadline related to the analogous events of state primaries, major party nominations, and elector-designations.

\* \* \* \*

"[T]he Court places particular emphasis on the fact that Rhode Island cannot finalize its ballot until after the party primary; there is thus simply no meaningful justification under the cases for requiring independents to qualify a month earlier than that." *McCarthy v. Noel, 420 F. Supp.* at 803.

Significantly, Arkansas also cannot finalize its ballots until after the party primary, so there is no meaningful justification under the cases for requiring independents to qualify by the petition signature deadline in early March.

The foregoing arguments and cases would indicate that the laws in question herein are unconstitutional under the *Anderson v. Celebrezze* test.  "It is clear that the Supreme Court has consistently required a showing of necessity for significant burdens on ballot access."  *Anderson v. Celebrezze*, 460 U.S. at 789; and *Storer v. Brown*, 415 U.S. at 743.  The final part of the *Anderson* test is that the Court must consider the extent to which legitimate state interests make it necessary to burden the rights of the Plaintiffs. *Anderson v. Celebrezze, Id.*  Particularly is such a conclusion warranted when you consider the foregoing cases and the fact that Plaintiffs' expert witness notes in his Affidavit that "Federal courts in Arkansas have repeatedly declared early petition deadlines for independent candidates and newly-qualifying parties unconstitutional, only to have the legislature ease the deadlines, but then a few years later restore the old, invalid deadlines." (Plaintiffs' Exhibit "5", Affidavit of Richard Winger, p. 7, ¶ 12).

## VI.  CONCLUSION

Plaintiffs have asserted an injury by a petition deadline for Independent candidates which is unconstitutional under prior rulings of this Court.  The Plaintiffs are no longer seeking to be put on the Arkansas ballot as Independent candidates at this time, but are rather simply challenging the early deadline for petition signatures, coupled with the relatively severe requirement of one percent of the last gubernatorial vote or 10,000 signatures in Arkansas for a statewide petition or three percent or 2,000 petition signatures for non-statewide offices.  A continuation of the early deadline constitutes a continued barrier and chilling effect on future attempts to obtain the necessary

petitions to gain Independent candidate status in Arkansas. It is not necessary for the Court to decide in the instant case at this time what specifically the Arkansas Legislature should do in reforming the election laws in question.  It is enough to declare the laws at issue which set a March 1st petition deadline for Independent candidates unconstitutional for the reasons asserted above and issue an injunction against its enforcement.  The Legislature can then decide to set a new specific and constitutional date for a petition filing deadline in line with this Court's decision.

WHEREFORE, premises considered, the Plaintiffs request that Plaintiffs' Motion for Summary Judgment be granted and Defendant's Motion for Summary Judgment be denied.

Respectfully submitted this 13th day of May, 2015.

> MARK MOORE and MICHAEL HARROD,
> Plaintiffs
>
> /s/ James C. Linger
> James C. Linger, OBA #5441
> *Counsel for Plaintiffs*
> 1710 South Boston Avenue
> Tulsa, OK 74119-4810
> Telephone (918) 585-2797
> Facsimile (918) 583-8283
> bostonbarristers@tulsacoxmail.com

JEFF ROSENZWEIG, AB No. 77115
*Counsel for Plaintiffs*
300 Spring Street, Suite 310
Little Rock, Arkansas 72201
Telephone (501) 372-5247
Facsimile (501) 376-0770
jrosenzweig@att.net

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record via the Court's CM/ECF e-mail notification system on the 13th day of May, 2015.

/s/ James C. Linger
James C. Linger