**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 27 2015

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**MARK MOORE, and**
**MICHAEL HARROD**                                    **PLAINITFFS**


**VS.**                        **Case NO. 4:14-CV-65-JM**


**HONORABLE MARK MARTIN,**
**in his official capacity as**
**Arkansas Secretary of State**                        **DEFENDANT**

### DEFENDANT ARKANSAS SECRETARY OF STATE MARK MARTIN'S
### BRIEF IN SUPPORT OF DEFENDANT'S RESPONSE TO
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Comes now Defendant, Arkansas Secretary of State Mark Martin, for his Brief in Support

of his Response to Plaintiffs' Motion for Summary Judgment, by and through his attorney, and

states that:

The Court should grant judgment in favor of Defendant as a matter of law, and should

deny Plaintiffs' Motion for Summary Judgment at this juncture.  Plaintiffs lack standing and so

the Court does not have subject matter jurisdiction.   Plaintiffs cannot show that they have

suffered any injury *as a result of the actions of this Defendant.*  Plaintiffs cannot show that this

Court can remedy any actual injury or harm to these Plaintiffs for the 2014 General Election.

Plaintiffs took no action to resolve this matter prior to the 2014 General Election and cannot now

complain about the results.  The 2014 General Election has been held; results have been certified (Ex. 8, 9); and none of the Plaintiffs took the appropriate, required action to have their names placed on the ballot after February 6, 2014.  The case is moot.  Defendant is entitled to judgment accordingly.

This is ostensibly a ballot access case.  Plaintiffs sought to have their names printed on the November 4, 2014 General Election ballot in the State of Arkansas as "Independent Candidates."  Plaintiffs challenged only the *timing* of the requirement that Independent Candidates submit their petition signatures in order to qualify to have their names printed on the ballot,[1] and sought to have the deadline "moved" from March 3, 2014, to May 1, 2014.  However, Plaintiffs collected no signatures on candidate petitions, submitted no signatures on candidate petitions, and did not even attempt to submit signatures on valid candidate petitions, by either of those deadlines (March 3 nor May 1, 2014).  (Ex. 1, 2, 3, 4, 5).  It is undisputed that Plaintiffs' names were not placed on the 2014 General Election ballot for the State of Arkansas.  It is undisputed that the 2014 General Election has taken place, and the relief Plaintiffs seek is no longer available for this election cycle.

---

[1]  The deadlines for filing all relevant documents to qualify any and all candidates for the November, 2014, General Election ballot for all state and county candidates was changed to the end of the party filing period, March 3, 2014, during the 2013 legislative session. *See, e.g.,* Act 1356, Acts of Arkansas 2013, *codified at* Ark. Code Ann. §7-7-103 (changing only the deadline for filing petition signatures for independent candidates to March 3, 2014 from May 1).

**Brief in Support of Defendant's RESPONSE to Pl's Motion for Summary Judgment, P. 2**

## STANDING AND JURISDICTION

Plaintiffs cannot show that they suffered an injury as a result of the actions of this Defendant that can be redressed by this Court at this time.  Plaintiffs' Complaint was filed on February 6, 2014, i.e., prior to the "party filing period" for candidates.   The party filing period in 2014 was a one week period ending at 12:00 noon on March 3, and beginning one (1) week prior to the end date, February 24.  Ark. Code Ann. §7-7-203(c)(1).  Independent Candidates must file during the party filing period.  Ark. Code Ann. §7-7-203(c); Ark. Code Ann. §7-7-103(a).   Since Plaintiffs' February 6 Complaint was filed, only Plaintiff Moore attempted to file necessary candidate paperwork with Defendant, albeit unsuccessfully, as a result of his own actions. (Ex. 1, 4, 5, 6, 7).  Plaintiff Harrod neither filed nor attempted to file any of the necessary candidate paperwork with Defendant during the party filing period ending on March 3, 2014. (Ex. 2, 3).

Plaintiffs do not have standing to complain.  Standing is a matter of jurisdiction. *Constitution Party of South Dakota v. Nelson*, 639 F.3d 417, 420 (8th Cir. 2011).  Under Article III of the United States Constitution, federal courts may only adjudicate actual cases or controversies.  *Id. (citing cases)*.  It is the Article III standing requirement that enforces this case-or-controversy requirement.  *Id.*  To satisfy the "irreducible constitutional minimum" of Article III standing, each Plaintiff must establish that he or she has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; that there is "a causal connection between the injury and the conduct complained of"; and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Id., (*citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119

L.E.2d 351 (1992)).  Plaintiffs are unable to do so now, as a result of their own lack of action.

Courts have repeatedly held that under Article III of the Constitution, a threshold

requirement for any civil action is a "case or controversy" that exists when the named plaintiff

has alleged a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and

likely to be redressed by the requested relief." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51,

111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991) (quoting *Allen v. Wright*, 468 U.S. 737, 104 S. Ct.

3315, 82 L. Ed. 2d 556 (1984)).  The Supreme Court has held that:

> [A] plaintiff . . . must allege specific, concrete facts demonstrating that the
> challenged practices harm him, and that he personally would benefit in a tangible
> way from the court's intervention. Absent the necessary allegations of
> demonstrable, particularized injury, there can be no confidence of 'a real need to
> exercise the power of judicial review' or that relief can be framed 'no broader
> than required by the precise facts to which the court's ruling would be applied.'
>
> * * *
>
> The rules of standing, whether as aspects of the Art. III case-or-controversy
> requirement or as reflections of prudential considerations defining and limiting
> the role of the courts, are threshold determinants of the propriety of judicial
> intervention. It is the responsibility of the complainant clearly to allege facts
> demonstrating that he is a proper party to invoke judicial resolution of the dispute
> and the exercise of the court's remedial powers.

*Warth v. Seldin*, 422 U.S. 490, 508, 517-18, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).  Plaintiff's

"threat of injury" must be both "real and immediate" not "conjectural" or "hypothetical." *City of*

*Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).  Plaintiffs'

theory of injury (concerning access to the Arkansas ballot) is now much too speculative to satisfy

the well-established requirement that threatened injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (citing *Whitmore* v. *Arkansas*, 495 U.S. 149, 158 (1990)). "[A]llegations of possible future injury" are not sufficient. Id. at 1147 (*citing Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Plaintiffs have failed, entirely, to address this 2013 Supreme Court opinion.

In this case, Plaintiffs now cannot meet this standard. This Defendant has done nothing to harm these three named Plaintiffs. Plaintiff did not harm Moore; he failed to sign his Notice of Candidacy and failed to submit, or attempt to submit, candidate petition signatures at any time. (Ex. 1, 4, 5, 6, 7). Plaintiff Harrod did not submit, or even attempt to submit, *any* of the necessary candidate paperwork to this Defendant during the party filing period. (Ex. 2, 3, 4).

Plaintiffs must show that they *actually filed* or *attempted to file* for the office they claim to seek, during the appropriate time frame, February 24 to March 3, 2014. Plaintiffs must additionally show that they fulfilled all of the other requisite filing requirements, unchallenged in the Complaint, such as filing or tendering "affidavits of eligibility" (Ark. Code Ann. §7-7-203(c)(2)), and "political practices pledge" (Ark. Code Ann. §7-7-203(c)(3)). "The name of a candidate who fails to file a … political practices pledge by the filing deadline with the Secretary of State or county clerk, as the case may be, shall not appear on the ballot." Ark. Code Ann. §7-7-203(c)(4). It is undisputed that Harrod failed to file this paperwork with this Defendant during the one-week period ending at noon on March 3, 2014. (Ex. 2, 3, 4).

Each Plaintiff, as a person "desiring to have his … name placed upon the ballot as an independent candidate without political party affiliation for any … state, [or] county … office in

any general election in this state" must have filed "during the party filing period for the year in which the election is to be held, *a political practices pledge, an affidavit of eligibility,* the petition under this section*, and a notice of candidacy stating the name and title the candidate proposes to appear on the ballot and identifying the elective office sought, including the position number, if any*." Ark. Code Ann. §7-7-103(a)(1) (emphasis added).  In their Complaint, and as set forth in their Response to the Motion to Dismiss, Plaintiffs apparently challenge only the petition timing requirement.  Plaintiffs have not amended their pleadings, and it is too late to do so now.  Consequently, for purposes of *Nelson* and *Lujan* standing, Plaintiffs must each allege that they have met all of the other necessary statutory requirements, none of which they challenge, before they can challenge the timing of the  petition requirement in Ark. Code Ann. §7-7-103(b).  None of the Plaintiffs satisfied these statutory requirements, wholly apart from the petition signature process. (Ex. 1, 2, 3, 4, 5, 6, 7).  Plaintiffs are estopped from enlarging the claims made in their Complaint in their Motion for Summary Judgment.

It is undisputed that Harrod failed to file appropriate *political practices pledges, affidavits of eligibility, and appropriate notices of candidacy stating the name and title Plaintiff proposed to appear on the ballot and identifying the elective office sought, including the position number* with Defendant. (Ex. 2, 3, 4). Without these specific elements of proof, Plaintiff Harrod is not entitled to the relief he seeks.

While Moore did file a political practices pledge and an affidavit of eligibility, he failed to sign his Notice of Candidacy during the party filing period, and was informed that this precluded him from running for Lt. Governor. (Ex. 4, 6).  Moreover, Moore did not attempt to

file candidate petition signatures at any time, and was additionally notified in writing that his

failure to file petition signatures precluded him from having an effective filing as a candidate for

Lt. Governor.  (Ex. 1, 7).

 Nor can any of the plaintiffs show any particularized harm to them as actual "voters" for

themselves or for any of the other named Plaintiffs, because it is undisputed that the three

Plaintiffs names did not appear on the ballot as a result of their own failures, unrelated to actions

of this Defendant.  (*See* Ex. 8, 9 (certified election results for 2014 General Election)).

 Nor can Plaintiffs show that there was no other manner in which Plaintiffs – as voters –

could have cast their November 2014 General Election ballot for themselves or for the other

named Plaintiffs.  There are multiple ways of voting for a "candidate" in Arkansas.  In particular,

"write-in" candidates have no petition signature requirement at all.  Ark. Code Ann. §7-5-205.

The write-in method of access to the ballot obviates any claim of any Plaintiff as a "voter."

Each Plaintiff could have qualified as a "write-in" candidate in 2014, but failed entirely to do so.

 Plaintiffs make no showing that the declaratory and injunctive relief they seek was

necessary to avoid any harm to them as "voters" for the 2014 General Election – and made no

motion for preliminary relief at all.  Moreover, Plaintiffs cannot show the abridgement of any

right to vote for themselves, or any other Plaintiff, where each named Plaintiff has failed to meet

all of the unchallenged prerequisites to becoming a candidate for the November 2014 General

Election ballot.  Absent such particularized grounds for relief, Plaintiffs' standing as "voters" is

wholly insufficient for them to have standing; and is likewise insufficient for this Court to

conclude that it has subject matter jurisdiction.

Plaintiffs cannot show that their attempts at filing appropriate materials were denied by Defendant ***solely*** as a result of the early petition signature deadline.  (Ex. 1, 2, 3).  Because each Plaintiff cannot show an actual, concrete, injury in fact, as a result of the actions of this Defendant, i.e., cognizable claims, Plaintiffs lack standing.  There is no case or controversy against this Defendant as of the date of the filing of Plaintiffs' Motion, nor as of Defendant's Response.  None of the plaintiffs has any further right to be in federal court; and the Court does not have power to hear and dispose of unsubstantiated claims.  *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). This Court, consequently, lacks subject matter jurisdiction to hear this case.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143; *Constitution Party of South Dakota v. Nelson*, 639 F.3d 417, 420.

This case is nearly identical to the facts of the case affirmed in *Nelson*.  The District Court opinion in *Nelson* tells the whole story:  a candidate who wanted to be listed as Governor on the South Dakota ballot lacked standing because she "did not submit a petition with any signatures for certification, thus the Secretary of State never denied such a petition." *Constitution Party of South Dakota v. Nelson*, 730 F. Supp. 2d 992, 999 (D.S.D. 2010), *aff'd in part*, 639 F.3d 417.  This is on "all fours" with this case, as none of the plaintiffs submitted any signatures for certification; and Defendant Secretary, consequently, never any candidate signature petitions for any of these Plaintiffs.

A plaintiff required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit (ballot access) who fails to do so, lacks standing to sue because he should have at least taken steps to attempt to satisfy that precondition to ballot access.

*Constitution Party of South Dakota v. Nelson*, 730 F. Supp. 2d 992, 998-99, *quoting, Pucket v. Hot Springs Sch. Dist.*, 526 F.3d 1151, 1161 (8th Cir. 2008). Plaintiffs, to date, fail to show sufficient facts upon which this Court can grant relief; Defendant did not at any time deny any candidate petition signatures of any of the named Plaintiffs. It is Plaintiffs' burden to show that Plaintiffs have met the standing requirements for this Circuit. They cannot do so now.

Moreover, ***Plaintiffs*** must show that they are serious candidates who have been "reasonably diligent" as candidates in order to invoke the power of the federal district court. *Rock v. Bryant*, 459 F.Supp. 64, 73 (E.D. Ark. 1978) (*citing, Lubin v. Parish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974) *and Pratt v. Begley*, 352 F.Supp. 328, 330 (E.D.Ky. 1970), *aff'd* 409 U.S. 943, 93 S.Ct. 282, 34 L.E.2d 214 (1972) (upholding statute requiring all candidates to file nominating petitions no later than March 31, 1970, i.e., 55 days before the primary elections and 7 months in advance of the general election)). In particular, Plaintiffs must demonstrate some manner in which they were each injured by the March 3 petition deadline before this court may further consider their claims; this they cannot do.

## MOOTNESS

Irrespective of standing, Plaintiffs' February 6, 2014, Complaint is still fatally defective. Plaintiffs have not amended, nor moved to amend, their original Complaint. The deadline for amending their Complaint has passed. Now that the 2014 general election has concluded, Plaintiffs are not entitled to any additional relief. This Court does not have jurisdiction over cases in which "due to the passage of time or a change in circumstances, the issues presented ...

will no longer be 'live' or the parties will no longer have a legally cognizable interest in the outcome of the litigation." *Arkansas AFL-CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993) (*en banc*). Plaintiffs took no action to have a court decide this controversy before now. The General Election took place on November 4, 2014; none of the Plaintiffs had their petitions denied, they simply failed to undertake legally required steps – and in the case of Harrod, any steps at all – to have their names placed on the ballot on November 4. They have now lost the right to seek further relief in this Court on this Complaint due to the passage of time (more than fifteen (15) months since their initial filing).

## MOVEMENT OF THE DEADLINE FOR ELECTION ADMINISTRATION

This Court should not decide an issue of constitutional magnitude, such as the date independent candidate petition signatures are required, when it is not required to do so. As the Eighth Circuit has stated:

> the United States Supreme Court has established the principle that "[i]f two questions are raised, one of non-unconstitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided." *Alma Motor Co. v. Timken-Detroit Axle Co.*, **329 U.S. 129**, 136, 67 S.Ct. 231, 234, 91 L.Ed. 128 (1946); *Ashwander v. Tennessee Valley Authority*, **297 U.S. 288**, 347, 56 S.Ct. 466, 80 L.Ed. 688 (Brandeis, J., concurring); *Clay v. Sun Insurance Office*, **363 U.S. 207**, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1959).

*United States v. Pipefitters Local Union No. 562*, 434 F.2d 1127 (8th Cir. 1970). Defendant Secretary responds to the merits of Plaintiffs' Motion, therefore, only in an excess of caution, and not because the Court need rule on the merits of Plaintiffs' claims. As set forth above, there

is no need to do so.  Nevertheless, in the event the Court seeks to rule on the merits of Plaintiffs'

claims, Plaintiffs' Motion for Summary Judgment should be denied; and Defendants are entitled

to judgment as a matter of law.

      Defendant Secretary does not "move" election deadlines at whim.  He complies with

statutory requirements, and otherwise complies with applicable constitutional, federal, and state

law.  Defendant Secretary complies with applicable Court precedent, as well.  In the instant case,

the Eighth Circuit Court of Appeals explicitly approved the Arkansas statutory provisions in

question, albeit prior to the amendment, although Plaintiffs argue otherwise.  In *Langguth v.*

*McCuen, Secretary of State,* 30 F.3d 138, No. 93-3413 (8th Cir. August 9, 1994) (unpublished

*per curiam*), *cert. denied*, 513 U.S. 1147 (1995), the Eighth Circuit concluded that:

> restrictions such as those required by Arkansas's [independent candidate filing]
> statute appear to be necessary to meet Arkansas's compelling state interests.  We
> do not find the Arkansas statute's requirements facially unreasonable or overly
> burdensome for a candidate to meet, and Langguth did not present evidence
> persuading us that they are in practice unreasonable or overly burdensome.

*Langguth*, slip Op. at 3.  More explicitly, and contrary to Plaintiffs' allegations and "expert

witness affidavit," the Eighth Circuit Court of Appeals concluded that Arkansas's election

administration requirements "are compelling:"  requiring a candidate to show some support

before printing the candidate's name on the ballot, and in having enough time both to certify that

the names on the signature petitions are registered voters and to permit the authenticity of the

signatures to be challenged in court proceedings.  *Id.*, slip op. at 2.  *Langguth* approved the

Arkansas statutory scheme then in effect, that ended the time period for collecting signatures "30 days before the primary and 186 days before the general election." *Id.*

Since *Langguth*, Arkansas has changed its election calendar on multiple occasions. Arkansas has also made it easier for Independent Candidates to collect the required signatures, by expanding the time period for collecting signatures from "60 days" (as approved in *Langguth*) to the current 90 days. Ark. Code Ann. § 7-7-103(b)(3).

In addition, the "number of qualified electors" is generously defined in the statute as the "total number of votes cast therein for all candidates in the preceding general election for the office of Governor," Ark. Code Ann. § 7-7-103(b)(4), i.e., a substantially lower number than the total number of registered voters. As applied to Plaintiffs for the 2014 Election, Plaintiff Harrod had to submit **411 valid signatures** on his candidate petitions for House District 84; and Plaintiff Moore had to submit **10,000 valid signatures** on his candidate petitions for Lieutenant Governor (since 3% of the 2010 governor's election would have been 23,434 signatures). In percentage terms, Harrod had to submit 1.96% of registered voters in his district (using numbers from June 1, 2014, i.e., just after the May 2014 primary election) in order to qualify for placement on the ballot; Moore had to submit 0.62% of the registered voters in the state (as of the May 2014 primary election) to qualify for placement on the November general election ballot. Hammons Affidavit.

As was the case in *Langguth*, very few restrictions are placed on voters signing the petitions, they need only be registered voters at the time of signing. *Langguth, id.*; Ark. Code Ann. § 7-7-103(b)(2). Harrod had a "geographic limitation" on his pool of voters, that is, House

District 84; while Moore had available to him the entire pool of registered voters in the State of Arkansas, with no geographic limits at all.  Arkansas does not currently limit voters from signing any number of petitions, participating in a party primary, and also participating in a new party convention, all in the same election cycle.

While neither prohibited nor approved in *Langguth*, however, the Arkansas election calendar changed substantially in 2011 and 2013, in order to comply with applicable federal law, and its state-law implementation.  The "election calendar" in Arkansas was substantially modified in 2011 in response to federal legislation (Subtitle H, Public Law 111-84, 123 Stat. 2190 (October 28, 2009)) (MOVE Act (Military and Overseas Voter Empowerment Act), amending applicable sections of the UOCAVA Act, 42 U.S.C. §§1973ff *et seq.* (Uniform and Overseas Citizens Absentee Voting Act), now codified at 52 U.S.C. § 20301 *et seq.*).  *See, e.g.*, Act 1185 of 2011, Acts of Arkansas (amending multiple provisions of the Arkansas Code).  Generally, all deadlines were moved significantly earlier in the year, in order to accommodate the MOVE Act requirements that military and overseas voters receive their complete absentee ballots no later than 46 days before the preferential primary, general primary, general election, and general election runoff.[2]  Act 1185 of 2011, Acts of Arkansas.

The Arkansas legislature likewise continued to revise the election calendar in Arkansas in the 2013 session in order: to harmonize Arkansas law with applicable federal law; to improve

---

[2]   Arkansas law requires UOCAVA ballot delivery 46 days in advance of the election, i.e., one day earlier than federal law.  This resolves the mathematical problem (inherent in the MOVE Act) that 45 days before a Tuesday election is always a Saturday, and Saturday deadlines normally "roll forward" to the next business day.  46 days before a Tuesday election is always a Friday, so there is no ambiguity about the date "rolling forward" for a weekend deadline.

election administration; to assist Independent Candidates in receiving timely review of their

petition signatures in advance of other (non-state) filing deadlines (for example, allowing them to

file for another non-state office should they have an insufficient number of valid signatures of

registered voters on their petitions); to allow time for litigation of any petition signature

challenge in advance of the earlier deadline for certification of names to the general election

ballot; to provide UOCAVA voters (military and overseas) with the correct ballot in a timely

fashion, i.e, no later than forty-six (46) days prior to the general election; to avoid the "wait and

see" attitude of candidates who tender insufficient documents to see who might win the primary

as well as which "non-standard" candidates might be nominated by minor parties that qualify for

placement of all of their candidates on the ballot; to protect the integrity of the ballot process for

the general election; to encourage compromise and political stability; to attempt to insure that the

general election winner will represent a majority of the community; to attempt to avoid general

election runoffs, given the complications that arise with a forty-six (46) day absentee ballot

delivery requirement where the runoff is normally no more than twenty-one (21) days after the

general election; and to provide the electorate with a ballot that will eliminate or reduce voter

confusion, *inter alia*.  Hammons Affidavit.

     Nothing that Arkansas has done to move election deadlines has violated Plaintiffs' rights

as alleged in the Complaint.  There is compelling evidence of record that collecting signatures in

the November, December and January prior to the 2014 General Election is easily accomplished.

Contrary to older case law cited by Plaintiffs, the minor change to the single election deadline at

issue, moving the deadline for filing petition signatures to March 3, 2014, fully comports with federal requirements in light of UOCAVA and MOVE.

Contrary to Plaintiffs' assertions, a record number of candidates filed signature petitions in 2014, after collecting those signatures during the sixty (60) day "nonpartisan" signature collection period from November 10, 2013, to January 9, 2014. A total of 92 candidates filed by petition for the nonpartisan general election; and a total of 90 of those candidates' petitions were sufficient to grant the candidates access to the ballot without payment of a filing fee. During the 45-day review period, Secretary of State processed 103,578 signatures collected during that sixty day time period ending January 9, finding 67,608 of the signatures to be valid and within the correct geographic limit for the respective candidates. Hammons Affidavit, par. 10 (p. 2).

Also contrary to Plaintiffs' assertions, Independent Candidate George Pritchett successfully petitioned to become an Independent Candidate for Senate District 14 in the 2014 General Election cycle. Within the party filing period ending on March 3, 2014, Pritchett submitted a total of 1,534 signatures, in order to meet the required 852 valid signatures for Senate District 14. After processing his signatures, Secretary of State determined that 1,006 were valid signatures, i.e., collected from registered voters, within the correct geographic locations (parts of Garland and Saline Counties), and collected within the statutory 90-day time period ending on March 3, 2014. Hammons Affidavit par. 9 (p. 2). [If the Governor's race had a 65% turnout in 2010, Pritchett's signature requirement was 1.95% of the registered voters in Senate District 14, i.e. comparable to the requirement for House 84.]

For the 2014 election cycle, this case is resolved by *Storer v. Brown*, on its face. Plaintiffs have admitted the essential facts, as set forth by Defendant in its Motion for Summary Judgment and Statement of Material Facts Not In Dispute, as well as in the Statement of Material Facts Not In Dispute in Response to Plaintiffs' Motion.  "[I]f a candidate is absolutely and validly barred from the ballot by one provision of the laws, he cannot challenge other provisions as applied to other candidates."  *Storer v. Brown*, 415 U.S. 724, 737 (1974).  This Court "need not" hear a challenge to the provisions of the Arkansas Code by these Plaintiffs  who did not satisfy the *other, unchallenged* prerequisites to having their names placed on the ballot, and there is "no more reason to consider [Plaintiffs' challenge] at the request of [Plaintiffs] *or at the request of voters who desire to support unqualified candidates." Storer*, *id.,* at 737 (and see n.8:  "The 1972 election is long over, and *no effective relief can be provided to the candidates or voters….*"  Another timely filed case can be adjudicated before an election is held) (emphasis supplied) (plaintiffs properly barred from ballot).

Plaintiffs' new allegations – as made in their response to Defendant's Motion for Summary Judgment and again in Plaintiff's recently-filed Motion for Summary Judgment - convolute their requests for relief, to avoid the requirements of *Storer*.  This Court should not permit this subterfuge.   Plaintiffs' herein undisputedly made an "as applied" challenge to the statute, and *survived Defendant's Motion to Dismiss in 2014 by characterizing their claims as purely a challenge to the Act "as applied" to them, personally.*  Docket No. 8, Plaintiffs' Brief in Opposition to Motion to Dismiss, at 7-8.  Now, Plaintiffs' 2015 allegation is that at least one of them "will suffer" in the future as a candidate and essentially ask that the Court consider this a

"facial challenge" to the constitutionality of the entire statutory framework, as Plaintiffs have redefined their own claims.  Plaintiffs have not plead sufficient facts, with sufficient detail, against the appropriate parties Defendant, to permit this matter to continue at this juncture. Notwithstanding Defendant's objection to this attempt in Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiffs failed to amend their pleadings but now characterize their challenge as it "will be applied" to one of them in 2018. Plaintiffs are estopped from this type of off-Complaint expansion of their suit after their characterization in 2014 in response to the Motion to Dismiss.

The U.S. Supreme Court has agreed in an election context.  All that remains of Plaintiffs' claims is their "facial challenge" to the statute with only hypothetical future allegations of harm *not in the 2016 election cycle, but in the 2018 election cycle*.  This type of facial challenge to a legislative Act is the most difficult challenge to mount successfully, since Plaintiffs, as challengers, must establish that ***no set of circumstances exists under which the Act would be constitutionally valid***. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see*, *Washington State Grange v. Washington State Republican Party*, 522 U.S. 442, slip op. at 6 (1988).  The successful petitions filed in this State by George Pritchett, for State Senate District 14, in 2014, preclude Plaintiffs from prevailing on their facial challenge.  It is undisputed that George Pritchett successfully submitted all of his paperwork and petition signatures for him to be on the ballot, in this State, in the General Election in November of 2014.  Defendant's Statement of Material Facts Not In Dispute, No. 43, 44.  In other words, Defendant has already shown that a "reasonably diligent" independent candidate had access to the General Election ballot in 2014,

i.e., under the revised statutory deadline.  This showing, alone, precludes a facial challenge to the statute.  *See*, *United States v. Salerno*, 481 U.S. at 745.

Moreover, Defendant has submitted substantial evidence that collecting signatures during the months of November and December of 2013, and January of 2014, was easily done by 90 separate nonpartisan candidates, who submitted a total of 103,578 signatures collected by January 9, 2014.  Hammons Affidavit.  Pritchett's successful collection of signature from December 3, 2013, to March 3, 2014, also shows that a "reasonably diligent" candidate can easily meet the revised statutory deadline and the very minimal signature requirement for access to the General Election ballot.

Moreover, both the Green Party, and the Libertarian Party, have successfully qualified to have all of their candidates listed on the General Election ballots in both 2012 and 2014. Hammons Affidavit.  Their petition period has no begin date, and only requires 10,000 valid signatures of registered voters, collected within ninety (90) days prior to submission.  Notably, however, the deadline to file their signature petitions was also moved to December 26, 2013 for the 2014 General Election.  Ark. Code Ann. § 7-7-205(a)(6).  Both parties met the new statutory deadline and qualified by petition, showing that petition signature collection nearly identical to the requirement for a candidate for statewide office, like Lieutenant Governor, can easily be done in this State.  *See* Hammons Affidavit.

A facial challenge "must fail where the statute has a 'plainly legitimate sweep.'" *Washington State Grange, id., quoting, Washington v. Glucksberg*, 521 U.S. 702,739-740 and n. 7 (1997) (Stevens, J., concurring).  As the facts have shown, at least one successful candidate

filed as Independent Candidates in 2014, obviating Plaintiffs' claims of facial invalidity.  As the facts show, successful independent candidates meeting the revised statutory timeline obviate any and all claims of facial invalidity on the record in this lawsuit to date.

Plaintiffs, by their own inaction, have lost their ability to make a facial challenge to the Act, at this juncture of the proceedings.  The Supreme Court has been explicit:  any challenger who ***could*** prevail on an as-applied challenge to a legislative Act should not be permitted to make a facial challenge. *Brockett v. Spokane Arcades*, 472 U.S. 491 (1985).  A facial challenge is prospective, because it seeks to prevent a law from being enforced on the claim that any and every enforcement, in itself, would violate someone's constitutional rights.  An "as-applied" challenge is retrospective, as it seeks to redress a constitutional violation that has already purportedly occurred.  On an as-applied challenge, "[t]he statute may ... be declared invalid to the extent" of its purported unconstitutionality, "but otherwise is left intact." *Brockett*, 472 U.S. at 504.  Facial challenges are, and ought to be, rare; severability is the device through which statutes' constitutional problems should normally be cured.

Plaintiffs seek to avoid the explicit Supreme Court holding in *Brockett*.  Plaintiffs continue to couch their newly-revised claims in "as applied" language, but nevertheless seek a declaration of facial invalidity, as well as injunctive relief, precluding Defendant from enforcing entire sections of the Arkansas Code, ***with absolutely no showing of their compliance with other sections of Arkansas election law that are not challenged in this suit.***  Plaintiffs' claims must fail at this stage of the litigation, on the un-amended pleadings before the Court, given the

undisputed material facts set forth in Defendant's Statement of Material Facts since they have

waited too long to make a successful challenge for access to the 2014 ballot.

Plaintiffs' single "prospective" but as yet unsubstantiated challenge, like every facial

challenge, is disfavored for several reasons.

> Claims of facial validity often rest on speculation.  As a consequence, they raise
> the risk of 'premature interpretation of statutes on the basis of barebones records.'
> Facial challenges also run contrary to the fundamental principle of judicial
> restraint that courts should neither 'anticipate a question of constitutional law in
> advance of the necessity of deciding it' nor 'formulate a rule of constitutional law
> broader than is required by the precise facts to which it is to be applied.'  Finally,
> facial challenges threaten to short circuit the democratic process. . . .

*Washington State Grange*, id., slip op. at 7-8 (citations supporting quotations omitted).  As

putatively set forth in their Motion for Summary Judgment, Plaintiffs cannot now mount a

"facial" challenge, because they have not alleged all of the actual facts necessary to support their

new "facial" claim, even "as applied" prospectively to them.

Plaintiffs are estopped to make a future facial challenge as well, having survived the

Motion to Dismiss by claiming that they were making an "as-applied" challenge alone.

Defendant – and the Court – were entitled to rely upon Plaintiffs' representations in 2014 in this

very case.  The doctrine of judicial estoppel protects the integrity of the judicial process. *Total*

*Petroleum, Inc. v. Davis*, 822 F.2d 734, 738 n.6 (8th Cir. 1987).  A court invokes judicial estoppel

when a party abuses the judicial forum or process by making a misrepresentation to the Court.

*Id.*  The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting

parties from deliberately changing positions according to the exigencies of the moment. *New*

*Hampshire v. Maine*, 532 U.S. 742 (2001).  Under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not, thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.  *Id.*

Plaintiffs in this matter seek to change their position on their facial challenge to the statute, after the Court accepted their "as applied" language in response to the Motion to Dismiss, to the detriment of Defendant.  Plaintiffs prevailed on their Response to Defendant's Motion to Dismiss based on their claim to challenge the statute "as applied" to them.  Having waited more than a year, Plaintiffs cannot reverse course and make a facial challenge now. Courts routinely prohibit such changes in position.  *Stalling v. Hussman Corp.*, 447 F.3d 1041, 1048 (8ᵗʰ Cir. 2006) (applying *New Hampshire*, 532 U.S. 742, 750 (three considerations for the Court)).  Plaintiffs did nothing even to amend their Complaint in the interim.

As Plaintiffs' own case law states, ***Plaintiffs*** must show that they are serious candidates who have been "reasonably diligent" as candidates in order to invoke the power of the federal district court. *Rock v. Bryant*, 459 F.Supp. 64, 73 (E.D. Ark. 1978) *citing*, *Lubin v. Parish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974) *and Pratt v. Begley*, 352 F.Supp. 328, 330 (E.D.Ky. 1970), *aff'd* 409 U.S. 943, 93 S.Ct. 282, 34 L.E.2d 214 (1972) (upholding statute requiring all candidates to file nominating petitions no later than March 31, 1970, i.e., 55 days before the primary elections and 7 months in advance of the general election).  As the Supreme Court explained in *Storer v. Brown,* the experience of a "reasonably diligent … candidate" is a

helpful guide to the constitutionality of access requirements. Other independent candidates who have qualified for the ballot demonstrate that Plaintiffs' burden is all the more substantial. *Storer*, 415 U.S. 724, 742. In particular, Plaintiffs must demonstrate some manner in which they were each actually injured by this Defendant, no later than the March 3, 2014, petition deadline, before this court may consider their claims. They have not done so, and now admit that they cannot do so.

Nevertheless, Plaintiffs now seek an advisory opinion for the 2018 election cycle. These newly-redesigned claims are not ripe for review. Plaintiffs' new contention, that one of them "intends to run for Lt. Governor in 2018," is far too remote and speculative for this Court to consider. Plaintiffs' new claims (made in their Motion for Summary Judgment, and not by way of amended pleading) are "too immature and unfocused to be ripe for judicial review at this time." *National Right to Life PAC v. Connor*, 323 F.3d 684, 693 (8th Cir. 2003), *reh'g and reh'g en banc denied.* The Court should dismiss this case without issuing an advisory opinion, on unsubstantiated hopes, four years in advance of any claim to any putative harm.

The ripeness doctrine prevents courts from entangling themselves in abstract disagreements over policies, and protects defendants from judicial interference until an executive decision has been formalized and its effects felt in a concrete way by the challenging parties. *Connor, id. (citations omitted)* The ripeness doctrine operates through the avoidance of premature adjudication. *Connor, id.* "Courts deciding whether a dispute is ripe should consider (1) the hardship to the plaintiffs caused by delayed review; (2) the extent to which judicial intervention would interfere with administrative action; and (3) whether the court would benefit

from further factual developments." *Connor*, *id.* Under the Eighth Circuit standard, Plaintiffs'
newly formulated claims are not ripe for review.

First, there is absolutely no hardship to any Plaintiff should this Court delay judicial
consideration of the issues raised in the Complaint and Response to the Motion for Summary
Judgment. Plaintiffs concede they do not have a live controversy concerning the November
2014 General Election. There is no longer a justiciable "as applied" controversy because
Plaintiffs did not submit petition signatures, nor have they tendered to Defendant sufficient valid
qualifying documents by the applicable (unchallenged) deadline, or taken any other action
(excluding limited "polling") to advance this matter on this Court's docket prior to the November
2014 general election. The best Plaintiffs can do is claim that one of the "intends to run" for Lt.
Governor in 2018, i.e., after the 2016 election cycle, with a filing period nearly three (3) years
away (as of the date of the filing of this Brief). This is not enough for this Court to exercise its
power to declare invalid a statute that was successfully applied to at least two successful
independent candidates for office in 2014, as Plaintiffs conceded in their Response to
Defendant's Motion for Summary Judgment.

Second, the relief sought by Plaintiffs, declaratory *and injunctive* relief, will undoubtedly
interfere with Defendant's administration of the 2016 election cycle, at a minimum, i.e., an
election cycle in which Plaintiffs make no suggestion or claim to any interest. Moreover,
Plaintiffs seek such relief in the face of undisputed contrary evidence of record in this case, that
is the actual timely filing of valid petitions of Independent Candidates for White County Judge
and State Senate for the 2014 General Election (as shown in Defendant's Motion for Summary

Judgment and Defendant's Statement of Undisputed Material Facts, No. 43 and 44). The successful filing of other "reasonably diligent" independent candidates in 2014 demonstrates that Plaintiffs problems in this case are largely of their own making. (Moore Aff., where he states that he refused to gather [any] petition signatures).

Third, this Court – and Defendant (along with the State of Arkansas and the Arkansas General Assembly) – would undoubtedly benefit from further factual developments. In the 2014 cycle, Defendant has shown, in its Motion for Summary Judgment, without dispute, that at least two candidates, one for State Senate, and one for County Judge, successfully petitioned to have their names placed on the ballot in a timely manner. (Undisputed Facts No. 43, 44). Moreover, Plaintiffs essentially concede that they do not have a valid, live, interest in any race in the 2016 election cycle. Having "missed" the 2014 election cycle by failing to take appropriate legal action in a timely manner in the instant case, Plaintiffs should not be allowed to "jump the gun" and assume that they will be able to make the requisite showing of unconstitutionality, *as applied to them*, four years down the road.

Defendant is also entitled to gather additional facts, including whether other candidates are "reasonably diligent" – and to run an additional election cycle in 2016 with reasonably diligent candidates– where Plaintiffs make no allegations of prospective harm to them in 2016. This Court, the parties, and the unrepresented interests of the State of Arkansas will benefit from an additional election cycle under the current law, particularly where Plaintiffs make no claim to any suffer any harm at all to themselves in the 2016 election cycle. Additional successful Independent candidacies – particularly "reasonably diligent" candidacies - may well definitively

contradict Plaintiffs' unsupported contention that the revised deadline makes it "too difficult" to gather signatures.  An additional general election cycle, in 2016, will be helpful to this Court to see whether or not the alleged "discriminatory effect" of the new petition filing deadline is merely speculative or has actually operated to keep reasonably diligent candidates off the ballot.

Plaintiffs' remaining claims are too indefinite, too speculative, and too premature to survive given the current facts as admitted.  Given the undisputed material facts, Plaintiffs admit that their own actions and failures to act were the reasons why none of their names appeared on the general election ballot for 2014.  In other words, Plaintiffs concede that *Defendant's actions* were not the basis for Plaintiffs names not appearing as Independent Candidates on the 2014 general election ballot.  Consequently, Plaintiffs were not entitled to any relief *against this Defendant* in 2014, which is most likely the reason they have not asked the Court for any affirmative relief since their February 2014, filing of suit.

Previous case law in this federal district court – and in the Eighth Circuit - does not dictate a different result.   First, the "opinion" of Plaintiffs' "expert" is merely a recitation of case law, without legal analysis, and so is not entitled to any deference.  Legal conclusions, which require the application of law to the facts, are the province of this Court, and are not left to the province of the trier of fact.  *See, Reagan v. City of Piggott,* 805 S.W.2d 636, 637 (Ark. 1991) (conclusion of law that are in dispute do not meet the moving party's requirements to show that there are genuine issues of material fact for a fact-finder to determine); Fed. R. Evid. 704; *Berckeley, Inv., Grp. v. Colkitt* 455 F.3d 195, 271 (3rd Cir. 2006) (expert witness prohibited from rendering a legal opinion dictating outcome on ultimate issue).  Consequently, the affidavit of the

"expert" does not create an issue of fact that precludes entry of judgment for Defendant on

Defendant's pending Motion for Summary Judgment.  Nor is the Affidavit of the "expert"

entitled to any deference, because it does not accurately set forth all of the relevant case law,

missing, most importantly, any reference to *Langguth*, i.e., a case involving the predecessor in

interest to Defendant.

Moreover, Defendant should not be penalized for formerly having had a later filing date

for petition signatures, whether or not that date was the product of previous litigation, otherwise,

an arbitrary difference will be created among the states.  In other words, a constitutional ratchet

is unacceptable.  *Hall v. Simcox*, 766 F.2d 1171, 1175 (7th Cir. 1985); *Arutunoff v. Oklahoma*

*State Election Bd.*, 687 F.2d 1375, 1380 (10th Cir. 1982).

There have been multiple reasons for the State of Arkansas, and its General Assembly, to

move election law deadlines.  Among those reasons are the following:  **(1)** two substantial

changes in federal law (UOCAVA and MOVE Act, note 1, *supra*); **(2)** the beginning of early

voting at least two weeks before the "preferential primary election" in May of even numbered

years, Ark. Code Ann. Sec. 7-5-418(a)(1)(A); **(3)** the beginning of absentee voting at least sixty

(60) days before the preferential primary election, Ark. Code Ann. Sec. 7-5-405(a)(1); **(4)** the

beginning of military and overseas voting at least 46 days before the preferential primary,

*including an instant run-off for the general primary election*, Ark. Code Ann. Sec. 7-5-406; **(5)**

the existence of another filing deadline for independent candidates for municipal offices running

party-affiliated primaries, Ark. Code Ann. Sec. 14-42-206(d)(1)(A), combined with the statutory

prohibition on appearing on the ballot more than one time at any general election, Ark. Code

Ann. Sec. 7-5-111, *Roberson v. Phillips County Election Commission*, 2014 Ark. 480 (2014);

and **(6)** independent candidates in Arkansas can qualify for the ballot as write-in candidates,

obviating any need for petition signatures, Ark. Code Ann. 7-10-103(d), *Hall v. Simcox*, 766

F.2d 1171 (electoral regulatory scheme must be viewed in its entirety, and existence of

availability of write-in access to the ballot is one of the essential considerations for ballot access

cases). Superseding, intervening causes – like a change in federal law - are valid bases for the

General Assembly to make changes to Arkansas State law, even in the face of lower court's

declaratory actions. *See, Vadnais, Treasurer of Swift County v. Federal National Mortgage*

*Ass'n*, No. 13–2733, (8th Cir. June 6, 2014). The declaratory relief previously granted in earlier

cases must be viewed in light of the entirety of Arkansas's current statutory scheme, the results

in *Langguth,* as well as relevant federal law, substantially moving all election law deadlines so as

to provide for better ballot delivery to military and overseas voters. The Court must also

consider the valid interests set forth by Defendant for the minimal change in the date required for

filing petition signatures. Hammons Affidavit.

In short, there are multiple reasons why this Court should deny Plaintiffs' Motion for

Summary Judgment on the merits of the legal argument concerning the filing deadline. Even if

Plaintiffs have some slim shred of standing left, they cannot make a facial challenge to the

statute, and their future, prospective, unripe "as-applied" challenge is much too immature for

them to invoke the federal judicial power for the 2018 election cycle. The lack of ripeness

dictates that the court wait for a better case, with relevant facts, and actual, concrete harm to a

reasonably diligent independent candidate. Nothing in *McLain v. Meier*, 851 F.2d 1045 (8th Cir.

1988) requires the Court to ignore the clear teaching of *Storer*, *id. at n. 8*, as more fully set forth

as the standing requirement in *Nelson*, 639 F.3d at 420.

Plaintiff erroneously points to *Anderson v. Celebrezze* to claim standing and to assert

what level of scrutiny must be applied.  Plaintiffs err.  *Anderson* concerned a "presidential

election" – something not at all at issue in this matter.  *Anderson* did not overrule *Storer v.

Brown*.  Moreover, Supreme Court and Eighth Circuit standing requirements have been revised

substantially since then.  *Clapper, id.; Nelson*, 639 F.3d at 420.

Contrary to the assertions of Plaintiffs, this case is much more like *Stone v. Board of

Election Commissioners for the City of Chicago*, 750 F.3d 678 (7th Cir. 2014), and *Libertarian

Party of North Dakota v. Jaeger*, 659 F.3d 687 (8th Cir. 2011).  In both cases, the Circuit Courts

of Appeals dismissed the complaints ***for failure to state a claim upon which relief could be

granted.***  As in *Jaeger*, the Arkansas deadline for submission of petition signatures does not

impose an undue burden.  *Jaeger*, 659 F.3d at 694-97 (burden is substantial, but is not undue, not

excessive, and not insurmountable).  Note, moreover, that *Stone* explicitly distinguished *Lee v.

Keith*, a case cited by Plaintiffs.  On the facts, *Stone* showed that *Lee* presented a different case

entirely.  *Stone,* 750 F.3d at 683.  Unlike *Lee*, and much like *Stone*, the facts in this case show

that a reasonably diligent candidate was easily able to meet the revised petition signature

deadline, as were 90 nonpartisan candidates, and two new political parties, albeit with slightly

different, and earlier deadlines than independent candidates.

As the Court said in *Stone*, the "state's approach undoubtedly places some burden on

candidates and their supporters, who must work to gather the necessary signatures.  But the

scheme leaves room for reasonably diligent candidates to get on the ballot even as it directly furthers the state's legitimate interests in avoiding ballot overcrowding and preventing voter confusion". *Stone*, 750 F.3d at 685.  In both cases, as here, the state's legitimate interests are strong enough to justify the reasonable, nondiscriminatory burdens of moving the petition signature deadline. *Jaeger*, 659 F.3d at 697-700; *Stone, id.*

While this Court need not rule on the merits of Plaintiffs' claims, there is no question that the Court should deny the Motion for Summary Judgment should it reach the merits.  This state's legitimate interests in protecting the integrity of the ballot in the General Election, and timely delivering that ballot to military and overseas voters, call for nothing less.

Defendant Secretary asks the Court to deny Plaintiffs' Motion for Summary Judgment and to deny Plaintiffs any of the relief they seek herein.  Defendant Secretary again asks the Court to grant Defendant's Motion for Summary Judgment and to dismiss this Complaint.

***WHEREFORE***, and for the foregoing reasons, Defendant Secretary of State Mark Martin prays that this Court grant Defendant the relief he seeks herein; that the Court deny Plaintiffs any of the relief they seek; that the Court enter judgment as a matter of law in favor of Defendant against all Plaintiffs; that the Court deny Plaintiffs' Motion for Summary Judgment; and that the Court grant Defendant such additional relief to which he may be entitled under the circumstances.

Dated this 27th day of May, 2015.

Respectfully submitted,

**Brief in Support of Defendant's RESPONSE to Pl's Motion for Summary Judgment, P. 29**

HONORABLE MARK MARTIN
SECRETARY OF STATE
In his Official Capacity, Defendant


By: _____
A.J. Kelly
Deputy Secretary of State
PO Box 251570
Little Rock  AR  72225-1570
(501) 682-3401
Fax:  (501) 682-1213
Email:  kellylawfedecf@aol.com

*Attorney for Defendant*
*Secretary of State*


## CERTIFICATE OF SERVICE

I do hereby certify that on the date set forth above, I have served the foregoing via the electronic filing system in the Federal District Court Clerk's Office (CM/ECF) to the following:

James C. Linger
1710 South Boston Avenue
Tulsa  OK  74119-4810


Jeff Rosenzweig
300 Spring St, Suite 310
Little Rock  AR  72201

_____
A.J. Kelly