IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |
|---|---|
| MARK MOORE, et al.,<br>....Plaintiffs<br><br>v.<br><br>MARK MARTIN, in his official<br>capacity as Secretary of State<br>for the State of Arkansas;<br>....Defendant. | )<br>)<br>)<br>)<br>) Case No. 4:14-cv-00065-JM<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY AND MEMORANDUM BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT**

I.  STATEMENT OF THE CASE

On May 12, 2015, the parties filed a Joint Stipulation of Partial Dismissal wherein the parties in the instant case stipulated and agreed, *inter alia*, that the Court may enter an order dismissing the above-captioned cause only as to the Plaintiff William Chris Johnson against the Defendant [Doc. No. 24].  On May 13, 2015, the remaining Plaintiffs (Moore anf Harrod) filed a Motion for Summary Judgment, Statement of the Material Facts which Plaintiffs Contend there is no Genuine Dispute to be Tried pursuant to Local Rule 56.1, and Memorandum Brief in Support of their Motion for Summary Judgment [Doc. Nos. 28, 29, and 30].  The Defendant Secretary of State filed on May 27, 2015, his Response to Plaintiffs' Motion for Summary Judgment, Brief in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment, Statement of Material Facts Not in Dispute in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment, and his Responses and Objections to Plaintiffs' Statement of Material Facts [Doc. Nos. 31, 32, 33, and 34].

Plaintiff Mark Moore intends to be an Independent candidate for Arkansas Lieutenant

Governor for the General Election to be held in November of 2018.  Plaintiffs seek declaratory and injunctive relief from the Court as to future (2018 and beyond) Arkansas general election cycles so that ARK. CODE ANN., §§ 7-7-101, 7-7-103, and 7-7-203(c)(1), for all subsequent general elections in Arkansas after 2016 are declared unconstitutional and a permanent injunction issued against their enforcement.  While the completion of the 2014 elections in Arkansas is now past, Plaintiffs--as both voters in Arkansas and as potential future Independent election candidates--can still seek declaratory and injunctive relief as to the election laws complained of herein and their impact on future Arkansas General Elections as to Independent candidates and the right of Arkansas voters to cast their vote effectively.  Plaintiffs now submit their Reply and Memorandum Brief in Support of their Motion for Summary Judgement.

## II.  ARGUMENT AND AUTHORITIES

While many of the issues involved in the instant case as to standing and mootness have been previously addressed, Plaintiffs would note several errors in Defendant's brief in support of Defendant's Response to Plaintiffs' Motion for Summary Judgment [Doc. No. 32].  Defendant Secretary of State argues again that Plaintiffs lack standing and the Court does not have jurisdiction in the case at bar.  While Plaintiffs have addressed this issue thoroughly in their Response and Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment [Doc. No. 21], Plaintiffs would point out that Defendant misunderstands the decision of the U.S. Supreme Court in *Storer v. Brown*, 415 U.S. 724 (1974) as to standing.  The reason the plaintiffs *Storer* and *Frommhagen* didn't have standing to challenge the number of signatures required in the petition by California was not because they didn't try to comply—which, admittedly, they didn't, but because, even if they had successfully petitioned, they could not have been ballot qualified because of the

political party disaffiliation requirement that applied to them because of their previous political affiliation as registered Democratic voters. *Storer*, 415 U.S. at 728. However, *Storer* and *Frommhagen* were not the only plaintiffs referenced or considered in the *Storer* case. This point is proved as to standing because Plaintiff Gus Hall, the long time Chairman and Presidential candidate of the Communist Party U.S.A.—running as an Independent, and Plaintiff Tyner, Hall's Vice-Presidential running mate, were found to have standing in the *Storer* case even though they hadn't attempted to petition at all. *Storer*, 415 U.S. at 727-728, 738. Obviously, Hall and Tyner, unlike *Storer* and *Frommhagen*, had not been registered Democratic voters or voted in the recent California Democratic primary. Thus, the U.S. Supreme Court in *Storer v. Brown* allowed independent presidential and vice presidential candidates (Hall and Tyner) to have standing to challenge California's restrictions on independent candidate ballot access, even though they had not filed any petition signatures.

Defendant also makes much in his brief as to standing in regard to the caes of *Constitution Party of South Dakota v. Nelson*, 639 F.3d 417 (8th Cir. 2011), a case by the Eighth Circuit decided partly on the basis that the gubernatorial candidate who had actually petitioned, Peter Boeve, was not a plaintiff. Since the case had sought preliminary injunctive relief, unlike in the instant case, there is a significant distinction with the case at bar. In reviewing ballot regulations "our primary concern is not the interest of [the] candidate . . . but rather, the interests of the voters who chose to associate together to express their support for [that] candidacy and the views . . . espoused." *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983). In further considering the *Nelson* case, the Court might wish to compare it to another Eighth Circuit decision wherein Plaintiffs had ". . . standing to challenge a state law regulating elections when that law 'would restrict [their] ability to

3

vote for the candidate of [their] choice or dilute the effect of [their] vote if [their] chosen candidate were not fairly presented to the voting public.'" *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (holding that voter had standing to challenge ballot access law that he claimed was overly restrictive in signature requirements and deadlines). Further, Plaintiffs face in the laws challenged herein a "sufficiently particularized and concrete injury" to give them standing in this case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In fact, the *Lujan* case was cited and quoted by the Eighth Circuit in its decision on standing in *Nelson*.

Other U.S. Court of Appeals for the Eighth Circuit decisions on standing in election law cases has recognized voters' standing to challenge election laws. *Coalition for Sensible and Humane Solutions v. Wamser*, 771 F.2d 395 (8th Cir. 1985); *McLain v. Meier,* 851 F.2d at 1048 (which reversed a District Court decision entering summary judgment against the Plaintiff on the standing issue); *Miller v. Moore*, 169 F.3d 1119, 1123 (8th Cir. 1999). For other jurisdictions where standing was found and no petitioning was attempted, see: *Williams v. Rhodes,* 393 U.S. 23, 1968; *Storer v. Brown*, 415 U.S. at 728; *Stephenson v. State Bd. Of Elections,* 794 F.2d 1176 (7th Cir. 1986); *Rainbow Coalition of Oklahoma v. Oklahoma State Election Bd.,* 844 F.2d 740 (10th Cir. 1988); and *Libertarian Party of Kentucky v. Ehrler*, 776 F.Supp. 1200, 1202 (E.D. Ky. 1991).

As to the mootness issue, Plaintiffs have also extensively addressed this issue in their previous briefs. While Defendant Secretary of State does not extensively argue the issue of mootness in his brief [Doc. No. 32], it is obvious that the issues raised herein are "capable of repetition yet evading review." It is well established that ballot access cases are exceptions to the usual mootness rule. *Anderson v. Celebrezze,* 460 U.S. 780, 784 n.3 (1983); *Mandel v. Bradley*, 432 U.S. 173, 175 n.1 (1977); *Storer v. Brown*, 415 U.S. at 737 n.8 (1974); *Rosario v. Rockefeller*,

410 U.S. 752, 756 n.5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 332 n.2 (1972); *Moore v. Ogilvie,* 394 U.S. 814, 816 (1969); and *McLain v. Meier,* 637 F.2d 1159, at 1162 n.5 (8th Cir. 1980).  As the Eighth Circuit has commented, regardless of the Plaintiff's  ". . . candidacy in any future election, election law controversies tend not to become moot."  *McLain v. Meier, Id*.  Thus, Plaintiffs not only have standing under Article III of the U.S. Constitution, but the instant case is not moot.  In the context of election cases, application of the "capable of repitition, yet evading review doctrine" ". . . is appropriate in both "as applied" challenges as well as in the more typical case involving only facial attacks." *Storer v. Brown,* 415 U.S. at 737 n.8.  Even though the *Storer* court noted that the election was "long over," and ". . . no effective relief can be provided to the candidates or voters," "this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections." *Id*. Further, the doctrine should be applied to election statutes when "[t]he construction of the statute, and understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held. *Id.*  While the Defendant Secretary of State argues that the relief requested by the Plaintiffs was limited only to the 2014 election in Arkansas, the fact is that Plaintiffs' Complaint [Doc. No. 1] on page 3, paragraph IV, specifically made reference to the laws in question herein as applied to the Plaintiffs, not only for the 2014 Arkansas General Election, but also for ". . . all subsequent general elections in the State of Arkansas . . . ."

  However, while the Plaintiff Moore intends to be an Independent candidate for Lieutenant Governor of Arkansas in the 2018 election cycle, the Arkansas legislature last week, during a special session, passed new ballot access laws affecting new political parties and independent

candidates, as well as the major political parties.  Said law was passed by the Legislature and signed by Governor Hutchinson on May 28, 2015.  The result of the law for the 2016 election cycle as to Independent candidates is that their petitions will have to be filed by the first Monday in November of this year (2015).  Additionally, other changes are made, including moving the political party primaries earlier, having an earlier date in November of 2015 for the filing of new political party petitions, and having the law revert back to the old law challenged herein after the 2016 election.  House Bill 1006, Senate Bill 8, amending Arkansas Code § 7-7-203(a),(b), and (c), § 7-7-304(a) and (b); § 7-7-305(b); § 14-42-206(a)(1), § 21-8-705.  While the foregoing new election laws were not part of Defendant's pleadings which Plaintiffs are replying to herein, Plaintiffs feel the Court should be advised of this change in the law for the election cycle 2015-2016 and take judicial notice thereof to the extent that it impacts the case at bar.

     Finally, in regard to the administrative concerns put forth in the Defendant Secretary of State's Brief, it is argued that numerous signatures had to be verified for non-partisan candidates.  However, it should be noted, that a later filing deadline for Independent candidates would not conflict with the time limits imposed for the validating of non-partisan candidate petitions so that it would make the administrative task for the State easier.  Additionally, the August 1 deadline for Independent Presidential candidates can be complied with by the State so that a later deadline for petition signatures for other Independent candidates would not seem to be a burden upon the Secretary of State.

     The U.S. Court of Appeals for the Eighth Circuit has held that ". . . it is important that voters be permitted to express their support for independent and new party candidates during the time of the major parties' campaigning and for some time after the selection of candidates by party

6

primary." *McLain v. Meier*, 637 F.2d at 1164.  Under the law at issue herein, which was in effect in 2014, and will be again in effect after the 2016 election, Indepenent candidates must have their petitions in before the major parties have even selected their candidates. For the 2016 election not only will the foregoing still be true, but the petitions willl have to be almost a year before the general election for Independent candidates.  Plaintiffs assert that the issue of too early a deadline and/or the petition signature requirement for Independent candidates in Arkansas has been addressed to one extent or another in numerous previous cases decided by this Court.  *Lendall v. Bryant*, 387 F.Supp. 397 (E.D. Ark., 1975) (hereinafter *Lendall I*); Lendall *v. Jernigan*, No. LR-76-C-184, *aff'd mem.*, 433 U.S. 901 (1977) (hereinafter *Lendall II*); *Lendall v. Jernigan*, 424 F.Supp. 951 (E.D. Ark., 1977) (hereinafter *Lendall III*); *Rock v. Bryant*, 459 F. Supp. 64 (E.D. Ark., W.D. 1978); and *Lendall v. McCuen*, No. LR-C-88-311 (E.D. Ark., W.D., Aug. 16, 1988) (hereafter *Lendall IV*).   In *Lendall II,* which was affirmed by the United States Supreme Court without opinion, the three-judge panel held that the first Tuesday in April was an unconstitutionally early deadline*."  Lendall IV* at 5.  Therefore, while Defendant argues administrative considerations in support of the present election law challenged, such considerations in no way can justify such an early petition deadline for Independent candidates since this Court has held a filing deadline in early April to be unconstitutional, and this Court in *Lendall III* recognized that a rule had been laid down to which the Court must adhere, therefore, a filing deadline in early April was unconstitutional, and the Court found that a filing deadline in *Lendall IV* was also unconstitutional. The Court in *Lendall IV,* while finding that "Mr. Lendall made no attempt to comply with the January filing deadline", was convinced  ". . . that this factor alone would not factually distinguish this case from the clear ruling of *Lendall II* that any filing deadline set for independent candidates before the first Tuesday

in April is unconstitutional." *Lendall IV,* at 6.  Likewise, the administrative considerations raised by Defendant do not justify a filing deadline in early March for Independent candidates and their supporters.

### III.  CONCLUSION

Plaintiffs are challenging an unnecessarily early petition deadline for Independent candidates and their supporters which is clearly unconstitutional under prior rulings of this Court. The petition deadline constitutes a continued problem for future attempts to obtain the necessary petitions to gain Independent candidate status in Arkansas.  Unfortunantly, with the recent changes to the petition deadline and other election laws for the 2015-2016 election cycle only, the Arkansas Legislature has temporarily made the election laws in question even more restrictive.  The Court should declare the election laws at issue which set a March 1st petition deadline for Independent candidates unconstitutional for the reasons asserted above and issue an injunction against its enforcement.

WHEREFORE, premises considered, the Plaintiffs herein request that Plaintiffs' Motion for Summary Judgment be granted and Defendant's previously filed Motion for Summary Judgment be denied.

Respectfully requested this 3rd day of June, 2015.

>/s/James C. Linger
>JAMES C. LINGER, OBA#5441
>1710 South Boston Avenue
>Tulsa, Oklahoma 74119-4810
>Telephone (918) 585-2797
>Facsimile (918) 583-8283
>bostonbarristers@tulsacoxmail.com
>*Counsel for Plaintiffs*

JEFF ROSENZWEIG, AB No. 77115
300 Spring Street, Suite 310
Little Rock, Arkansas 72201
Telephone (501) 372-5247
Facsimile (501) 376-0770
jrosenzweig@att.net
*Counsel for Plaintiffs*

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record via the Court's CM/ECF e-mail notification system on the 3rd day of June, 2015.

/s/ James C. Linger
James C. Linger

9