**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**MARK MOORE, MICHAEL HARROD,
and WILLIAM CHRIS JOHNSON**                            **PLAINTIFFS**

**V.**                                      **4:14CV00065 JM**

**MARK MARTIN in his official capacity as
Arkansas Secretary of State**                          **DEFENDANT**

<u>**ORDER**</u>

Pending are the cross motions for summary judgment filed by the Plaintiffs and the

Defendant.  The Court has reviewed the motions, responses and replies.  Argument on both

motions was heard on July 27, 2015.

**I.**      <u>**Facts**</u>

Plaintiffs are registered voters in the State of Arkansas.  Plaintiff Moore claims that he

was an independent candidate for Lieutenant Governor of Arkansas in the 2014 General

Election.  Plaintiff Harrod claims to have been an independent candidate for the Arkansas House

of Representatives in the 2014 election. Plaintiffs filed suit on February 6, 2014, seeking a

declaratory judgment from the Court that Arkansas Code Ann §§7-7-101, 7-7-103, and 7-7-

203(c)(1) is unconstitutional because the statutes violate the First and Fourteenth Amendments to

the United States Constitution by way of 42 U.S.C. §1983. Plaintiffs also asked the Court to

enjoin the Defendant from enforcing these particular statutes.

Plaintiffs claim that these statutes implement deadlines for filings by independent

candidates which are too early, vague, restrictive, drastic and demanding in their requirements.

Arkansas Code section 7-7-101 states that all candidates for office in any election must be

certified as a nominee.  Section 7-7-103 provides the specific requirements for filing as an independent.  An independent candidate must file a political practices pledge, an affidavit of eligibility, a petition signed by 3%[1] of qualified electors of the place where the person is seeking office, and a notice of candidacy stating the name and title of the elective office the candidate seeks. The statute states that "[p]etitions shall be circulated not earlier than ninety (90) calendar days before the deadline for filing petitions. . . ."  Section 7-7-203(c)(1) provides the filing period  of "12:00 noon on the first day in March and beginning at 12:00 noon one (1) week prior to the first day in March." Ark. Code Ann. § 7-7-203 (West). This March deadline is the same for party candidates and independent candidates.

It is undisputed that Plaintiff Moore did not file, and did not attempt to file, a signature petition with the Defendant Secretary of State and did not sign the Notice of Candidacy in order to be placed on the ballot for Lieutenant Governor of Arkansas.  Plaintiff Harrod did not file, or attempt to file, a signature petition, a Notice of Candidacy, a Political Practices pledge, or an affidavit of eligibility with the Defendant Secretary of State in order to be placed on the ballot as a candidate for the Arkansas State House of Representatives

The filing period for all offices for the November 2014 General Election ended at noon on March 3, 2014.  The General Primary Election was held on May 20, 2014.  The General Primary Runoff election was held on June 10, 2014.  The General Election for 2014 in the State of Arkansas began with absentee ballots being delivered to military and overseas citizen voters

---

[1]  The statute specifies that petitions for persons seeking district, county, or township office must contain signatures of no less that 3% and no more than 2000 qualified electors.  Ark. Code Ann. § 7-7-103(b)(1)(A).  If the candidate is seeking office as a United States Senator or a candidate for state office, he or she must submit signatures of no less than 3% and no more than 10,000 qualified electors.  Ark. Code Ann. § 7-7-103(b)(1)(B).

on September 19, 2014, by electronic delivery to meet federal requirements of the Uniformed

and Overseas Citizens Absentee Voting Act ("UOCAVA")[2] and the General Election was held

on November 4, 2014.

II.     **Standard for Summary Judgment**

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there
> is a need for trial -- whether, in other words, there are genuine
> factual issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979.  The Eighth

Circuit set out the burden of the parties in connection with a summary judgment motion in

*Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is then the

---

[2] 52 U.S.C. §§ 20301 *et seq.*

>respondent's burden to set forth affirmative evidence, specific
>facts, showing that there is a genuine dispute on that issue.  If the
>respondent fails to carry that burden, summary judgment should be
>granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

**III.**   **Analysis**

Defendant argues that Plaintiffs lack standing to bring this action, that the action is moot, and that it is not ripe for adjudication. Plaintiffs argue that they have standing as citizens if not candidates, that ballot access suits are capable of repetition but evade review and, therefore, are not moot. The Defendant also argues that Plaintiffs' Complaint states an as applied challenge to the Arkansas statutes and now they have included a facial challenge to the statutes without amending their pleadings.

**1.**   **As Applied versus Facial Challenge**

"[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Iowa Right To Life Comm., Inc. v. Tooker*, 717 F.3d 576, 587 (8th Cir. 2013). The important inquiry is whether the "claim and the relief that would follow ... reach beyond the particular circumstances of the[ ] plaintiffs." *Id.*

An as-applied challenge consists of a challenge to the statute's application only as applied to the party before the court. If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable. *Republican Party of Minn., Third Cong.*

4

*Dist. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004).

A statute that is void for overbreadth, or facially invalid, is one that "offends the constitutional principle that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Olmer v. City of Lincoln*, 23 F. Supp. 2d 1091, 1105 (D. Neb. 1998) aff'd, 192 F.3d 1176 (8th Cir. 1999) (quoting *Zwickler v. Koota*, 389 U.S. 241, 250 (1967)). Facial challenges are not limited to a plaintiff's particular case, but challenges application of the law more broadly. *Tooker*, 717 F.3d at 588. "[A] state statute should be deemed facially invalid only if (1) it is not readily subject to a narrowing construction by the state courts and (2) its deterrent effect on legitimate expression is both real and substantial." *Kirkeby v. Furness*, 52 F.3d 772, 775 (8th Cir.1995).

Secretary argues that judicial estoppel bars Plaintiffs from changing their challenge from an "as applied" challenge to a facial challenge. The Court finds it unnecessary to analyze whether judicial estoppel bars Plaintiff from bringing a facial challenge in addition to an as applied challenge because under either theory the result remains the same.

### 2.    Mootness

The Secretary argues that the Plaintiffs' case is moot because the 2014 election is over. Plaintiffs argue that the case is not moot because it presents an issue which is "capable of repetition yet evading review." *Van Bergen v. State of Minn.*, 59 F.3d 1541, 1547 (8th Cir. 1995). "Election issues are among those most frequently saved from mootness by the capable of repetition yet evading review exception to the mootness doctrine. *Id.* "Elections, including the preelection campaign period, are almost invariably of too short a duration in which

5

to complete litigation and, of course, recur at regular intervals." *Id.* "The Court believes that the situation presented in this case is likely to present itself again, given that Plaintiffs are involved in politics and their continued involvement is far from merely theoretical." *Constitution Party of Missouri v. St. Louis Cnty., Mo.*, 2015 WL 3908377, at *3 (E.D. Mo. June 25, 2015). The Court finds that the capable of repetition yet evading review exception to the mootness doctrine applies to this ballot access case.

### 3. Standing

The Secretary argues that Plaintiffs lack standing because there has been no harm to Plaintiffs caused by the Secretary. Plaintiff's petitions were not denied by the Secretary because they never submitted signatures on or before the March 3rd date. Plaintiffs contend they have standing as voters to challenge the statutes.

"The purpose of the standing requirement is to ensure that the parties have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). "Although the primary impact of restrictive ballot access laws is on the candidates, 'the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters.'" *Id.* (quoting *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 855-56, 31 L.Ed.2d 92 (1972)). "The impact of candidate eligibility requirements on voters implicates basic constitutional rights." *Anderson v. Celebrezze*, 460 U.S. 780, 786, 103 S. Ct. 1564, 1569, 75 L. Ed. 2d 547 (1983). Courts must

protect the rights of voters against unconstitutional ballot access restrictions "limit[ing] the field of candidates from which voters might choose." *Anderson,* 460 U.S. at 786.

In his affidavit, Plaintiff Moore states that in addition to the increased difficulty of running as an independent candidate, the March 1, 2018 deadline for the submission of petition signatures "will also impact [his] ability to cast [his] vote effectively as an Arkansas voter who supports potential independent candidates for elective office in Arkansas." (ECF No. 28-4, p.3). Further, the Secretary of State has admitted in his Answer that Plaintiffs Moore and Harrod are registered Arkansas voters. (ECF No. 14). Based upon Plaintiffs' status as Arkansas voters and the alleged injury to their rights which can be fairly traced to the Arkansas ballot access restrictions, the Court finds that they have standing to bring this ballot access case. *See McLain,* 851 F.2d at 1048 ("Plaintiff has standing as a voter to assert his claim that the North Dakota ballot access laws are unduly restrictive.")

### 3. Ripeness

The basic rationale of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

The Secretary briefly argues that Plaintiffs' claims to be a candidate in the 2018 election cycle are too speculative and premature for the Court to review.  However, since the Court is analyzing Plaintiffs' claims as voters this argument is without merit.  Plaintiffs have felt the

effect of a March 3rd petition deadline for independent candidates.  The issues are not abstract and government agencies will not be injured by judicial interference because the agency would have plenty of time to reassess their options for the 2018 election cycle.

### 4.  Merits

"The States possess a 'broad power to prescribe the Times, Places and Manner of holding Elections for Senators and Representatives, Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Green Party of Arkansas v. Martin*, 649 F.3d 675, 680 (8th Cir. 2011) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (internal quotations omitted)). "Restrictions upon the access of political parties to the ballot impinge upon the rights of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively, *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968), and may not survive scrutiny under the First and Fourteenth Amendments." *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S. Ct. 533, 536, 93 L. Ed. 2d 499 (1986).  "These associational rights, however, are not absolute and are necessarily subject to qualification if elections are to be run fairly and effectively."*Id.*

The Court must weigh 'the character and magnitude' of Plaintiffs' alleged First and Fourteenth Amendment injuries against the precise interests put forward by the Secretary of State as justification for imposing its rule, taking into consideration the extent to which those interests make it necessary to burden constitutional rights. *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). This standard, as the Supreme Court has recognized, provides no bright lines. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351,

8

359, 117 S.Ct. 1364 (1997). Instead, this Court must discern where this case falls on a sliding scale of scrutiny. "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Green Party of Arkansas v. Daniels*, 733 F. Supp. 2d 1055, 1059 (E.D. Ark. 2010) aff'd sub nom. *Green Party of Arkansas v. Martin*, 649 F.3d 675 (8th Cir. 2011) (citing *Timmons*, 520 U.S. at 358)

First, Plaintiffs argue that the March petition deadline for independent candidates, Ark. Code Ann. § 7-7-203(c)(1) is unconstitutional based upon previous decisions of this Court: *Lendall v. Bryant*, 387 F. Supp 397 (E.D. Ark. 1975) (*Lendall I*); *Lendall v. Jernigan*, Case No. LR-76-CV-185 (*Lendall II*); *Lendall v. Jernigan*, 424 F.Supp. 951 (E.D. Ark 1977) (*Lendall III*); and *Rock v. Bryant*, 459 F.Supp. 64 (E.D. Ark. 1978) aff'd, 590 F.2d 340 (8th Cir. 1978). The Court disagrees.

This case, as well as the previous cases ruling on Arkansas ballot access laws, deal with several variables: the filing deadline, the number of signatures required on the petition, and the circulation time of the petition. In *Lendall I*, the filing deadline was the first Tuesday in March but required petitions to include signatures of 15% of qualified voters.  The Court found this combination to be unconstitutional.  In *Lendall II*, the petition filing deadline remained on the first Tuesday in March but petitions required signatures of only 10% of qualified voters. The court found this combination to be unconstitutional.  In *Lendall III*, the court discussed only the number of signatures required, 10% of qualified voters, and the circulation time of 60 days. Again, this combination was found to be unconstitutional.  In *Rock v. Bryant*, the winning

combination was 3% of qualified voters, a circulation time of 60 days, and a filing deadline of noon on the Monday preceding the preferential primary.

Arkansas's current statutory scheme requires signatures of 3% of the qualified electors of the state, a 90 day circulation time, and a filing deadline of the first day in March. While it would be easy to say precedent clearly dictates that the current statutory scheme is unconstitutional because the court in *Lendall II* stated that it doubted any filing deadline before April could be constitutional, it would not be accurate.  The Court must weigh the variables of the legislative scheme with the burdens and administrative issues of today in order to determine the constitutionality of these statutes.

As to these issues, Plaintiffs argue that the March 1st petition filing deadline makes petitioning more difficult by setting a petitioning deadline farther away from the date of the Arkansas General Election when political interest among the voting public is less and by placing the ninety (90) day petitioning time during the months of December, January and February when the conditions are not optimal due to daylight savings time, holiday travel, and weather issues. Plaintiffs claim the petition deadline coupled with the signature requirement, lowered public interest, and inconvenient petitioning time is unconstitutional.  Plaintiffs argue that the State has no compelling interest which justifies these requirements and it unequally and unfairly impacts independent candidates.  In other words, Plaintiffs do not object to the fact that there is a petition filing deadline but rather the movement of the deadline from May 1st to March 1st coupled with the number of signatures required.

The Secretary of State has articulated a laundry list of reasons for the petition filing deadline and the number of signatures required for the petition to be successful.  While most of

the reasons are valid in a general sense, only a few of the reasons apply to the earlier date set for the petition deadline.  For example, the Secretary of State contends that the independent candidate requirements "provide the electorate with a ballot that will eliminate or reduce voter confusion."  The fact that independent candidates have to get signatures on a petition within a certain time frame to be eligible for inclusion on the ballot reduces the risk that candidates who are not supported by the community or who are not serious about their candidacy will be included on the ballot.  As the Supreme Court held in *Lubin v. Panish*, "[t]he means of testing the seriousness of a given candidacy may be open to debate; the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support is not." 415 U.S. 709, 715, 94 S.Ct. 1315 (1974).  However, there is no evidence that the Arkansas Legislature's decision to move the filing deadline from May 1st to March 1st furthers this specific goal.  The same can be said for the Secretary's goal of protecting the integrity of the ballot process, encouraging compromise and political stability, and ensuring that the general election winner will represent a majority of the community.

More to the point, the Secretary explains that the filing deadline was moved in 2013 based upon "the election administration experiences of the 2010 election cycle (when MOVE had been enacted, but before the Arkansas General Assembly met in a general session), and the 2012 election cycle." (ECF No. 31).  MOVE, or the Military and Overseas Voter Empowerment Act, was enacted by Congress in 2009.  It mandated that states "transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter . . . at least 45 days before an election for Federal office. . ." 52 U.S.C. § 20302(a)(8).  Before MOVE, states were required to send absentee ballots but the timing was left to the states' discretion.  (UOCAVA 52

U.S.C § 20301, *et seq*.). Before MOVE, presumably the Secretary of State needed twenty to

thirty day before the election to account for time to mail out ballots and for their return.

 As further explanation, the Secretary states:

> The deadlines for filing petition signatures was "moved up" on the calendar- to earlier in the year- in order to facilitate election administration necessities, including the processing of so many initiative petition signatures during the 2012 election cycle that it was nearly impossible to finish the process within the statutory and constitutional guidelines, resulting in preliminary certification of ballot titles that were later determined to be "stricken" from the ballot for one reason or another (after considerable litigation).  Given the constitutional deadline for submission of initiative petition signatures, and the necessities of UOVACA and MOVE compliance, all other petition signature requirements were advanced to earlier in the year so as to clear the calendar of petition signature processing and subsequent litigation, in advance of the constitutional initiative petition signature deadlines (which normally fall just before or just after the July 4 holiday).

(ECF No. 31).

Because the Court finds the March 1st filing deadline to be "a burden of some substance"

on an independent candidate's right to ballot access and a voter's right to support a candidate of

her choice, the Court must determine whether the Secretary of State has provided a compelling

reason for the deadline. "To survive constitutional scrutiny, the statute's restrictions must be

necessary to serve these compelling state interests, and must not go beyond what Arkansas's

interests actually require." *Langguth v. McCuen*, 30 F.3d 138 (8th Cir. 1994).

While touched on in the Secretary's briefs, the Court finds that the most legitimate

argument for the extension articulated by the Secretary was made during the hearing on

summary judgment. The reason being that in light of the increase in non-independent candidates

(mostly judges) filing petitions instead of paying filing fees as before and the increased number

of initiative petitions there is simply not enough time to process all of the petitions within the

May 1st deadline. This fact coupled with the time consumed by ever increasing litigation over petitions has necessitated the extension of the deadline to March 1st.

When weighing the character and magnitude of Plaintiff's injury against the Secretary's precise interest put forward as justification for the extension, the Court finds that the regulations, Ark. Code Annotated §§ 7-7-101, 7-7-103, and 7-7-203(c)(1) are narrowly tailored to advance the State's interest in timely certifying independent candidates who wish to be placed on the ballot, as well as candidates who wish to qualify for election by petition and those who seek to promote ballot initiatives. The Court finds that the restrictions required by these statutes appear necessary to meet Arkansas's compelling interests in timely certifying candidates and interests for the ballot. Given the year-round interest in all things political and the fact that Arkansas weather may be equally oppressive in the spring as in the winter, the Court does not find the requirements to be unreasonable.  Moreover, Plaintiffs have failed to present evidence persuading the Court otherwise.

For these reasons, Plaintiffs' motion for summary judgment (ECF No. 28) is DENIED. Defendant's motion for summary judgment (ECF No. 16) is GRANTED.

IT IS SO ORDERED this 25th day of August, 2015.

James M. Moody Jr
United States District Judge