IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

_____
                                          )
MARK MOORE, et al.,                       )
                          …Plaintiffs,    )
                                          )
  v.                                      )   Case No. 4:14-CV-65-JM
                                          )
MARK MARTIN, in his official              )
capacity as Secretary of State            )
for the State of Arkansas,        …Defendant.  )
_____)

PLAINTIFFS' MEMORANDUM BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO RECONSIDER AND
ALTER OR AMEND JUDGMENT AND ORDER

I.  STATEMENT OF THE CASE

Plaintiffs filed, pursuant to Fed. R. Civ. Proc. 59(e), a Motion to Reconsider and Alter or

Amend the Order [Doc. No. 37] and Judgment [Doc. No. 38] filed in the instant case on August

25, 2015.

II.  ARGUMENT AND AUTHORITIES

The decision of the Trial Court in its aforesaid Order and Judgment of August 25, 2015,

upholding as Constitutional the new petition signature deadline for Independent candidates in

Arkansas, which was in effect for the 2014 General Election, and will be in effect again for the

2018 General Election, is contrary to the U.S. Supreme Court decisions in *Anderson v.

Celebrezze*, 460 U.S. 780 (1983), and *Tashjian v. Republican Party of Connecticut*, 479 U.S.

208, 217-218 (1986).

The Trial Court's decision that the previous decisions of this Court which held petition

signature deadlines for Independent Arkansas candidates of April or earlier as unconstitutional,

viz.:  *Lendall v. Bryant*, 387 F.Supp. 397 (E.D. Ark., 1975) (*Lendall I*); *Lendall v. Jernigan*, Case

No. LR-76-CV-184, *aff'd mem.*, 433 U.S. 901 (1977) (*Lendall II*); *Lendall v. Jernigan*, 424 F.Supp. 951 (E.D. Ark., 1977) (*Lendall III*); and *Rock v. Bryant*, 459 F. Supp. 64 (E.D. Ark., W.D. 1978), *aff'd.*, 590 F.2d 340 (8th Cir. 1978)[1]; can be distinguished from the instant case and are, therefore, not binding because of an increase in the amount of time allowed for petitioning and a decrease in the number of petition signatures required is contrary to the holding of the United States Supreme Court in *Anderson v. Celebrezze*, *Id*.  While a Constitutional petition deadline for Independent candidates (e.g., the former May 1 petition deadline of an election year) can be made unconstitutional by having too many signatures required or by only allowing a very small petitioning time, the reverse is not true, i.e., that an unconstitutional petitioning deadline (i.e., the March 1 petition deadline of an election year) as alleged in this case and so held in *Lendall I, II, III, and IV*, can be saved by having a lesser number of petition signatures required or a greater amount of time allowed for petitioning.

In the U.S. Supreme Court's decision in *Anderson v. Celebrezze*, the Supreme Court recognized that while only 5,000 petition signatures were required to achieve ballot access for independent candidates in statewide elections in the State of Ohio, *Anderson v. Celebrezze*, 460 U.S., at 783 n.1 (Ohio having a considerably larger population than Arkansas—which requires at least 10,000 petition signatures for independent candidates in statewide elections in Arkansas), this did not make a March 20 deadline in the election year in Ohio constitutional simply because of the low number of petition signatures required.  *Anderson v. Celebrezze,* 460 U.S., at 786-794. The U.S. Supreme Court held that:

> Neither the administrative justification nor the benefit of an early filing deadline is applicable to an independent candidate.  Ohio does not suggest

---

[1] The Trial Court's decision [Doc. No. 37] did not mention the unpublished decision cited in Plaintiff's Briefs, Lendall v. McCuen, No. LR-C-88-311 (E.D. Ark., W.D., Aug. 16, 1988) (Lendall IV), which declared a January filing deadline unconstitutional by following Lendall II and Lendall III wherein it was stated "that in no event could the April deadline be justified for independent candidates." Lendall III, 424 F.Supp., at 954.

that the March deadline is necessary to allow petition signatures to be counted and verified or to permit November general election ballots to be printed. In addition, the early deadline does not correspond to a potential benefit for the independent, as it does for the party candidate. After filing his statement of candidacy, the independent does not participate in a structured intraparty contest to determine who will receive organizational report; he must develop support by other means. In short, "equal treatment" of partisan and independent candidates simply is not achieved by imposing the March filing deadline on both. As we have written, "[s]ometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike. *Anderson v. Celebrezze*, 460 U.S., at 800-801, quoting *Jeness v. Fortsen*, 403 U.S. 431, 442.

Further, while other courts have not found unconstitutional petition signature deadlines to be saved by expanding petitioning time or decreasing the number of signatures required, other courts have recognized that ballot access requirements impose a tremendous burden on individuals that seek to field candidates for election, but may have fewer resources than the two major parties. *Wood v. Meadows*, 207 F.3d 708, 711 (4th Cir. 2000) (which noted that "courts have subjected to searching scrutiny state laws requiring both party primary candidates and independent candidates to announce their candidacies by the same March deadline, well prior to the primary elections"); *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 881 (3rd Cir. 1997) (which found that an early spring filing deadline of April 10, even with an extremely low signature requirement, unconstitutionally burdened First Amendment rights of minor political parties and their supporters); and *Stoddard v. Quinn*, 593 F.Supp. 300, 302, 304, 306 (D. Maine 1984) (which found that administrative necessity did not require an early deadline of April 1 for independent candidates for statewide office, with 4,000 petition signatures required to be collected in the months of January, February, and March—"at a time of year when election issues are undefined and the voters are apathetic."). As the District Court wrote in *Stoddard*: "Equality is not achieved by applying the same deadline to substantially different types of candidacies." *Stoddard v. Quinn*, 593 F.Supp., at 307.

Considering the above, we should note the Third Circuit Court of Appeals' further comment in *Hooks* that while:

> . . . the Secretary claims that effectively imposing a July filing deadline for candidates of alternative political parties while holding major party candidates to an April deadline involves the state in treating some candidates more favorably than others.  But alternative party candidates and major party candidates are not similarly-situated.  Because Democrats and Republicans will participate in June primaries, there are valid reasons of administrative necessity and voter education for requiring these candidates to file petitions in April.  Such reasons do not apply to alternative party candidates who cannot compete in primaries and will not appear on any ballot until November.  *Counsel of Alternative Political Parties v. Hooks*, 121 F.3d, at 882-883.

Just as there was inequality in applying the same uniform filing deadline to all candidates in the *Hooks* case, there is inequality in the instant case in applying the same petition deadline for independent candidates and the judicial candidates whose increasing use of petitioning as opposed to paying a filing fee for ballot access concerned this Court.

The Trial Court's decision that the large number of judicial candidates choosing to seek ballot access by gathering petition signatures, along with the time and expense of validating those petition signatures, justify an earlier deadline in March for petition signatures for Independent candidates in Arkansas because of the added time and expense for the State to validate the additional petition signatures gathered on behalf of Independent candidates. However, such an administrative burden imposed by the March 1 petition signature deadline for Independent candidates in Arkansas is not a sufficient ground to uphold the constitutionality of the March 1 deadline in question.  In *Tashjian*, the State of Connecticut argued that the election law in question was justified because otherwise the State would be required to purchase additional voting machines, the training of additional pole workers, and potentially the printing of additional ballot materials so that the administration of the election system would simply cost the State too much. *Tashjian v. Republican Party of Connecticut*, 479 U.S., at 217-218.  As the

U.S. Supreme Court said in *Tashjian*, ". . . the possibility of future increases in the cost of administering the election system is not a sufficient basis here for infringing appellees' First Amendment rights." *Tashjian*, 479 U.S., at 218.  While the Court noted that the State of Arkansas had to check initiative petitions which had a deadline in July, along with the judicial petitions and any independent petitions (which were two in 2014 with a March deadline[2] and seven in the previous general election with a May deadline), said justification for an earlier deadline simply amounts to the State having to check a number of petitions which are time-consuming and require a lot of work.  Simply having a lot of work to do by the State is not an excuse for severe burdens on constitutional rights of independent candidates and their supporters. In fact, a later filing deadline for independent candidates would not conflict with the time limits imposed for the validating of nonpartisan candidate petitions so that it would make the administrative tasks for the State easier.

        While the Trial Court has reasoned that because of the increase in non-independent candidates (mostly Judges) who seek to file petition signatures rather than pay filing costs to obtain ballot status, there simply is not enough time to process all of the petitions within the May 1st deadline, Plaintiffs would respectfully suggest to the Court that it has overlooked the fact that there are simply not that many independent candidates to begin with along with the fact that the State would be better served by even having a later deadline than May 1st—as well as later than March 1st—in which independents could file their petition signatures so as not to interfere with the counting of other petition signatures for the non-independent candidates.  The foregoing is particularly true when you consider that the independent candidates will not be appearing on the ballot until the November general election.  Plaintiffs simply think that the State workers are

---

[2] The Arkansas ballot in 2014 contained no independent candidates for a statewide elective office and only one for a legislative race.

certainly up to the task, and, if not, more can be temporarily employed--particularly in light of the U.S. Supreme Court's teaching in *Tashjian* that ". . . the possibility of future increases in the cost of administering the election system is not a sufficient basis for infringing [Plaintiffs'] First Amendment rights." *Tashjian*, 479 U.S., at 218.

## III.  CONCLUSION

The March 1 deadline for independent candidate petitions which will be required for the 2018 General Election cycle is unconstitutional under previous decisions of this Court holding that a deadline in April or earlier is unconstitutional.  *Lendall I, II, III, and IV*.  The fact that since those decisions the number of petition signatures required for independent candidate petitions has decreased while the petitioning time allowed has increased does not save an unconstitutional deadline under the ruling of the U.S. Supreme Court in *Anderson v. Celebrezze, Id.*, and other decisions.  Further, it is not a compelling interest of the State of Arkansas which makes it necessary to have a March 1 deadline in an election year for the submission of independent candidate petitions so as not to interfere with the review of petitions filed on behalf of judicial candidates since judicial candidate elections—with the rare exception of a runoff election—are not on the November General Election ballot like independent candidates.  State judges in Arkansas have their general election in May with only contests going to the November ballot for a state judgeship if no one gets a majority in the May election.  Ark. Stat. 7-10-102.  Therefore, under the holding of the U.S. Supreme Court in *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), the extra administrative time and expenses of reviewing and counting the independent candidate petition signatures, or even the initiative petition signatures which have a later petition deadline, cannot be a reason for finding the March 1 petition signature deadline law constitutional.

WHEREFORE, premises considered, Plaintiffs request the Court to reconsider and alter and amend its order and judgment of August 25, 2015, so as to modify its aforesaid decision and grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

Respectfully submitted this 22nd day of September, 2015.

/s/ James C. Linger
JAMES C. LINGER, OBA#5441
1710 South Boston Avenue
Tulsa, Oklahoma 74119-4810
(918) 585-2797 Telephone
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com
*Counsel for Plaintiffs*

JEFFREY M. ROSENZWEIG, AB # 77115
300 Spring Street, Suite. 310
Little Rock, Arkansas 72201
(501) 372-5247 Telephone
(501) 376-0770 Facsimile
jrosenzweig@att.net
*Counsel for Plaintiffs*

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record via the Court's CM/ECF e-mail notification system on the 22nd day of September, 2015.

/s/ James C. Linger
James C. Linger