```
 1            IN THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF ARKANSAS
 2                  WESTERN DIVISION

 3   MARK MOORE and MICHAEL HARROD,

 4                      Plaintiff,

 5     v.                            No. 4:14CV00065 JM

 6                                   July 27, 2015
                                     Little Rock, Arkansas
 7                                   9:15 a.m.
     MARK MARTIN, in his official
 8   capacity as Secretary of State
     for the State of Arkansas,
 9
                        Defendant.
10

11            TRANSCRIPT OF ORAL ARGUMENT
         BEFORE THE HONORABLE JAMES M. MOODY, JR.,
12              UNITED STATES DISTRICT JUDGE
                   _____
13   APPEARANCES:

14   On Behalf of the Plaintiff:
         JAMES C. LINGER, Attorney at Law
15         Law Offices of James C. Linger
           1710 South Boston Avenue
16         Tulsa, Oklahoma  74119-4810

17

18   On Behalf of the Defendant:
         A.J. KELLY, Attorney at Law
19         Kelly Law Firm
           Post Office Box 251570
20         Little Rock, Arkansas  72225-1570

21

22       Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
23   transcription.

24

25
```

P R O C E E D I N G S

(Proceedings commencing in open court at 9:19 a.m.)

THE COURT:  We are on the record in 4:14CV65, Mark Moore and Michael Harrod versus Mark Martin, Secretary of State.

Mr. Linger --

MR. LINGER:  Yes, Your Honor, for the plaintiffs.

THE COURT:  Y'all threw me a curve.  Usually the plaintiffs are over there and the defendant -- it doesn't matter, I was just looking in the wrong spot -- is here for the plaintiff, and Mr. A.J. Kelly is here on behalf of the Secretary of State.

MR. KELLY:  Yes, sir.

THE COURT:  We are here on, I guess, cross motions for summary judgment.  The three primary issues that I am prepared to hear, and I'll be prepared to hear anything y'all want to deal with today, are primarily the issue of mootness, standing, and potentially the merits of the case.  I have reviewed all of the pleadings in the matter that you filed, have read most every case that you have cited in your pleadings as well as some others that have been brought to my attention. I don't say that so you won't bring them up, I was just saying that I've had the benefit of your pleadings and quite a bit of reading on this matter so you don't have to reinvent the wheel for me, but I'm going to open it up and let you make whatever

1  record you want and make whatever argument you think might be

2  convincing to me.  I'm not sure if you discussed among

3  yourselves how you want to proceed on who goes first or

4  whatever, but have you or do you just want me to say?

5              MR. LINGER:  We agreed, Your Honor, that it was

6  whatever you wanted.

7              THE COURT:  I'm going to leave that to you because I

8  don't have a preference.

9              MR. LINGER:  Well, as the plaintiffs' counsel, I

10 think probably the burden is on us more so.

11             THE COURT:  Then I'll let you go first and last.

12             MR. LINGER:  Thank you, Your Honor.  I do want to

13 address first the standing and mootness because I think that's

14 what's most important to get to in one of these cases early.

15             THE COURT:  All right.

16             MR. LINGER:  Of course, there's been extensive

17 briefing in regard to the mootness issue, and I think the Court

18 knows that election cases are usually considered exceptions to

19 usual mootness issue, but sometimes it's hard to separate

20 mootness from standing.  They sort of go together.  And looking

21 at the cases cited, I think I would direct the Court's

22 attention to two Eighth Circuit decisions that have been

23 mentioned by both parties.  And that, of course, is the *McClain*

24 *v. Meier* Eighth Circuit case out of North Dakota, and then the

25 *Constitution Party of South Dakota v. Nelson*.

1        Now, of course, *McLain v. Meier*, there are a number of

2   *McLain v. Meier* cases that have been cited by the Eighth

3   Circuit.  You might say it's sort of North Dakota's version of

4   the *Lendall* cases here in Arkansas, the same party had multiple

5   cases in election law.  But what's important is we prepare the

6   *McLain* case, and I'm particularly talking on standing to the

7   1988 decision of the Eighth Circuit in *McLain*.  If you look at

8   that case and then if you look at the *Nelson* case out of South

9   Dakota, what you notice that there was a decision by the Eighth

10  Circuit in both those cases in which they reversed the trial

11  judge's decision on standing.  In one case, the trial court

12  found there was standing, that was the *Nelson* case, and the

13  Eighth Circuit reversed it, said there wasn't standing.  In the

14  other case, *McLain*, the trial judge said there wasn't standing

15  and the Eighth Circuit reversed and said there was standing.

16        Now, what happened there?  Well, in the case in *Nelson*,

17  the reason they reversed standing because there was an issue

18  about an out of state petitioner, he was a resident of Arizona.

19  The case started out on a preliminary injunction, and before

20  even an answer was filed by the state, they filed what was

21  styled a motion to dismiss or in the alternative, a motion for

22  summary judgment.  What that case shows is the trial judge

23  decided of course there's standing, we have an out of state

24  petitioner and South Dakota law banned that.  But the problem

25  was there hadn't been an answer, there hadn't been an agreement

1    by the state at that point that he was out of state and the

2    plaintiffs forgot, either for the in state plaintiffs or for

3    the out of state resident of Arizona, to have an affidavit.

4         So, because it was a summary judgment and it wasn't on a

5    motion to dismiss, it wasn't something that was decided just on

6    the pleadings, it was decided on factual, proven evidence and

7    there was no affidavit, and so while the trial judge said that

8    gave standing to that party, the Eighth Circuit said, no, it

9    doesn't, because you forgot to put an affidavit in the record.

10   That was why there was no standing found in the *Nelson* case.

11   But on the other hand, look at *McLain v. Meier*, something I

12   think is rather significant in the '88 case which I believe was

13   the third reported case of *McLain v. Meier* by the Eighth

14   Circuit.  In that case, the trial judge had found there wasn't

15   standing.  And why?  Because the age of the party was 32 years.

16   In other words, they could not qualify to be president, and

17   found there was no standing.

18        But what did the Eighth Circuit say there?  They said no,

19   that party can have standing not as a candidate but as a voter,

20   because that is what is most important.  And I think that's

21   very important in this case because the Secretary of State has

22   relied a lot on that *Nelson* decision, but that's not a problem

23   we have here.  And, therefore, I think in that regard we have

24   consistently argued and I know they say we've changed our view

25   on this case, but we haven't.  If you look back at our response

1    to the motion to dismiss, if you look at our responses either

2    against their motion for summary judgment or in favor of our

3    motion for summary judgment, we have consistently held that

4    precedent in the Eastern District of Arkansas has been that you

5    cannot have a petition deadline before April.

6         Now, this case, of course, has been somewhat affected in

7    that the legislature has decided to go on and move the deadline

8    now in like a year before the election for the 2016 election

9    period and that probably will be the basis of future

10   litigation, but not only would that be unconstitutional, but

11   it's even unconstitutional here where it's already been ruled

12   over and over that they can't have an early deadline like this,

13   and we have consistently done that.  And while they cited in

14   some of their cases, I think the U.S. Supreme Court case, *New*

15   *Hampshire v. Maine* that there could be some sort of judicial

16   estoppel --

17        THE COURT:  Let me interrupt you for a moment.

18   While it isn't argued in the pleadings, how do we deal with the

19   fact that you're asking for a ruling on the law that's

20   essentially been superseded by the recent legislature, because

21   they've moved, what, the primary to March, is my understanding?

22   I know that it used to be in May and now they've proposed or

23   changed to March.  And so are the limits that you're discussing

24   going to be obsolete as of the '16 election?

25        MR. LINGER:  It won't, because when they did that in

1   the law, they only made it for the 2016 election.  The only

2   client that I have, the plaintiff, Mark Moore, is not a

3   candidate for the 2016 election.  He says he is a candidate and

4   has filed an affidavit to that effect, which I believe gives

5   him standing, that he is a candidate for the 2018 office of

6   lieutenant governor of Arkansas.  Therefore, as to these

7   plaintiffs, as it's applied to them, particularly Mr. Moore,

8   the law as it has been changed for the 2016 election cycle has

9   no effect.

10          THE COURT:  So Mr. Moore has indicated by affidavit

11  that he's on board for '18, what about the rest of the

12  plaintiffs?

13          MR. LINGER:  Mr. Harrod has not made a decision in

14  that regard.  I do believe the Court has to find at least one

15  of the plaintiffs has standing, but Mr. Harrod, though, does

16  have standing as per the *McLain v. Meier* Eighth Circuit

17  decision as a voter.  So as the Supreme Court said, as I think

18  the Court remembers in the Supreme Court decision of *Anderson*

19  *v. Celebrezze*, the Court does not require someone even try to

20  meet with the law in order to have standing.  The voters can do

21  it because that is simply a threat in and of itself, and if we

22  have voters, they have that.  That's one of the reasons

23  Mr. Johnson was dismissed.  He moved to Arizona, he was no

24  longer a voter, he could no longer have it impact him or affect

25  his fundamental rights.

1       So, in that regard, I do think the Court remembers the

2    *New Hampshire v. Maine* case of the U.S. Supreme Court which was

3    cited in regard to whether or not there is a change, but there,

4    they specifically said in their three prong test on page 750 to

5    751 that there has to be a clearly inconsistent position taken

6    by a party from one time to another, one proceeding to the next

7    proceeding.  No one, I think, can seriously say that there's

8    ever been any inconsistent position taken by the plaintiffs in

9    the case.  They have been consistent that the law cannot be for

10   an independent to have a petition deadline that is so far ahead

11   of the primaries when the major parties would choose their

12   candidates.  In most cases, for example, in the *McLain v. Meier*

13   case, the original one back in 1980 and the one before that,

14   the deadline for political parties was June 1st for

15   independent --

16            THE COURT:  Are you arguing on the standing,

17   mootness, or where are we now?  I'm trying to delineate the

18   arguments that you're making, whether or not we're still on

19   standing or mootness or you've moved on --

20            MR. LINGER:  I'm sort of drifting into the merits.

21            THE COURT:  Before we get to merits at all, I'd like

22   to hear argument on both sides as to standing and mootness

23   because that will determine whether or not we get to arguments

24   on merits.  I was hearing merits argument sort of and just

25   wanted to make sure I was on the same page with you.

1          MR. LINGER:  Would the Court like me to finish up on

2     standing and mootness and then let Mr. Kelly address --

3          THE COURT:  Yes, sir, you can take all the time you

4     want, I didn't mean to cut you short, I just was sensing a

5     change of subject matter perhaps.

6          MR. LINGER:  All right.  Well, I do ask the Court to

7     look at *New Hampshire v. Maine* because the Secretary of State

8     took like a sentence or so out of there and talked about we

9     were making an inconsistent view on that, and I'm just saying I

10    don't think we are, and I do think that goes to standing and

11    mootness because --

12         THE COURT:  I think the Secretary of State's point

13    about you shifting positions was whether or not you were making

14    a facial challenge or an as applied challenge to the statute.

15    And do you want to respond to what you're championing at this

16    time?

17         MR. LINGER:  Well, the statute is so vague.  Of

18    course, you have to look at it in terms of other statutes to

19    figure out what the deadline is specifically.  But it does

20    apply to these plaintiffs for future elections based on when

21    the primary is.

22         THE COURT:  Are you making a facial challenge or an

23    as applied challenge?

24         MR. LINGER:  I think we're making both, Your Honor,

25    really not just because there's precedent in this case, but I

1  notice something that I believe it was Justice Stevens said in

2  the *Washington v. Glucksberg* case which was cited by the

3  Secretary of State wherein he said that in talking about the

4  *Salerno* decision about saying in facial challenges that there

5  must be shown that there's no set of circumstances where the

6  law would be constitutional, he said that he did not believe

7  the Supreme Court had ever actually applied such a strict

8  standard, even in the *Salerno* itself, and as the recent

9  decision of the U.S. Supreme Court in *Citizens United* said,

10  there is -- sometimes it's very hard to separate facial

11  challenges from as applied challenges.

12       That is something that I think -- yes, the Court said in

13  Stevens, *U.S. v. Stevens*, that a facial challenge is something

14  that invalidate the law in each of its applications to take the

15  law off the books completely, and that's when they talk about

16  the no set of circumstances where the law could be valid, which

17  is also quoted in *Salerno*.  However, in *Citizens United v. The

18  Federal Election Commission*, at 558 U.S. 310 at page 331, the

19  Court said in contrast, an as applied challenge argues that a

20  law is unconstitutional as a force against the plaintiffs

21  before the Court.  And that's what we're asking here.

22       Then the Court goes on to say the distinction between

23  facial and as applied challenges is not so well defined that it

24  is some automatic effect or that it must always control the

25  pleadings and disposition in every case involving a

1    constitutional challenge.  In fact, a claim can have

2    characteristics of as applied and facial challenges.  It can

3    challenge more than just the plaintiffs particular case without

4    seeking to strike the law in all its applications.  And there

5    the Court referred to its previous decision of *John Doe #1 v.*

6    *Reed* at 561 U.S. 186 at page 194.  I actually think that was

7    decided the same year, but it was close in time.

8        I'm just saying in this case, it is -- we have plaintiff,

9    Mr. Moore, who had been a candidate before successfully when

10   the deadline was in May, but was not and did not try to meet it

11   when it came in early March because he did not think he could

12   meet it.  It is applied to him, it's applied to him in the

13   future.  But, facially, because a precedent in this court, I

14   think it is also unconstitutional facially as well as applied,

15   but sometimes as the Court has recognized, it's hard to

16   separate as applied and facially challenges.  They're not all

17   so obvious.  So it's not quite as simple as I think the

18   Secretary of State would have it.

19           THE COURT:  I'm just trying to determine what your

20   theory is, whether it's simple or not.  It wasn't so much my

21   question as what you're bringing forth to the Court to

22   determine, whether is it applied facially or both, and I think

23   you've answered that question.  Thank you.

24           MR. LINGER:  Then just, finally, what I would say on

25   that regard is the effect of this, whether you look at it

1   facially or applied from the evidence put in by the Secretary

2   of State in 2014, Arkansas had no independent candidates on the

3   ballot for a statewide office.  And for the legislature, the

4   senate, and the house, it had exactly one and that was in the

5   district where the democrats did not even run a candidate.

6   That is the effect of this law.  That is, and as applied, that

7   is of record.

8        And as Mr. Winger, our expert who we attached reports and

9   affidavits stated, consistently the Courts have declared

10  unconstitutional almost overwhelming with a few exceptions

11  whenever a petition deadline for independent candidates or even

12  minor parties sometimes is before the nomination and selection

13  of the major party candidates.  I will save the rest of my

14  argument on the merits unless the Court has any other questions

15  for me.

16              THE COURT:  Not just yet.  Thank you.

17              MR. LINGER:  Thank you, Your Honor.

18              THE COURT:  Good morning, Mr. Kelly.

19              MR. KELLY:  May it please the Court.  A.J. Kelly for

20  the Secretary of State.  The Secretary does contend that none

21  of the plaintiffs has standing and that the case is moot

22  whether they have standing or not.  I'd like to go directly to

23  the facial/as applied issue since that was the last issue you

24  discussed.  The Secretary made a motion to dismiss on a number

25  of different bases in its first responsive pleading.  In

1    response to that, plaintiff said unequivocally that this was an

2    as applied challenge in order to avoid some of the deleterious

3    effects of having a facial challenge, which was not fully

4    supported in the complaint.  On that basis, this court denied

5    our motion to dismiss.

6        It's too late for them to come back now and say, oh, we

7    got that wrong, this really is a facial challenge.  It is

8    grossly unfair.  Nonetheless, we've responded to the allegation

9    on the merits and I'll leave it for the discussion on the

10   merits.  What I do want to say, though, is this.  What the

11   standard would be for this court to review, is there a single

12   instance of a successful candidate meeting the early filing

13   deadline, but there were two in this case, one of the

14   plaintiffs have dropped out, so I'm not going to discuss the

15   White County issue.  But the other one -- and, Your Honor, I

16   just want to make sure that we have a good record.  I have not

17   seen an order dismissing that plaintiff, but my understanding

18   is that the clerk has entered an indication in the docket sheet

19   that Mr. Johnson is no longer part of this case.  Is that

20   correct?

21        THE COURT:  I'm not certain, and I understand that

22   Mr. Linger doesn't represent him, but we will address that

23   issue.  It was my understanding that he was no longer part of

24   the case.  Whether or not that's been documented or not, I

25   can't answer the question.

1            MR. KELLY:  Yes, sir.

2            THE COURT:  I haven't been concerned with his claim

3    any longer, but whether or not there's some housekeeping issues

4    to get an order of dismissal or him removed from the case, I

5    can't answer.

6            MR. KELLY:  Yes, sir.  Then just to make sure that I

7    make it clear, the secretary would ask to have him dismissed

8    both as a matter of law and as a matter of procedure for this

9    reason.  In White County, there was another candidate who filed

10   a petition to run as White County judge, the precise exact

11   issue that Mr. Johnson was claiming, and that candidate did

12   make it on to the ballot, did not get elected but still the

13   showing would be on a facial challenge, there's no possibility

14   of him winning.  Why?  Because there was exactly the same

15   candidate who made it to the ballot.  And Mr. Johnson didn't

16   even try.  Whether he has standing as a voter or as an

17   independent candidate himself, both of them are foreclosed by

18   that.  The estoppel issue is very important to the Secretary

19   for this reason.

20       What is the standard that this court should adjudicate

21   the claim on if in fact it should be a mootness and standing

22   issue alone.  Because we believe it is only an as applied

23   challenge because that is what the plaintiffs told us it was

24   when they prevailed on the motion to dismiss.  It's too late

25   for them to say this is a facial challenge.  And believe me,

1   the extent of the trial we would have if this were a facial

2   challenge is much different than it would be on an as applied

3   challenge.  They were crystal clear in their response that they

4   were making an as applied challenge only.  Why?  In response to

5   case law that we cited showing their complaint was deficient on

6   an as applied challenge -- deficient on a facial challenge.

7   Have to get those both right.

8        There is Eighth Circuit case law that we cited in the

9   brief concerning estoppel.  We believe that that case law

10  precludes the Court from considering a facial challenge at this

11  juncture.  That's a question about how you handle the merits

12  issue.  On the procedural issue whether or not you consider

13  some of the merits, we don't think you should consider the

14  merits issues.  I did hear some refining of the arguments that

15  were made in the brief, so to the extent that I'm not prepared

16  to address some issues, I apologize to the Court.  Your Honor,

17  the case cited, *Citizens United*, I have not read or briefed

18  that case.  I apologize, I did not know it would be cited by

19  the plaintiffs today.  I'm not telling you it should be, I just

20  have not had a chance to read it.  How should the Court resolve

21  the possible dispute between *Meier*, the 1988 case, and

22  *Constitutional Party versus Nelson*?

23       The *Nelson* case obviously a much later case, 2011, but it

24  cites to a 2008 case, a case out of Arkansas, *Pucket v. Hot*

25  *Springs School District*, and I don't remember the exact

1    appellation for the Hot Springs School District, I just

2    remember one of the two, that case says, the 2008 case, *Pucket*,

3    says that the burden of meeting the standing requirement is on

4    the plaintiffs.   The *Nelson* court relied on that in order to

5    say there is no standing, and cited the district court's

6    opinion citing *Pucket v. Hot Springs School District*.   There

7    has been evolution of the Supreme Court's jurisprudence on

8    standing since the 1988 *Meier* case.   That's resolved in part by

9    *Nelson* which correctly predicted what the Supreme Court's

10   standard would be, and also by the case that we cited, the case

11   that we cited from United States Supreme Court, the 2013

12   *Clapper* case.   So the *Clapper* decision essentially resolved or

13   revised the Supreme Court's standard on what was required to

14   meet standing.   *Nelson* got it correct.

15        *Meier*, I believe, is out of date based on what the

16   Supreme Court has done.   It is also important for the Court to

17   understand and remember that notwithstanding what the purported

18   expert said, plaintiffs' purported expert said, he failed to

19   cite the *Langguth* case.   The *Langguth* case is an unpublished

20   Eighth Circuit opinion that involved the Secretary of State and

21   to which we are bound.   So, notwithstanding what the rule used

22   to be that you can't cite to it and I realize that that rule

23   has been revised substantially, we are bound by that, and the

24   *Langguth* case said that the state's support for the reasons to

25   move the deadline were sufficient, they were compelling, and

1    they were necessary.  Those are issues concerning the merits

2    obviously.

3          The point I want to make though is that it is not the

4    case and an expert witness cannot tell the Court what the

5    decision of law should be on the substance of the case.

6    Consequently you should not consider the affidavit of the

7    expert witness of plaintiff for the reason that we discussed

8    and because it violates essentially case law as well as Federal

9    Rule of Evidence 704, and if the information is not admissible

10   in court, it should not be admissible in a summary judgment

11   either.  I agree with the plaintiffs' counsel concerning the

12   new law.  The new law is a temporary legislation concerning the

13   movement.

14         The effect will be essentially for this court's benefit

15   and for the Secretary's benefit that we will not be able to use

16   information from the 2016 election to decide what the outcome

17   would be if this lawsuit were decided in 2018 because the

18   deadlines are simply too different.  I'd be happy to answer any

19   questions you have.  I do want to say that because the election

20   has taken place, none of these candidates did anything other

21   than file the lawsuit, and Mr. Moore attempted to file as a

22   candidate.  They indicated in their responsive pleading that

23   they were making only an as applied challenge to them.

24   Subsequently, the Secretary served a set of requests for

25   admissions on all of them.  And the requests for admissions,

1   their responses, every single one of them either didn't answer.

2   Consequently they were all admitted or they said that they did

3   not even attempt to gather signatures.  They did not attempt to

4   meet other statutory deadlines which they don't challenge.

5        Because of that, we say that they are not entitled to

6   make an as applied challenge because they didn't challenge

7   other aspects of the law or meet the other aspects of the law

8   and really it's much too late to do so now.  When this case

9   came up around this time last year, there were a number of

10  deadlines that occurred requiring plaintiffs and the Secretary

11  to meet them in order to be on the ballot.  We didn't know

12  whether there would be a motion for preliminary injunction,

13  temporary restraining order or something like that.  We saw all

14  those deadlines pass and it became too late to get on the

15  ballot, physically impossible to get on the ballot and have

16  those ballots delivered to overseas and absentee voters in a

17  timely manner.

18       Once the election occurred and they weren't on the ballot

19  and they didn't make a challenge or ask the Court to advance on

20  its docket, we said there's no case left, there's nothing for

21  the Court to do.  Because on the face of the complaint as shown

22  in their responsive pleading to the motion to dismiss, there

23  was no relief to which they're entitled against us because we

24  didn't do, the secretary didn't do anything wrong to them.

25  They simply didn't meet the deadlines they're required to meet.

1  They didn't even tender or attempt to tender by May 1st
2  petition signatures that would have entitled them to make a
3  valid complaint to this court.  Consequently, it appears that
4  while they should not have standing or no longer have standing,
5  whatever standing they had is moot because they were not on the
6  ballot.
7       It's too late for you to put them on the 2014 ballot.
8  They have no additional standing as voters for this reason.
9  They said that it was an as applied challenge and,
10 unfortunately, the question about whether they have standing as
11 voters or candidates is a little bit difficult to talk about
12 without going into the merits.  What I would say at this
13 juncture is they should not be entitled to any different
14 standing as voters for this reason.  You have to look at the
15 totality of the circumstances including the totality of
16 Arkansas law concerning elections.  Arkansas law is
17 substantially different than all of the case law cited to which
18 plaintiffs' expert cites for this reason.
19      The ease of access for independent candidates is
20 dramatically better.  The method of being on the ballot is much
21 easier including for write-in candidates.  Voters who might
22 have had standing to challenge access for write-in candidates
23 or for independent candidates really lose that.  They've lost
24 that over time because access for independent -- access for
25 write-in candidates is much easier, all you have to do is file

1   with the Secretary of State and then notify the county clerks
2   and you're on the ballot.  Voters no longer have a complaint
3   that they can't vote for the candidate of their choice, because
4   they can.  And it's very easy to get on an Arkansas ballot.
5   I'll be happy to answer any questions you have and I will save
6   the rest of my argument for the merits.
7             THE COURT:  All right.  Thank you, Mr. Kelly.  Last
8   word.
9             MR. LINGER:  Yes, just brief reply only on the
10  mootness.  Although as a house cleaning matter, Your Honor,
11  Mr. Johnson, all counsel filed a joint stipulation of dismissal
12  as to Mr. Johnson and we actually asked the clerk and they said
13  they had already entered something removing him.
14            THE COURT:  Thank you for clearing that up.
15            MR. LINGER:  All right.  First off, counsel talks
16  about the other, the petitioners and things like that.  The
17  fact that there was one somewhere in White County that was
18  successful consistently whether you go to the U.S. Supreme
19  Court's decision in *Anderson v. Celebrezze*, other decisions,
20  they have found that just because someone else has been able to
21  comply with the law, that doesn't mean the law is
22  constitutional, so I don't think that is an argument in and of
23  itself that supports the law.
24       Then, the idea that they didn't actually petition this
25  year, of course, the evidence by affidavit is Mr. Moore had

1    previously in 2012 when the deadline was a couple months later

2    had successfully petitioned, but the *Storer v. Brown* case has

3    been mentioned many times, and I think as we corrected the

4    Secretary of State in our brief, the important thing there was

5    the U.S. Supreme Court reversed the lower court in regard to

6    Hall and Tyner, the candidates who were actually long-time

7    members of the communist party but were running as

8    independents, because they found that they had standing because

9    they were not disqualified, because obviously they hadn't voted

10   in the democratic party primary in California and they didn't

11   have any party registration to disaffiliate as the other ones

12   that were found not to have standing, but the Court

13   specifically found they had not bothered to petition at all.

14   That didn't bother the Supreme Court at all about them having

15   standing after the election, a couple years after the election

16   in 1974 and even though they never petitioned, I think that

17   speaks volume about what the Supreme Court thinks in that

18   regard.

19           THE COURT:  Let me -- did you finish that thought?

20           MR. LINGER:  Yes.

21           THE COURT:  Let me ask you this.  If your client or

22   clients do prevail on the standing issue as voters as opposed

23   to candidates, how can a voter make an as applied challenge

24   since the statute is not being applied to them as a candidate?

25   Aren't you limited in a voter standing situation to a facial

1    challenge?

2             MR. LINGER:  Well, I think it's depending on if

3    they -- obviously a voter, a candidate also probably wants to

4    vote for himself.

5             THE COURT:  I understand there's two different

6    analysis.  One, making standing as a candidate, which you can

7    either do or don't, but I think you are arguing that even if we

8    lose as a candidate, we might obtain standing as a voter under

9    this line of cases.  If that's the case as a voter, none of

10   these particular statutes are applied to them as candidates.

11   So wouldn't a voter be limited to a facial challenge?

12            MR. LINGER:  I don't think so for this.  I would

13   argue it this way, because they would still have it apply to

14   them as to their right to vote for the candidate of their

15   choice.  It would have an impact on them.  And as Your Honor

16   knows both the Eighth Circuit in *McLain v. Meier*, and in the

17   subsequent cases, and the U.S. Supreme Court has held what is

18   more important is not the candidate's right to be a candidate,

19   it's the voter's right to cast his vote effectively.

20            THE COURT:  But that's for standing, that doesn't

21   answer the question whether or not these statutes are applied

22   to the voter.  I mean, as I understand it, the facial challenge

23   means that it's just unconstitutional on its face versus

24   applied to a particular candidate.  And if you don't make

25   standing as a candidate, I don't see how you can step into the

1  shoes as a voter into the candidate in an applied analysis.

2  And you may not know the answer to that.  I know what you're

3  saying is it's the right of the voter, but that has to do with

4  standing, not what the particular right is, whether it's as

5  applied or facial.

6           MR. LINGER:  I agree with Judge Stevens that it's

7  not something that you can always tell.  It's not something

8  that is definite, and that's something that has to be decided

9  by the Court.

10          THE COURT:  I understand, but correct me if I'm

11  wrong, but the case where he decided he couldn't tell, it was a

12  candidate, not a voter standing where he could have done both.

13          MR. LINGER:  That's correct.

14          THE COURT:  A candidate can do as applied or facial.

15  I don't know that I've seen a case where a voter has tried to

16  bring an as applied challenge when it applies to somebody else.

17  I know you're trying to claim that we're both a candidate and a

18  voter, but I could foresee a situation where a candidate didn't

19  have standing as a candidate but may as a voter under these

20  cases, and if that's the case and they make it in as a voter,

21  they may not have the options that a candidate might.

22          MR. LINGER:  That's exactly what the *McLain v. Meier*

23  case in '88 when the Eighth Circuit reversed the trial judge

24  who didn't find standing, they said yes, the plaintiff does not

25  have standing as a candidate, but the plaintiff does have

1    standing as a voter.

2            THE COURT:  Was that a facial or an as applied case?

3            MR. LINGER:  Well, as a lawyer, I could argue both,

4    and the reason is because --

5            THE COURT:  How does it read to the layperson?

6            MR. LINGER:  When you look at the decision, they

7    talk about when the primary is, when are the deadlines for both

8    a minor party and for major party and for independent

9    candidates, they talk when the general election is.  That is

10   something where they don't just look at the statute, and I

11   don't think we're doing that here.  We're not just looking at

12   the statute.  So I don't know.  I don't want to say that it's

13   just semantics, but normally, I'm used to a defense where

14   someone has made a challenge that is facial and they're

15   objecting because we're trying to make it as applied.

16   Generally I think we would agree that if a law is facially

17   unconstitutional, it's always going to be unconstitutional as

18   applied but not necessarily the other way around.  But what is

19   the distinction in this case, and I would say I don't really

20   see any and we have been consistent.

21           And that's where I want to bring up something else that

22   was brought up by Mr. Kelly's argument here.  He has argued

23   somehow that when we responded to the motion to dismiss that we

24   said in our pleadings that this is only an as applied

25   challenge.  Well, I mean, I looked at the Court's order on

1   that.  I looked at our brief on that and I don't see that in

2   there.  And I got my reading glasses with me.  I looked at that

3   earlier when I saw that.  And I just don't see where he's

4   coming up with that.  I think Your Honor will remember that in

5   our original brief on the motion to dismiss, on our briefs in

6   support and against motions for summary judgment, we have

7   consistently said that we believe that there's precedential

8   ruling that there cannot be a deadline for independent

9   candidates in Arkansas before, many months before the primaries

10  or the major parties.

11       And particularly as I think it was said in Lendall IV by

12  one of your brother judges on this court, that the Court was

13  bound, the judge even there said if it was up to him on a new

14  case, he wouldn't rule it was unconstitutional, but he thought

15  he was bound by that.  Is that a facial challenge here?  I

16  think facially the law is unconstitutional, and I think we've

17  been consistent on that and that's why I do want the Court --

18  because this was cited by them.  It was only cited by a

19  sentence or so.  But in the decision in *New Hampshire v. Maine*,

20  if you read about the next paragraph after what was cited in

21  the Secretary of State's brief, this is on page -- *New

22  Hampshire v. Maine* on pages 750 and 751 by the U.S. Supreme

23  Court.  Several factors typically inform the decision whether

24  to apply the doctrine of judicial estoppel in a particular

25  case.  First a party's later position must be clearly

1   inconsistent with its earlier position.

2       Can anybody say that our position in the motion to

3   dismiss was clearly inconsistent?  I would say it's pretty

4   clearly consistent now, then, and in between.  Secondly, the

5   U.S. Supreme Court said in *New Hampshire v. Maine*, the second

6   consideration is courts regularly inquire whether the party has

7   succeeded in persuading a court to accept that party's earlier

8   position so that judicial acceptance of an inconsistent

9   position in a later proceeding would create the perception that

10  either the first or the second court was misled.  Now, of

11  course, we don't have a first or second court here.  We do have

12  an earlier motion, but once again, there's nothing in the

13  Court's words clearly inconsistent.

14      And then it says absent success in a prior proceeding, a

15  party's later inconsistent position introduces no risk of

16  inconsistent court determinations.  I guess what they're saying

17  there, if I might interpret it, is we were successful in

18  defeating the motion to dismiss so that somehow our

19  inconsistency, which I say doesn't exist, had some effect.  And

20  then the third part of the ruling in *New Hampshire v. Maine*,

21  the U.S. Supreme Court says the third consideration is where

22  the parties seeking to assert an inconsistent position would

23  derive an unfair advantage or impose unfair detriment on

24  opposing party if not estopped.

25      I just don't see test one, two, or three where any of it

1   applies here.  I don't think it has -- I think we've

2   consistently done this, and whether you look at it as an as

3   applied challenge or as one that is facially a challenge, I

4   think the law is unconstitutional either way, we have standing

5   as a future candidate and has filed an affidavit.  Unlike in

6   the *Nelson* decision of the Eighth Circuit, there is an

7   affidavit on that and the voters that have an interest in it

8   that can be decided, the fact that they didn't choose to

9   petition with as much earlier harder deadline doesn't matter as

10  the U.S. Supreme Court said in *Storer v. Brown* in deciding in

11  favor and sending the case back on standing for *Hall* and Tyner,

12  or in the other decisions like in *Anderson v. Celebrezze* where

13  they had a decision even though five other candidates had

14  succeeded in complying with the law, that doesn't matter at

15  all.

16       Then that brings up another thing.  This is my final

17  point on this.  Counsel says that the Arkansas law for

18  independent candidates is really better for independents.  It's

19  so better that no independent in 2014 was on the Arkansas

20  ballot for statewide office and only one candidate for the

21  legislature.  That speaks volumes.  The U.S. Supreme Court has

22  said that looking back in *Storer v. Brown*, the past history is

23  a guide to the constitutionality of the law if the candidates

24  have only occasionally done it or rarely or if they

25  consistently do it.  All the independent candidates they have

1    on there are for non-partisan offices.  They have all these
2    circuit judges and district judges and Supreme Court justices
3    on the ballot in Arkansas last year on non-partisan.
4        Your Honor knows as a former state judge when you file
5    for judge, your election is the primary.  The primary election
6    is where you're on.  The only time you end up on the November
7    ballot is if you don't get a majority of the vote.  The
8    nonpartisan races are these little mayor races where there are
9    miniscule requirements for signature requirements.  They're not
10   applicable.  They're not the same thing.  There is standing and
11   there is a non-moot question that this court can decide.
12           THE COURT:  What is your understanding of the
13   signature requirements for circuit judge?  Do you think your
14   clients had to have more signatures than a circuit judge in
15   Pulaski County?
16           MR. LINGER:  As I understand it, first off, I
17   understand you can run for judge just by paying a filing fee.
18           THE COURT:  You can.  But you had indicated
19   miniscule petition requirements.  Maybe I put words in your
20   mouth, but that's what I understood.  And it's my understanding
21   that -- well, we're getting into the merits again, but I'm not
22   certain that I have anything before me other than past
23   knowledge of the record to make that decision, whether or not
24   these other elections that you referred to aren't comparable to
25   the filing the petition requirements of your clients.

1          MR. LINGER:  The Arkansas statute on the judges,

2     whether from the Supreme Court down to circuit or district is

3     7-10-102.  And, of course, it's similar for a statewide office.

4     They basically, you can get like 3 percent or I think it's

5     capped at 10,000 and basically nobody ever uses the 3 percent

6     because the 10,000 is less.  I think for the district judges

7     it's also 3 percent of the district which I imagine the

8     districts and circuits vary in size.  They're not all the same.

9     But then you also have a lower figure, I think it's 2,000 or

10    something like that.  But you also have a third alternative

11    where you can just pay money and get on there too.

12         But when I was using minuscule, maybe I didn't speak that

13    artfully, I was talking about the little mayor and alderman

14    races and things like that where they have little cities where

15    there was the exhibit page after exhibit page of all these

16    little non-partisan elections for mayor of these small Arkansas

17    towns which are all non-partisan, but the final point, Your

18    Honor, that you brought up, the reason there is a really big

19    difference is not just that you have these alternatives for

20    judge, it's the fact that the judicial elections are at the

21    primary.  The date when you file if it's in January or

22    February, whatever, you're having a primary, at least it used

23    to be, you're having a primary in May, so you're not like an

24    independent having to turn in petitions to get on the ballot in

25    November.  So that is the distinction there, and I'm just

1   saying I think it's comparing apples and oranges when they

2   bring that up on these non-partisan races.  Thank you.

3               THE COURT:  I probably shouldn't have let you sit

4   down.  I'm going to move y'all into the merits argument.

5   That's why I wasted the energy of letting you sit down and move

6   back up.  If you want to move into that without perhaps

7   replowing some of the ground on the merits we made in the

8   earlier arguments, I'll let you move on from there.  I'm going

9   to reserve my ruling on the mootness and the standing and

10  likely reserve my ruling on the merits once I've heard you

11  argue, and then I'll get out an order pretty quickly, but I

12  want to go ahead and hear your comments on the merits at this

13  time.

14              MR. LINGER:  I look at the justifications first

15  because when election law impacts fundamental rights as it does

16  here, because nothing is more important than the effectiveness

17  of voters to have their choices heard and expressed, when it

18  impacts that, we look to the state to have some sort of

19  compelling state interest.  Once again, in *McLain v. Meier*,

20  probably the series of leading decisions in the Eighth Circuit,

21  one of the reasons the district judge was reversed, because he

22  just used a rational basis.  Now, that was something that just

23  can't be any reason, it has to be a compelling interest, and

24  the U.S. Supreme Court in *Anderson v. Celebrezze* has set out

25  once again a three prong test that they look to in deciding and

1    judging these laws.  They don't think it's something that's

2    easy the Court must look at particularly, so I pay attention

3    when I listen to the Secretary of State give the reasons.

4        And of course, part of it is they're doing the

5    independents a favor and they're also doing themselves a favor.

6    Well, we see the results looking at this as an as applied from

7    at least the information that was brought in in the summary

8    judgment motions both for and against the summary judgment

9    motions by the Secretary of State that there simply are not

10   independent candidates meeting this petition deadline when it

11   was in late May.

12       THE COURT:  Do I have the facts wrong?  Didn't an

13   independent qualify for the very election that you're suing

14   over?

15       MR. LINGER:  No, not on the lieutenant governor.

16       THE COURT:  I'm talking about maybe not your

17   particular deal, but I'm talking about, and I apologize that I

18   don't have a finer point on this, but it was my understanding

19   that there was one if not two candidates that complied with the

20   filing requirements in the '14 election for the very position

21   that one of these plaintiffs was running for.

22       MR. LINGER:  I think it was Mr. Johnson, the

23   plaintiff who was dismissed.  That was, I believe, a county

24   judge.  It was much -- there was not many signatures required

25   for that, but the fact that someone who planned in advance

1    was -- I think as we discussed in the mootness and standing

2    issue, that in and of itself doesn't mean the law's

3    constitutional.

4              THE COURT:  You're arguing that nobody can make

5    this, the mere fact that no independent has run is evidence

6    that this is oppressive.  But I guess it seems to me that

7    you're ignoring the fact that in a very race on a plaintiff

8    that's no longer part of this lawsuit, they did.

9              MR. LINGER:  As I'm saying, Your Honor, I'm saying

10   look at the total picture.  How many other independents were

11   there?  I'm just saying isn't it odd that we don't have -- we

12   had -- if you look at the exhibit by the Secretary of State,

13   you say statewide offices, congressional races, state

14   legislature races, there are many, many libertarians running, I

15   saw the libertarians were quite represented.

16             THE COURT:  How do I know that's because of the

17   petition requirement as opposed to any other reason someone

18   would decide not to subject themselves to our political

19   process?

20             MR. LINGER:  It's always, there's a question why do

21   people do something or don't do it.  But the U.S. Supreme Court

22   has said that looking at the record, you can learn something.

23   In fact, look at Mr. Moore, one of our plaintiffs here.  When

24   the petition deadline was a couple months later, he was able to

25   petition and get on the ballot.  After that, no statewide

1    independents and only one independent in the legislature.  That

2    says something that the Supreme Court has recognized can be

3    considered.  It is a factor and I would suggest that most

4    people looking at that would say this law has had an adverse

5    effect on independent candidates.  Now, also getting back to

6    the basis because I think it's very important to say why is the

7    state saying this deadline of March 1st or it was March 3rd

8    because of a weekend was necessary for the state.  Well, one of

9    the reasons was they used the reason or excuse that they had to

10   check a lot of other petitions.

11       These petitions were the judicial candidates or the mayor

12   candidates.  Well, of course, if they had a later date, they

13   wouldn't have to check the independent candidates for statewide

14   office or the legislature at the same time.  Remember,

15   independent candidates go straight to the November ballot.

16   What is the reason that they should have a deadline so far

17   ahead of not only the general election, but also the primary

18   election or the primary runoff election if it is necessary.

19   They come up, of course, they say, well, how about early voting

20   or how about absentee voting or how about the federal

21   legislation where we have to get ballots out to our military

22   personnel or our residents who are living in foreign countries,

23   but what is the date?  What do they say they have to have that

24   out on?  They don't have to have that out until like August or

25   September.

1        It's not necessary to have ballots ready.  They'll know

2   who the independents are, if any, and there aren't very many,

3   they've certainly dealt with it that way.  They'll know way

4   before they'll know who the republicans and democrats have

5   nominated or if there's a runoff election later on or if

6   there's an independent candidate for president who has a

7   deadline like on August 21st, they can't finalize the ballot

8   either for November, early voting, absentee voting, or to send

9   it overseas to the troops or to the foreign residents until

10  then.  There is no reason, there is no necessity that the state

11  has to have an early deadline.  That's why this court through

12  other judges has held deadlines before April, as late as April,

13  unconstitutional.  Nothing has changed there.

14       If this were a case about minor parties or major parties

15  and the deadline, there would be a reason why they should be

16  before the independent candidates.  There is no reason to have

17  a deadline for independent candidates before the major parties

18  select their nominees.  They've got things stood on their head.

19  Remember, in *McLain v. Meier*, at that time, when that was

20  challenged where they were forcing people to be independent

21  candidates because you could file 40 days before the election

22  and get on the ballot as an independent candidate, but for a

23  party candidate, it had to be by June 1st.  And the Court said

24  you can't force someone to be an independent candidate when

25  they can be a party candidate, but the whole point was look

1   when the deadline was for the independent candidates.  It might

2   be now that the state could argue that we shouldn't have a

3   deadline just 40 days before the November election because we

4   have to get the overseas ballots out to the troops or to the

5   foreign residents or we're having early voting for a month or

6   so.  But there could be 60 days or 70 days, but certainly not

7   this.

8          They're discriminating on its face and as applied against

9   the independent candidates against the voters who want to

10  support, and the Arkansas people are not getting an opportunity

11  on this, and I think it would be quite a stretch to think that

12  the reason there was only one candidate who was an independent

13  for the legislature or for any of the state offices or the U.S.

14  senate or the house, was only one, was for any reason other

15  than the fact than they changed the law, they changed the law

16  and they made it unnecessarily this affects fundamental rights

17  and there is no reason that they make, no argument they make,

18  and as our expert, Mr. Winger, pointed out in the cases when

19  they try to do this stuff, almost always the courts have found

20  it unconstitutional.

21         And whether you think that's a legal argument and that's

22  going beyond what an expert normally does, he takes up

23  factually because he also gives the history of the law and

24  where they have changed the law in Arkansas.  The problem here

25  is the legislature of this state has a terrible institutional

1   memory.  This has happened over and over.  Their law is
2   declared unconstitutional, they change the law, and then they
3   go back, they make it unconstitutional.
4           THE COURT:  Slow down a little bit for my court
5   reporter.
6           MR. LINGER:  I'm sorry.
7           THE COURT:  You're fine, go ahead.
8           MR. LINGER:  Look what they've done for this year.
9   Talk about equal protection violation.  Now they've got
10  something in November first.  It's just, like, where will they
11  stop.  It's usually, as the U.S. Supreme Court said, the
12  problem is the legislature's being composed of members of the
13  major parties, rarely stop to think about the effect laws will
14  have on minor parties and on independent candidates.  That's
15  not their natural constituent.  I don't know if they did it
16  deliberately or they just didn't realize what they were going
17  to do, but we see the effect in 2014, we'll see the effect in
18  2018, and for 2016, it's even going to be worse, so I think
19  we're asking the Court to declare the law unconstitutional
20  following precedent and enjoin its enforcement.
21          The Court does not have to tell the legislature what the
22  law should be, there is time to correct it, and the legislature
23  I think should worry about new lawsuits for the law for 2016.
24  There are a lot of problems there and they've only made the
25  situation worse.  The reason the plaintiffs in this case did

1    not ask for a preliminary injunction is because they knew they

2    could not get the relief of being put on the ballot just as

3    we've had in these other cases, but as the Supreme Court in

4    *Storer* or *Anderson* in many cases or *McLain v. Meier*, even after

5    the election's over, they're still standing, the case isn't

6    moot, and I think it's clear this law is unconstitutional.

7              THE COURT:  Thank you, Mr. Linger.

8              MR. KELLY:  Your Honor, may it please the Court.

9    Just quickly on the previous argument, we cited to the Court at

10   pages 7 and 8 of their response brief to the motion to dismiss,

11   document number 8.  I just want to make sure that it's clear we

12   did give a pinpoint citation for that.  I don't have that with

13   me today, but I want to make sure that you know we thought we

14   were telling the Court the truth having read their brief.

15             THE COURT:  Okay.

16             MR. KELLY:  Concerning the merits, the Secretary of

17   State wants to be crystal clear, we don't believe you should

18   consider the constitutional question because you should dismiss

19   this case on a nonconstitutional basis as precedent requires

20   you to do if that avenue is available for you.  The law is not

21   unconstitutional on its face.  We only make the response

22   argument out of necessity, not because we believe the Court

23   should decide the issue.  You've asked us to come up and argue.

24   We've given the justifications we gave in footnote one of the

25   January brief and multiple times including by affidavit in the

1    response brief to their motion for summary judgment,

2    Mr. Hammons' affidavit.

3         The relief unfortunately is going to be a little bit

4    different for this reason.  If you consider this potentially

5    unconstitutional and you have to have a decision on the merits

6    of the constitutionality, most likely you would have to go to

7    trial if you don't believe the affidavit that's uncontested

8    submitted by the Secretary of State.  Election administration

9    is a very difficult issue.

10             THE COURT:  Back up and explain that to me.  Why

11   would I have to have a trial on that issue if I decided for

12   argument sake that the reason y'all gave was insufficient?

13             MR. KELLY:  I'll have to talk about things that are

14   not directly in the brief but are alluded to by Mr. Hammons in

15   his affidavit.

16             THE COURT:  I'm just trying to determine why it

17   wouldn't be a question of law and it would be a question of

18   fact that your stated reasons are either constitutional and

19   valid or not.

20             MR. KELLY:  If you don't believe the reasons given,

21   again, uncontested reasons given by Mr. Hammons in his

22   affidavit.

23             THE COURT:  I would take the affidavit as true.

24   Well, I would take the affidavit for purposes of a cross motion

25   for summary judgment as true because y'all haven't disputed

1   either side, true or false.  I'm just trying to figure out if I

2   believe that is, in fact, your reason and it's not pre-textual,

3   why do I not decide as a matter of law whether it's a

4   sufficient constitutional reason to move the date.  I guess

5   that's my analysis is that assuming I believe that's your real

6   reason, without having to make that factual determination,

7   can't I determine as a matter of law whether or not that

8   reason, if I believe it to be true and the state's reason they

9   do it, is that sufficient reason to move the dates?

10           MR. KELLY:  You should be able to, but the

11  plaintiffs' argument just a minute ago was that the state did

12  not give you sufficient reasons to do so.  I believe that the

13  state did give you sufficient reasons.  Those reasons are

14  supported directly by the Eighth Circuit's decision in *Langguth*

15  *v. McKuen*.

16           THE COURT:  Let me put a fine pin on what you two

17  may be saying.  Are you arguing that there's insufficient

18  evidence for me to find as a matter of law or are you saying

19  that the reasons you have given are insufficient to meet

20  constitutional muster?  I see that to be different standards.

21  Basically, one, you don't have enough information to make the

22  decision versus the reason leads to a conclusion.

23           MR. KELLY:  The Secretary believes that the

24  affidavits submitted by Mr. Hammons is sufficient on its face

25  and is the correct justification and is constitutional

 1    justification for moving the deadline, more than sufficient

 2    constitutional basis to move the deadline, and undisputably

 3    there are correct reasons to move the deadline.

 4              THE COURT:  I understand, and I was more getting

 5    back to what more do I need to decide this case.  And are you

 6    taking the position that there are disputed facts in question

 7    that need to be resolved before I can decide this case on the

 8    merits if it gets that far?  That's my concern, is that we were

 9    here on cross motions for summary judgment and the language

10    that I hear is that if the state loses on mootness and

11    standing, then we have to have a trial because you don't have

12    enough information to decide the merits on the case.  That's

13    kind of what I heard.

14              MR. KELLY:  I don't want to give you an erroneous

15    impression.  Secretary believes that plaintiffs' expert

16    affidavit is insufficient as a matter of law, that the factual

17    basis is not inside the affidavit, that he doesn't say based on

18    his personal knowledge about what happened in the state of

19    Arkansas in the 2013 session when this deadline was moved.

20              THE COURT:  I understand your argument on what I

21    should consider and not consider on the motion for summary

22    judgment, and I've got a handle on what I should parse out,

23    consider and not consider.  My question to you is assuming for

24    argument sake that I decide this case on the merits, do you

25    believe that I have a sufficient record to decide this case

1   without a further trial?

2          MR. KELLY:  That question depends on how you

3   interpret the conflict between the two affidavits because the

4   plaintiffs' expert witness affidavit says the state did not

5   have sufficient justification and these are the rationale.

6   Mr. Hammons' affidavit said the state did have sufficient

7   justification and these are the rationale.

8          THE COURT:  I understand that there's two affidavits

9   suggesting how I decide this case, but what I'm talking about

10  is is there a question of fact that is unresolved in this case

11  that would prevent me from deciding this case on the law.

12         MR. KELLY:  If you take Mr. Hammons' affidavit on

13  its face, there is not.  There is not a disputed question of

14  fact, if you take Mr. Hammons' affidavit on its face.

15         THE COURT:  Can I take Mr. Hammons' affidavit on its

16  face as well as plaintiffs' affidavit on its face and decide

17  the case based on the record?  I mean, my question to you is,

18  do you or do you not concede that I can decide this case on the

19  record in summary judgment on the merits or do we need further

20  testimony and hearings and things to establish questions of

21  fact?  And if so, what are those?  Because I know y'all came

22  prepared to put on some experts and things that I didn't think

23  were necessary to tell me what the law was because I thought it

24  was a question of law.  And that may have been my fault for

25  slowing you down on that because I didn't understand there to

1    be any disputed questions of fact.

2        Am I wrong?  And you feel that there are questions of

3    fact as opposed to one person saying this is a sufficient

4    reason and another person saying no, it's not.  I understand

5    that that's determinative of my question, but I think it's

6    either going to be sufficient and a matter of law or not, not a

7    question of fact.

8            MR. KELLY:  Mr. Hammond correctly set forth the

9    factual and legal basis for moving the deadline to improve

10   election administration.

11           THE COURT:  And there's no evidence to the contrary

12   that that was the stated reason of the government.  I guess

13   that would be the question going whether or not I had to say,

14   well, that's what they say but if you look at this other

15   paperwork, it shows a different reason.  I guess that's what

16   I'm trying to get at is is there any real dispute that that is

17   the articulated reason of the government for moving this

18   deadline.

19           MR. KELLY:  In my mind there's no dispute that

20   there's no articulated reason for the government.

21           THE COURT:  I understand.  The second question is

22   one of law and the first one is one of fact.  Mr. Linger, I

23   want to make sure we're not fighting over an issue that's not

24   an issue.  It was my understanding that you just thought their

25   articulated reason wasn't a sufficient constitutional reason,

1  as opposed to there's a dispute over what their reason is.  Is

2  that correct?

3            MR. LINGER:  Yes, Your Honor, because I think you

4  have to look at a compelling state reason which the Supreme

5  Court says is necessary, not just a rational basis, any old

6  reason doesn't cut it.

7            THE COURT:  Do you agree that at this point in the

8  case it's a question of law and not of fact?

9            MR. LINGER:  Yes, Your Honor.

10           THE COURT:  Okay.  Does that help you, Mr. Kelly?

11           MR. KELLY:  Yes, Your Honor.

12           THE COURT:  Okay.  I'm relieved.

13           MR. KELLY:  Let me flesh out the rational basis or,

14  I'm sorry, the stated basis of the state's reason.  Election

15  administration is exceedingly difficult in even numbered years

16  from personal experience.  Litigation reported cases will

17  support this entirely.  The secretary is directly responsible

18  for petition processing of all the statewide petitions as well

19  as the measures, ballot titles, questions, etc.  The deadline

20  for those submissions is constitutionally submitted in the

21  state of Arkansas.  There's no avoiding that.  And yet the

22  constitution gives, I'm just going to elaborate a little bit.

23  That's not in the brief and I apologize.

24           The constitution says that the Secretary shall have 30

25  days to evaluate petition signatures on measures,

1    constitutional amendments.  But UOCAVA and the MOVE Act say we
2    don't, for this reason.  There's 30 days in which the
3    petitioners can come back and get more signatures based on a
4    measure or an act.  Then the secretary is allowed by
5    constitution to have 30 days more to review.  But if you look
6    at the election calendar, the deadline for certification of the
7    candidates under the MOVE Act and UOCAVA now is something like
8    August 24th of an even numbered year.  If you work backwards to
9    July 7th or 8th, July 4th I believe last year, if you work
10   backwards, the Secretary really only has a week to ten days to
11   evaluate every single petition that comes in, many of them 50
12   or 60 or 70,000 signatures.  It becomes nearly impossible,
13   which it was in 2012.

14        The Secretary literally did not review one petition,
15   petitioned the Supreme Court and said, we believe this is
16   facially insufficient and fortunately prevailed.  But we have,
17   for every petition that comes in, there's a directly filed case
18   in the Arkansas Supreme Court.  It's virtually impossible to do
19   candidate petitions at the same time, but because there isn't
20   enough people space, computer processing time to get it done.
21   It is an election administration issue, so you find out what
22   Mr. Hammons said and you realize.  If you go back and look at
23   what it takes to meet all the other deadlines under UOCAVA and
24   MOVE, every deadline was moved back 45 days in the entire
25   election calendar.

1    It's a surprise to everyone who considers it, unless

2 you've worked in election administration for a long time.  The

3 federal government sued the state of New York for having a

4 primary in September, said no, you have to move it earlier.  So

5 the federal government says, you must move all of your

6 deadlines earlier.  How many days earlier, 45 days earlier than

7 it ever was before.  Those are significant reasons under

8 *Vadnais*, a 2014 Eighth Circuit case, for the state to move its

9 deadlines.  It is not for the purpose set forth in the

10 unsupported affidavit of the expert witness of the plaintiffs.

11 It was because the election calendar is so compressed under

12 UOCAVA and MOVE, it does significantly improve election

13 administration, it helps for timely review, remembering that

14 the Secretary immediately goes into absentee ballot delivery

15 which the Secretary of State is specifically required to

16 approve and to make sure is completed.

17    Believe me, the Department of Justice calls us the day

18 before, the day of, and the day after, did you get all of your

19 military ballots delivered in a timely manner, because if you

20 didn't, we're going to sue you.  The Department of Justice will

21 sue you.  Because they consider one voter, one, missing one

22 military voter is a constitutional violation and the Department

23 of Justice will get involved and they have done so in 2010,

24 '12, and '14.  The earlier deadline does allow time for

25 litigation as well.  It's unusual to see litigation over

1    contests at the state level, but it does happen on occasion.

2    And the other reasons set forth in Mr. Hammons' affidavit all

3    play into the overall scheme of how election law works in

4    Arkansas.

5         We did not submit a copy of the 2014 election calendar,

6    nor the 2016 for that matter.  But the election calendar

7    literally, it's a Gantt chart of what deadlines have to be met

8    and when.  It's a timeline of all the deadlines the clerks have

9    to meet and the secretary have to meet.  It's 53 pages, all of

10   which has to be done in a single year.  Many times reviewing

11   the ballot and getting names on the ballot is a very tight

12   deadline difficult to meet even in the best of circumstances.

13   In 2014, in 2012, we saw specifically what happens in White

14   County if the clerk gets a name wrong.  It results in a lawsuit

15   because somebody says I'm not correctly named on the ballot.

16   It is difficult to get it right in all the machinery, to do all

17   the testing that's required and to meet all the other

18   deadlines.  All those deadlines, the federal deadlines, the

19   machine deadlines, all of those election administration issues

20   have changed dramatically since the '70s and '80s,

21   dramatically.

22        That's why I believe *Meier* was wrongly decided based on

23   what the law currently is on standing and mootness.

24   Irrespective of that, election administration does require

25   earlier deadlines.  One candidate did meet it this past time.

1   We believe that is sufficient for the Court to know this is not

2   unconstitutional on its face.  Unfortunately for all of us, we

3   will not be able to have the same analysis using the 2016

4   election because there's a temporary change in the law which,

5   Your Honor, is not before the Court and I ask the Court not to

6   consider it as a matter of whether the legislature does right

7   or wrong.  There are different issues in that law.

8            THE COURT:  It's nice to know y'all will be back.

9            MR. KELLY:  Your Honor, we're asking you not to rule

10  concerning the 2018 election because that issue is not ripe for

11  adjudication.  It is much too early for this court to say that

12  this is wrong, too many things can happen in between now and

13  then.  We know, you and I and plaintiffs' attorney, we all know

14  that how the Supreme Court views standing, how the Supreme

15  Court views some of the other things, access to the ballot, all

16  of those are somewhat in a state of flux, and I want to make

17  sure you understand, it's the defendant's position that the

18  *Celebrezze* case out of the Supreme Court really does not apply

19  to this case because that was a presidential challenge in Ohio.

20  That case, I don't want to say that it's limited to its facts,

21  but it has been addressed by almost every state as a separate

22  issue and Arkansas has a separate statute with a different

23  standard and a different timeline for presidential elections

24  for this reason.

25            All of us know in presidential politics you have the

1 primaries which stretch all the way to June in some cases and

2 then you have the convention, and the nominee is not decided

3 until the convention.  Those conventions happen in usually

4 August and September.  Don't know if there's going to be some

5 game playing moving them back earlier this year.  That's up to

6 the parties.  In Arkansas, the law allows a presidential

7 candidate to get on the ballot pretty close to that convention

8 timeline because there's knowledge understood in election

9 administration that presidential candidates should be treated

10 specially, and in Arkansas they are.  So this case doesn't

11 concern that at all, which is why we believe the case generally

12 is limited to its facts.  There has not been an Eighth Circuit

13 case that says so.  There has not been a United States Supreme

14 Court case that says so.

15   However, if you look at the development of the law since

16 1983 when that case was decided, you look at *Nelson* and the

17 *Constitution Party*, the overwhelming, unstated opinion is that

18 *Anderson v. Celebrezze* doesn't specifically apply because the

19 deadlines are so different and the method of getting on the

20 ballot is so different.  A candidate for a statewide office is

21 different than a presidential candidate running in a national

22 campaign.  I want to make sure I make the argument that we

23 would distinguish that case even though I realize that would be

24 a new basis for proceeding.

25   Coming back to a underlying factual issue in this case,

1    it's undisputed that Mr. Moore in 2012 got on the ballot
2    because he tried to get on the ballot.  In 2014, his affidavit
3    and the responses to requests for admissions in this case, he
4    did not even attempt to gather signatures.  He made no attempt
5    whatsoever.  He says that it's too difficult in the complaint.
6    They say it's too difficult to gather signatures.  We showed
7    multiple reasons why that's not true and multiple other
8    candidates who did gather petition signatures during that time,
9    including one successful state candidate for state senate
10   office out of Garland and Saline County.  He's not a good
11   candidate and he would not be able to prevail in a jury trial
12   because he didn't even try to get on the ballot.
13        If he's making a constitutional challenge, he's limited
14   to his challenge as a voter, and his challenge as a voter on an
15   as applied challenge, which is what we believe we have here, is
16   limited and we don't believe that he has made a sufficient
17   showing that this court should rule that the law on its face is
18   unconstitutional.  I'd be happy to answer any other questions
19   you have, Your Honor.
20            THE COURT:  I don't have any right now.
21            MR. KELLY:  I would like to close with we believe
22   the case should be dismissed.  If you rule on the merits, we
23   believe that we are entitled to summary judgment based on
24   *Langguth v. McKuen* as well as the other case law cited therein
25   and Mr. Hammons' undisputed affidavit.  Thank you, Your Honor,

1    for your consideration, and thank the law clerks for all their

2    work.

3              THE COURT:  Karen, for your record, there's two

4    acronyms that Mr. Kelly used, M-O-V-E and U-O-C-A-V-A.  Is that

5    correct?

6              MR. KELLY:  I apologize for using shorthand.

7              THE COURT:  It's fine as long as we know what it is.

8    I'll give you the last word, Mr. Linger.  You don't have to

9    take it, but it's offered.

10             MR. LINGER:  As a lawyer, you know what that does.

11             THE COURT:  I know, no one's ever turned down my

12   opportunity to speak again.

13             MR. LINGER:  We'd be quite happy if we had a

14   situation in New York where they had a September primary.  I

15   don't know what that has to do with this case where the federal

16   government wanted it moved 45 days earlier.  We're not even

17   anywhere close to that in Arkansas.  The point of the matter is

18   that just makes our point that these acts for foreign voters

19   and military personnel early voting, none of that requires to

20   have a deadline the first of March for independent candidates.

21   They're still picking and deciding the ballot in Arkansas well

22   into June and for an independent presidential candidate in

23   August.  There's no reason that we couldn't go back to when the

24   deadline was in May.

25             Remember in the Lendall I, II, III, and IV, that whole

1    series of cases they said a deadline of April or earlier was

2    unconstitutional.  Nothing in their affidavit from Mr. Hammons

3    nothing justifies having a deadline that early.  They talk

4    about this as though it's so difficult, it's so expensive, it's

5    so complicated.  I really think they're up to the task.  I

6    suggest the Court look, I believe it is at paragraph 11 of

7    Mr. Winger's affidavit, history of Arkansas independent

8    candidate procedures.  Look what it used to be in Arkansas.

9    Now, I admit that when they were only requiring 50 signatures

10   and they had it 20 days before the general election or 45 days,

11   that probably wouldn't, they would have a good reason to say we

12   can't have a deadline only 20 or 45 days because we have to get

13   the overseas ballots out, because we have early voting, but

14   we're not asking for that.

15        Certainly 45 days would take it into September as was

16   condemned with the New York law when they said we want it 45

17   days before that.  But what have they presented?  Absolutely

18   nothing that justifies such an early deadline.  This impacts

19   fundamental freedoms and they haven't justified it.  And

20   Mr. Winger in his factual rendition which they have not

21   disputed at all about the past history of Arkansas, what was

22   done then and what is necessary and what has happened in other

23   states, which I think is persuasive at least to the Court, I

24   think have to condemn this law and as the Court found in

25   Lendall III and in Lendall IV, anything April or earlier is

1  unconstitutional.  The old law where Mr. Moore was able to

2  comply was a deadline in May, and that I think would be

3  acceptable.

4       They would have an argument on that.  It would be close

5  to the primary when the major parties are selecting and I think

6  by both precedent and by reason and logic, and by the evidence

7  that's been presented by both the plaintiffs and the defendant

8  in this case, the law is unconstitutional.

9            THE COURT:  Thank you, Mr. Linger.  I hope to have

10  y'all a response within probably two weeks on all three of the

11  issues that are before me.  It may come sooner, it all just

12  depends on what actually goes to trial in the next two weeks

13  and what doesn't.  I'm reluctant to promise you an earlier

14  deadline without knowing what I've got between here and there.

15  I want to commend both lawyers, it was well briefed, well

16  argued.  And I hope to get something out pretty quickly.

17            MR. LINGER:  Thank you, Your Honor.

18            THE COURT:  Court's in recess.

19       (Proceedings adjourned at 10:42 a.m.)

20                  C E R T I F I C A T E

21     I, Karen Baker, Official Court Reporter, do hereby certify

22  that the foregoing is a true and correct transcript of

23  proceedings in the above-entitled case.

24  /s/ Karen Baker, RMR, CRR, CCR
    --------------------------------          Date: November 27, 2015
25  United States Court Reporter