# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3558
_____

Mark Moore

*Plaintiff - Appellant*

Michael Harrod; William Chris Johnson

*Plaintiffs*

v.   (4:14-cv-00065-JM)

Mark Martin, in his official capacity as Secretary of State for the State of Arkansas

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 14, 2016
Filed: April 26, 2017

_____

Before WOLLMAN, SMITH,[1] and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

---

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

This appeal concerns certain Arkansas statutes that set the filing deadline for individuals who wish to appear on the general election ballot as independent candidates. Mark Moore, along with two other individuals, filed suit in federal district court against Mark Martin, in his official capacity as Arkansas Secretary of State, seeking a declaratory judgment that the filing deadline is unnecessarily early and thus violates the First and Fourteenth Amendments and 42 U.S.C. § 1983. The suit seeks to enjoin Martin from enforcing this deadline against Moore.[2] Moore appeals from the district court's orders that denied his motion for summary judgment, granted Martin's motion for summary judgment, and denied Moore's motion for reconsideration. We affirm in part and reverse in part.

I.  Background

Under Arkansas law, a person seeking to include his or her name on the general election ballot as an independent candidate for any office other than President or Vice President of the United States must submit a petition to the Arkansas Secretary of State. Ark. Code Ann. § 7-7-103(a)(1). Petitions for statewide office must be signed by the lesser of three percent of the qualified electors of the state or ten thousand qualified electors. Id. § 7-7-103(b)(1)(B). Independent candidate petitions must be submitted during the same period as political party candidate petitions. This "party filing period" begins one week prior to the first day in March and ends the first day in March.[3] Id. §§ 7-7-103(a)(1), 7-7-203(c)(1). Petitions may not be circulated for signatures earlier than ninety days prior to the March 1 deadline. Id. § 7-7-103(b)(3)(B). The general election is held on the Tuesday following the first

---

[2]Plaintiff William Chris Johnson was voluntarily dismissed from the case, and Plaintiff Michael Harrod did not appeal from the district court's judgment.

[3]Prior to being amended in 2013, section 7-7-103(b)(1)(A) provided a May 1 deadline for an independent candidate to submit a petition with the requisite number of signatures. H.R. 2036, 89th Gen. Assemb., Gen. Sess., 2013 Ark. Acts 1356.

-2-

Monday in November. Id. § 7-5-102. For political party candidates, the general primary election is held on the second Tuesday in June and the preferential primary election is held three weeks earlier. Id. § 7-7-203(a)-(b). The Secretary and county clerks must certify to the county boards of election commissioners the names of all candidates to be placed on the general election ballot not less than seventy-five days before the general election. Id. § 7-5-203. Upon timely request, states must transmit absentee ballots to absent military voters and overseas voters at least forty-five days before an election for federal office. 52 U.S.C. § 20302(a)(8).

The Secretary must also process requests for inclusion on the ballot for nonpartisan offices, including judges and prosecuting attorneys. The general election for nonpartisan offices is held on the same day as the preferential primary election for partisan offices, and any runoff election is held on the same day as the November general election. Ark. Code Ann. § 7-10-102. A person may have his or her name placed on the ballot for nonpartisan office by paying a filing fee during the party filing period or by submitting a petition, signed by a requisite number of electors, during a period beginning fifty-three days before the first day of the party filing period and ending forty-six days before the first day of the party filing period. Id. § 7-10-103(a)-(c). The Secretary must verify the sufficiency of a petition for nonpartisan office within forty-five days of its filing.[4] Id. § 7-10-103(c)(1)(C).

Additionally, Arkansas election officials must process petitions for ballot initiatives. Eight percent of the qualified electors in Arkansas may propose a law, and

---

[4]Prior to being amended in 2013, § 7-10-103(c) provided a later period for filing of petitions for nonpartisan office—beginning forty-six days before the first day of the party filing period and ending thirty-two days before the first day of the party filing period—and provided that the "Secretary of State, or the county clerk, as the case may be," must verify the sufficiency of a petition for nonpartisan office within thirty days of its filing. H.R. 2065, 89th Gen. Assemb., Gen. Sess., 2013 Ark. Acts 1286.

ten percent may propose an amendment to the state's constitution. Ark. Const. art. V, § 1. To appear on the November general election ballot, an initiative petition signed by the requisite number of voters must be filed with the Secretary not less than four months before the general election is to be held. Id. The Secretary must verify the sufficiency of an initiative petition within thirty days after it is filed and may contract with county clerks for assistance in verifying the petition signatures. Ark. Code. Ann. § 7-9-111(a). If the Secretary finds a petition insufficient, within thirty days the petition sponsors must cure the deficiency (by gathering additional signatures, proving the validity of rejected signatures, or making the petition more definite) and submit a supplemental petition, the sufficiency of which the Secretary must verify within thirty days. Id. § 7-9-111(d). The Secretary must certify each verified initiative proposal to the county boards of election commissioners for inclusion on the ballot not less than seventy-five days before the general election. Id. § 7-5-204(a). If the Secretary has not verified the sufficiency of an initiative petition at least seventy-five days before the general election, or if an initiative petition is legally challenged, the Secretary must nevertheless transmit it to the county boards of election commissioners for inclusion on the ballot. Id. § 7-5-204(c)(1). If the Secretary subsequently declares the petition insufficient or if the initiative proposal is held to be legally invalid, no votes regarding the initiative proposal are counted or certified. Id. § 7-5-204(c)(2).

Moore is a registered Arkansas voter and claims that he was an independent candidate for Lieutenant Governor of Arkansas in the 2014 election.[5] He sued Martin, alleging, as mentioned above, that the filing deadline for independent candidates violates the First and Fourteenth Amendments.

---

[5]Moore also alleged, in his affidavit opposing Martin's motion for summary judgment, that he intends to run for Lieutenant Governor as an independent candidate in the 2018 general election.

-4-

The parties filed cross-motions for summary judgment. The district court granted Martin's motion and denied Moore's motion. It rejected Martin's arguments that the case was moot or unripe for review and that Moore lacked standing. It found that the March deadline for filing as an independent candidate placed a substantial burden on Moore's rights; that Arkansas has a compelling interest in timely certifying candidates and initiatives to the general election ballot; and that the March deadline is narrowly tailored to serve this interest. In determining that the March deadline is narrowly tailored, the court relied on an affidavit submitted by the Arkansas Director of Elections, which states that the increased number of initiative petitions and candidates petitioning for inclusion on the ballot for nonpartisan office leaves Arkansas election officials with insufficient time to process the petitions using the previous May 1 submission deadline.

## II. Discussion

We review *de novo* the district court's order granting Martin's motion for summary judgment and denying Moore's motion for summary judgment. See Green Party of Ark. v. Martin, 649 F.3d 675, 679 (8th Cir. 2011). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The party moving for summary judgment bears the initial burden to "bring up the fact that the record does not contain" a genuine dispute of material fact "and to identify that part of the record which bears out his assertion." Counts v. MK-Ferguson Co., 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting City of Mt. Pleasant v. Associated Elec. Coop., 838 F.2d 268, 273-74 (8th Cir. 1988)). "[I]f the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish

-5-

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. Proc. 56(c)(1).

Ballot access restrictions implicate not only the rights of potential candidates for public office, but also the First and Fourteenth Amendment rights of voters to cast their ballots for a candidate of their choice and to associate for the purpose of advancing their political beliefs. Anderson v. Celebrezze, 460 U.S. 780, 786-88 (1983).[6] "Constitutional challenges to specific provisions of a State's election laws [] cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." Id. at 789 (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)). Instead, we "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate," then we "must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule," determining not only "the legitimacy and strength of each of those interests" but also "the extent to which those interests make it necessary to burden the plaintiff's rights." Id. "[W]e review the statute under a form of strict scrutiny referred to as the 'compelling state interest test' by first determining whether the challenged statute causes a burden of some substance on a plaintiff's rights, and if so, upholding the statute only if it is 'narrowly drawn to serve a compelling state interest.'" Libertarian Party of N.D. v. Jaeger, 659 F.3d 687, 693 (8th Cir. 2011) (quoting McLain v. Meier, 851 F.2d 1045, 1049 (8th Cir. 1988)). In such cases, the State bears the burden of showing that the challenged statute is narrowly drawn to serve the State's compelling interest. See Eu v. S.F. Cty. Democratic Cent. Comm., 489 U.S. 214, 222 (1989).

---

[6]We confine our analysis to Moore's First Amendment rights and due process rights under the Fourteenth Amendment and do not separately consider his claim of an equal protection violation. See Anderson v. Celebrezze, 460 U.S. 780, 786 n.7 (1983).

Arkansas's ballot access requirements for independent candidates have been repeatedly challenged. In Lendall v. Bryant, 387 F. Supp. 397, 400-03 (E.D. Ark. 1975) (per curiam) (Lendall I), a three-judge district court held unconstitutional the combined requirements that an independent candidate's petition be filed by the first Tuesday in April, which was also the filing deadline for political party candidate petitions, and be signed by fifteen percent of the qualified electors for the office. After Arkansas reduced that requirement to ten percent, and not more than two thousand signatures for district office or ten thousand signatures for statewide office, a three-judge district court held that the filing deadline, still the first Tuesday in April, was unconstitutional standing on its own. Lendall v. Jernigan, No. LR-76-C-184 (E.D. Ark. Aug. 20, 1976), aff'd mem., 433 U.S. 901 (1977) (Lendall II). Then in Lendall v. Jernigan, 424 F. Supp. 951, 958 (E.D. Ark. 1977) (Lendall III), the district court held that the petition requirement of ten percent of qualified electors, standing alone, was unconstitutional.[7] In Lendall v. McCuen, No. LR-C-88-311 (E.D. Ark. Aug. 16, 1988) (Lendall IV), the court held that a one-time January 5 filing deadline, which accompanied a one-time March 8 date for the preferential primary, was unconstitutional in light of Lendall II's disapproval of an April deadline. Finally, in Langguth v. McCuen, 30 F.3d 138 (unpublished table decision), No. 93-3413, 1994 WL 411736, at *1-2 (8th Cir. Aug. 9, 1994) (unpublished per curiam), our court upheld a deadline that required filing thirty days before the primary election, a signature requirement for statewide office of the lesser of three percent of qualified electors or ten thousand signatures, and a sixty-day period in which to gather signatures. Although we are mindful that these cases do not provide a "litmus-paper test,"[8] Anderson, 460 U.S. at 789, we note that a filing deadline earlier than the first

---

[7]The court also discussed the requirement that the signatures be gathered within a sixty-day period, but did not appear to base its holding on this requirement. Lendall v. Jernigan, 424 F. Supp. 951, 958 (E.D. Ark. 1977) (Lendall III).

[8]Similarly, we perceive no error in the fact that the district court's order did not mention the affidavit of Moore's purported expert witness, Richard Winger, which

-7-

Tuesday in April would require additional justifications to distinguish this case from Lendall II.

The district court correctly noted that the March 1 filing deadline for independent candidates imposes a burden "of some substance" on Moore's First and Fourteenth Amendment rights and that Arkansas has a compelling interest in timely certifying independent candidates for inclusion on the general election ballot. We believe that the district court erred, however, in concluding that there was no genuine dispute of material fact whether the March 1 deadline is narrowly drawn to serve that compelling interest. The district court reasoned:

> [I]n light of the increase in [candidates for nonpartisan offices] (mostly judges) filing petitions instead of paying filing fees as before and the increased number of initiative petitions[,] there is simply not enough time to process all of the petitions within the May 1st deadline. This fact coupled with the time consumed by ever increasing litigation over petitions has necessitated the [advancement] of the deadline to March 1st.

Secretary Martin's evidence shows an increase in the number of candidates who petitioned for inclusion on the ballot for nonpartisan offices, resulting in an increase in the number of signatures that required verification. Those signatures were required to be verified by the end of February: in 2014, the deadline for submission of signature petitions for nonpartisan office was January 9, and thus, presumably, these petitions were verified by February 24, 2014. See Ark. Code Ann. § 7-10-103(c)(1)(C) (forty-five-day deadline for Secretary's verification of signature petitions for nonpartisan office). Although advancing the

---

detailed the history and judicial treatment of ballot access requirements for independent candidates and new political parties, because it would not have informed the district court's analysis in weighing Arkansas's interests against the burden on Moore's rights.

-8-

deadline from May 1 to March 1 gives the Secretary two additional months in which to review independent candidate petitions, we question whether the increase in the number of nonpartisan petitions necessitated that change in dates in light of the fact that the Secretary is statutorily required to verify the nonpartisan petitions prior to the independent candidate petitions' due date. The increase in nonpartisan petitions may have resulted in an increase in litigation regarding those petitions, which might interfere with the processing of independent candidate petitions, but the record is unclear as to any such effect. Accordingly, the increase in the number of nonpartisan petitions does not by itself establish the existence of a compelling interest that the March 1 deadline is narrowly tailored to serve.

Stronger evidence exists to suggest that the processing of initiative petition signatures might conflict with the processing of independent candidate petition signatures. The Director of Elections' affidavit states, in part:

> The deadlines for filing petition signatures [for candidates for nonpartisan offices, independent candidates, and new political parties] [were] "moved up" on the calendar—to earlier in the year—in order to facilitate election administration necessities, including the processing of so many initiative petition signatures during the 2012 election cycle that it was nearly impossible to finish the process within the statutory and constitutional guidelines, resulting in preliminary certification of [initiative petitions] that were later determined to be "stricken" from the ballot for one reason or another (after considerable litigation). Given the constitutional deadline for submission of initiative petition signatures, and the necessities of UOCAVA and MOVE compliance,[9] all other petition signature requirements were advanced to earlier in the year so as to clear the calendar of petition signature processing and subsequent litigation, in advance of the constitutional initiative petition signature

---

[9]This refers to the earlier-mentioned requirement, upon timely request, to transmit absentee ballots to absent military voters and overseas voters at least forty-five days before an election. 52 U.S.C. § 20302(a)(8).

-9-

deadlines (which normally fall just before or just after the July 4 holiday).

Arkansas Code Annotated § 7-9-111 allows thirty days for the Secretary to verify initiative petitions, thirty days for petition sponsors to cure any deficiencies, and thirty days for the Secretary to review a thus-cured petition. Martin argues that the thirty-day cure period for defective petitions during which his office is required to meet the deadline for sending absentee ballots in practice means that he is left with only "a week to ten days to evaluate every single petition that comes in, many of them 50 or 60 or 70,000 signatures," which "becomes nearly impossible, [as] it was in 2012."

Moore contends that because independent candidates do not appear on the ballot until the November general election and because there are relatively few independent candidates, the former May 1 deadline did not create conflicts between the processing of independent candidate petitions and other signature petitions. He also argues that even if Arkansas were required to hire additional election workers to meet the statutory deadline, the cost increase would not justify the burden on independent candidates' and voters' constitutional rights. See Tashjian v. Republican Party of Conn., 479 U.S. 208, 218 (1986) (holding that the possibility of increased administrative costs would not justify a statute prohibiting a political party from opening its primary to voting by independents).

Notwithstanding the district court's and the parties' description of the issue for decision as being purely legal, we conclude that there exists a genuine factual dispute whether the verification of independent candidate petitions would conflict with the processing of other signature petitions under the former May 1 deadline. As mentioned earlier, it appears that the processing of nonpartisan-office petitions would not conflict with the processing of independent candidate petitions because the nonpartisan-office petition signatures are statutorily required to be verified before the

end of February. The Director of Elections' affidavit establishes that the processing of initiative petitions consumes a great deal of time between early July and late August. But on this record a number of other relevant facts are unclear. The record does not establish what periods of time, between the former May 1 deadline for independent candidate petitions and the early July deadline for initiative petitions, were available for the state to process independent candidate petitions. It does not establish when independent candidate petitions were in fact processed in the past, nor does it reveal whether during the 2014 election, following the move of the deadline from May 1 to March 1, independent candidate petitions were processed between those two dates. Also unclear are the amount of time required to process independent candidate petitions and the feasibility of temporarily hiring additional election workers. We conclude that the lack of a record establishing such underlying facts demonstrates the existence of a genuine dispute of material fact that precluded summary judgment.[10]

Accordingly, the district court erred in granting Martin's motion for summary judgment. It did not err in denying Moore's motion for summary judgment, however, because of the existence of a factual dispute, which renders moot Moore's motion for reconsideration. We thus affirm in part, reverse in part, and remand the case for further proceedings consistent with the views set forth in this opinion.

SMITH, Circuit Judge, dissenting.

I respectfully dissent. Arkansas's election scheme requires independent candidates to file for candidacy at the same time political parties are required to file

---

[10]Martin and the district court noted that Moore presented no affirmative evidence to persuade the district court of his position. Because the record did not "in fact bear[] out [Martin's] claim that no genuine dispute exist[ed]," however, Moore was not required to provide affirmative evidence. See Counts v. MK-Ferguson Co., 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting City of Mt. Pleasant v. Associated Elec. Coop., 838 F.2d 268, 273-74 (8th Cir. 1988)).

to be included in the general election. Ark. Code Ann. § 7-7-103(a)(1). Because the party-filing deadline shifts at the discretion of the General Assembly, the independent-candidate filing deadline shifts accordingly. For example, in 2014, this filing date was March 3, 2014—246 days before the general election. In 2016, this filing date was November 9, 2015—365 days before the general election. In *McLain*, we were troubled by a third-party filing deadline "more than 200 days before the November election." 851 F.2d at 1049. The deadline here—246 to 365 days before the general election—is even more troubling.

"The Constitution requires that the access requirements as to both party-backed and independent candidates be reasonable." *McLain v. Meier*, 637 F.2d 1159, 1165 (8th Cir. 1980). Restrictions on ballot access "may not go beyond what the state's compelling interests actually require," *id.* at 1163, and must be "narrowly drawn to serve [that] compelling state interest," *Jaeger*, 659 F.3d at 693 (quoting *McLain*, 851 F.2d at 1049). The Arkansas independent-candidate filing deadline fails to meet these constitutional standards—it is neither actually required nor narrowly drawn.

Secretary Martin contends that this filing deadline is "actually required" because his office gets overwhelmed with the number of petitions for nonpartisan candidates and ballot initiatives. Yet, the nonpartisan petitions are certified in February, and the ballot initiatives are not due until July. Five months for certifying independent candidates is a substantial time period. The record reflects that no more than two independent candidates ran for state-wide office in Arkansas per election cycle in recent years. Using the former May 1 deadline, Secretary Martin would have two full months to process at most 20,000 signatures for independent candidates.[11]

---

[11]The evidence on the record suggests that Secretary Martin's office is more than capable of handling such a task. In 2014, Secretary Martin processed 92 nonpartisan candidate petitions, containing 103,578 signatures, before the end of February. Further, Arkansas ballot initiatives must be processed within a period of 30 days, and these petitions can include up to 70,000 signatures.

-12-

*See* Ark. Code Ann. § 7-7-103(b)(1). Because the record does not demonstrate a legitimate conflict in the months of May and June for processing independent-candidate filings and other petitions, Secretary Martin has not shown that such an early filing deadline is actually required.

Additionally, Secretary Martin has not demonstrated how attaching the independent-candidate filing deadline to the party-filing deadline is "narrowly drawn." *See Jaeger*, 659 F.3d at 693. In *Council of Alternative Political Parties v. Hooks*, the Third Circuit rejected a less-restrictive scheme in New Jersey that required third-party and independent candidates to file candidacy petitions in early April—the same day as the party-affiliated candidates. 121 F.3d 876, 879 (3d Cir. 1997). Alternative candidates had to file up to 800 signatures seven months before the general election. *Id.* at 878–79. In balancing the interests, the court determined that "requiring [independent candidates] to file their nominating petitions at the same early date as Democratic and Republican candidates" was unjustified. *Id.* at 881. "Requiring party candidates to comply with a March filing deadline permits a 'reasonable time for processing the documents submitted by candidates and preparing the ballot' for a June primary. . . . [But] '[n]either the administrative justification nor the benefit of an early filing deadline is applicable to an independent candidate.'" *Wood v. Meadows*, 207 F.3d 708, 711 (4th Cir. 2000) (citations omitted) (quoting *Anderson*, 460 U.S. at 800). "[A]lthough such laws appear to treat independent and party candidates similarly, they actually disadvantage independent candidates." *Id.* Secretary Martin presents no justification for statutorily attaching the independent-candidate filing deadline to that of the political parties. Thus, this connection fails to be "narrowly drawn."

The majority holds that we must remand because there is insufficient evidence regarding Secretary Martin's inability to process independent-candidate petitions concurrently with the ballot initiatives. On summary judgment, however, if the nonmoving party fails to make a sufficient showing of an element of his case that he

-13-

has the burden of proving, then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Secretary Martin had the burden of proving a genuine conflict existed between the processing of independent-candidate petitions and petitions for ballot initiatives. Because no evidence exists on the record that such an early deadline is necessary to process the independent-candidate petitions, Moore is entitled to judgment as a matter of law. *See Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988).

      I respectfully dissent.

_____

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 26, 2017

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 15-3558  Mark Moore, et al v. Mark Martin

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was James Carter Linger, of Tulsa, OK.

Counsel who presented argument on behalf of the appellee was AJ Kelly, of Little Rock, AR.

The judge who heard the case in the district court was Honorable James M. Moody, Jr.. The judgment of the district court was entered on October 7, 2015.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

MDS

Enclosure(s)

cc: MO Lawyers Weekly

District Court/Agency Case Number(s):  4:14-cv-00065-JM

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 26, 2017

Mr. James Carter Linger
1710 S. Boston Avenue
Tulsa, OK  74119-4824

     RE:  15-3558  Mark Moore, et al v. Mark Martin

Dear Counsel:

     The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

     Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                      Michael E. Gans
                      Clerk of Court

MDS

Enclosure(s)

cc:    Mr. AJ Kelly
       Mr. Jim McCormack
       Mr. Jeffrey M. Rosenzweig

     District Court/Agency Case Number(s):   4:14-cv-00065-JM



15-3558 Mark Moore, et al v. Mark Martin "Signed Opinion Filed" (4:14-cv-00065-JM)
ca08ml_cmecf_Notify  to:  04/26/2017 10:01 AM

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

### Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 04/26/2017

| | |
|---|---|
| **Case Name:** | Mark Moore, et al v. Mark Martin |
| **Case Number:** | 15-3558 |
| **Document(s):** | Document(s) |

**Docket Text:**
OPINION FILED - THE COURT: Roger L. Wollman, Lavenski R Smith and Duane Benton AUTHORING JUDGE:Roger L. Wollman (PUBLISHED),
DISSENT BY: Lavenski R Smith [4528971] [15-3558] (Michael Shay)

**Notice will be electronically mailed to:**

Mr. AJ Kelly: kellylawfedecf@aol.com
Mr. James Carter Linger: bostonbarristers@tulsacoxmail.com
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Jeffrey M. Rosenzweig: jrosenzweig@att.net, jeffrosenzweig@sbcglobal.net, leejoshr@gmail.com, smwbraden@gmail.com
MO Lawyers Weekly: stephanie.maniscalco@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com


The following document(s) are associated with this transaction:
**Document Description:** opinion filed
**Original Filename:** 153558P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=04/26/2017] [FileNumber=4528971-0]
[7ea8ff4450fa7457dd929001d47bd6de4ee52e0e2f0e87b2483bcbd0efc2b8378735029df2981569
b4fa0d89e44e22a1dd4e2f04cf2ac59f49b89af2e124cad5]]

**Document Description:** Letter To Publishing
**Original Filename:**
/opt/ACECF/live/forms/MichaelShay_153558_4528971_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=04/26/2017] [FileNumber=4528971-1] [3736a353bb319c58ee74a389c2f3fcb4b5f78e7eb178079fd6cf423000cc78ff7169cb64d925b2182 3b174dfdce07a596f9edb56d416601e1942499ee74c2df8]]
**Recipients:**
- MO Lawyers Weekly
- West Publishing

**Document Description:** Counsel Opinion Letter
**Original Filename:**
/opt/ACECF/live/forms/MichaelShay_153558_4528971_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=04/26/2017] [FileNumber=4528971-2] [93c737a72b89fc3162e558d8c0b7ca4aae4e4c6901570212ba31d2b8c87f113351b152d7ee2ae71e d5a78887d8c35fba4d67c8059eb0ce1fe9d310491a86ad8c]]
**Recipients:**
- Mr. AJ Kelly
- Mr. James Carter Linger
- Mr. Jim McCormack, Clerk of Court
- Mr. Jeffrey M. Rosenzweig

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 4528971
**RELIEF(S) DOCKETED:**
   for publication
   dissent
**DOCKET PART(S) ADDED:** 5793125, 5793126, 5793127, 5793128