IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| MARK MOORE, et al., | Plaintiffs, | ) |
| | | ) |
| v. | | ) Case No. 4:14-CV-65-JM |
| | | ) |
| MARK MARTIN, in his official capacity as | | ) |
| Arkansas Secretary of State, | Defendant. | ) |
| | | ) |

# ATTACHMENT

# PLAINTIFF MOORE'S EXHIBIT "1"

# AFFIDAVIT OF MARK MOORE

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| MARK MOORE, et al., | Plaintiffs, | ) |
| | | ) |
| v. | | ) Case No. 4:14-CV-65-JM |
| | | ) |
| MARK MARTIN, in his official capacity as | | ) |
| Arkansas Secretary of State, | Defendant. | ) |
| | | ) |

## AFFIDAVIT OF MARK MOORE

I, Mark Moore, of legal age, being first duly sworn under oath, state as follows:

1. I am a resident of Benton County, Arkansas, a registered voter in the State of Arkansas, a citizen of the United States of America, the Plaintiff in this case, and both a former and future Independent candidate for elective office in Arkansas. I make this Affidavit with the knowledge that it is to be used for the purpose of responding to Defendant Mark Martin's Motion to Vacate the Judgment as Moot and Brief in Support filed on May 18, 2018, in the above-referenced case.

2. This case was filed on February 6, 2014, at which time I wished to be an Independent candidate for Lt. Governor of Arkansas. After the trial court granted summary judgment in favor of Defendant, the Eighth Circuit Court of Appeals partially reversed the case on April 26, 2017, and remanded it to the trial court with certain questions to be answered after trial. However, the Defendant filed a Motion to Stay and recall the mandate with the Eighth Circuit and a Petition for Certiorari with the U.S. Supreme Court--both of which were denied. The Certiorari Petition to the U.S. Supreme Court was not denied until October 10, 2017. I was still desirous at that time of being an Independent candidate for Lt. Governor of Arkansas in the 2018 election if we could successfully resolve the case after all the delays. After trial on December 12, 2017, the

initial ruling came down in my favor on January 25, 2018, as amended on January 31, 2018, allowing me until May 1, 2018, to file my Independent candidate petitions. By then, I had to face the fact that the now-incumbent Lt. Governor was in a much stronger position than when I thought to challenge him earlier in this case. I had also taken projects which had me outside the state for much of this time. Additionally, I had learned that Frank Gilbert was going to be the Libertarian candidate for Lt. Governor. Frank Gilbert is a long-time friend of mine and someone to whom I had donated what is for me a significant amount of money in a past campaign. An Independent campaign for Lt. Governor might be stepping on his toes and dividing the anti-establishment vote, since voters who do not wish to vote for the Republican or Democratic candidates for Lt. Governor would now be divided between an Independent candidate and a Libertarian candidate. Why run in a race where there was already another candidate you recently supported? Even now Mr. Gilbert seeks my advice on various issues related to his campaign. Therefore, I decided to support him again this time, and run for another Independent office pursuant to the injunctive relief granted me by the trial court.

3. I was thinking all of this over when I learned that the Defendant had filed a notice of appeal on February 22, 2018. I knew that I would have to ask people for $20,000 at a minimum to fund a state-wide petition drive. During the rest of the party filing period I had hanging over my head the possibility that if I went and asked people for money and got the signatures, the State could just continue creating more uncertainty and delay in the appeal which impacted my supporters and I by putting my candidacy under a cloud. I could spend the money and not make the ballot *again*. Donors wouldn't buy into funding a campaign under those circumstances and I could not even evaluate the merits of the appeal.

4. About March 7th, I found out that the State demanded that the injunction that said they had to take my petitions as late as May 1st be lifted on the grounds that I did not file during the party filing period by March 1st. They gave notice of appeal like the second day of the party filing period (February 22) so that could tie it up in the courts for some time, and then filed a motion to vacate the injunctive relief granted me. I complained to my counsel about the situation. It did freeze me, but the more I thought about it the less I liked what happened. In mid-March my counsel said it appeared to him that the injunctive relief was narrowly applied to me and that I did not have to file anything until it was all due on May 1st because there was plenty of precedent for the idea that making Independents file during the party filing period was unconstitutional because Independents are not even on the ballot during the party primary elections.

5. We had already lost considerable time due in part to the chilling effect of the State's actions which caused delay and uncertainty. While I had decided for the above reasons involving Mr. Gilbert by this time not to run for Lt. Governor, I had been urged by some to run for Secretary of State. However, a state-wide petition drive was out of the question now, but a State Senate race would need a lot less signatures. I could self-fund a modest signature drive like that, but I had had to take on a new short term project and was mostly out of the State for the remainder of the petitioning period. So I called a buddy back home in Pea Ridge to ask him if he would manage the petition drive for me to run for state senate. Much to my surprise *he* initiated the subject that I should run for the legislature. I asked him if he would manage the petition drive for me and he agreed.

6. As to how many signatures I needed, the Secretary of State does not publish those numbers. You have to call and ask. At this point not only were there trust issues with the

3

Secretary of State's office giving the right number, but I had doubts they would even provide me one since the "party filing period" was over and Judge Moody had not yet amended his order that I had until May 1st to deliver all the filing papers—which would occur on April 30, 2018, when the Judge entered an amended order stating that: "Plaintiff may file his petition to run for office as an independent candidate, political practices pledge, affidavit of eligibility, and notice of candidacy on or before May 1, 2018."

7. I had purchased a list of voter files from the Secretary of State's office in July of 2017 for the whole state. I sorted out the voters in the third senate district and found the number of people on that list who voted for Governor in 2014. Three percent of that number was 460.38 voters, so I figured I only needed 461 good signatures to make it. On April 30, 2018, my Independent petition signatures, political practices pledge, affidavit of eligibility, and notice of candidacy were turned into the Secretary of State's office. It now appears that something was wrong. For whatever reason, it turned out that I needed 573 good signatures. At any rate, we turned in 603 signatures, and the state acknowledged receiving only 596 of those, of which they found only 422 valid.

8. I believe I made a good-faith effort to get on the 2018 ballot after a four-year battle with a relentless State effort to enforce a deadline in a law for Independent candidates and their supporters which had already been repeatedly declared unconstitutional. The law in Arkansas only requires State district judges to get petition signatures from 1% of the vote for Governor from their district. By that standard, I would have made it easily despite the change in circumstances, uncertainty, and late start.

9. Now that the law has been declared unconstitutional for Independents filing their petitions and other papers as of March 1 of the election year, and a later date of May 1 of the

4

election year being approved for future elections, my intent to be an Independent candidate in Arkansas in a future election will not be subject to the delays and uncertainties caused by the actions of the Secretary of State and the time necessary to have the issues fully litigated in both the trial court and the court of appeals.

10. I have personal knowledge of the facts stated in my Affidavit herein, and I understand that any false statements made herein will subject me to the penalties of perjury.

Further Affiant sayeth not.

Mark Moore, Plaintiff

STATE OF ARKANSAS )
) ss.
COUNTY OF BENTON )

## OATH

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared Mark Moore, who, upon his oath, acknowledged that he has read the foregoing Affidavit and the statements therein are true to the best of his knowledge, information and belief.

Witness my hand and official seal on this 27 day of May, 2018.

Notary Public

Commission (and Expiration):

(SEAL)

CHARLENE DEE CRAWFORD
Notary Public – Arkansas
Benton County
Commission # 12700964
My Commission Expires May 31, 2027

5