# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS WESTERN DIVISION

**MARK MOORE, *et al.*,**                                        **PLAINTIFFS**

**VS.**                          **NO. 4:14-CV-65-JM**

**HONORABLE JOHN THURSTON,**
**in his official capacity as**
**Arkansas Secretary of State**                          **DEFENDANT**

## DEFENDANT'S BRIEF IN OBJECTION TO PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

The Court should deny Plaintiffs' request for a fee award, and in the alternative, should substantially reduce Plaintiffs' request. This case is unique in how it developed factually. A key complication of this case is what happened after the December 2017 trial, and after the first Notice of Appeal to the Eighth Circuit.[1] Further complicating this matter was Plaintiff Mark Moore's conduct, or lack thereof, between the Court's January 2018 Order and May 1, 2018. By using the Court's Injunction to run for a different office, Moore completely changed the nature of his case. The qualifications and requirements to run for a

---

[1] Filed February 22, 2018.

State Senate seat as opposed to Lieutenant Governor are completely different in nature. One of the Co-Plaintiffs in this suit was a state district candidate, who failed to appeal the Court's grant of Summary Judgment in favor of Defendant Secretary.

Moore's May 31, 2018 Affidavit added yet another twist to this litigation. Unfortunately, this important affidavit came after trial, after the Court's Order, after the May 1, 2018 deadline, and after Defendant Secretary filed timely Notices of Appeal. It was necessary to file these Notices, which complicated matters further, as this Court's jurisdiction over post-trial matters was put into question. This Court deferred ruling on certain matters, and held the Motion for Attorney's Fees in abeyance pending appeal.[2]

As a result of Moore's own actions, his alleged injury suffered as an Independent Candidate for Lieutenant Governor remains completely hypothetical. His alleged injury as an Independent Candidate for any office is also completely hypothetical. It was only after trial, and after the Court's Order, that Moore decided run for a different office – which was a significant change of legal position – without notifying the Court

---

[2] Doc. No. 89.

2

or providing any notice to the Court whatsoever, despite filing motions and responses to motions during that time. It is not the Secretary of State's fault that during the course of this litigation, Moore took up employment out of state for long periods of time, which affected his eligibility to run for office.[3]

## BACKGROUND

This case started out with three prospective independent candidates for the Offices of Lieutenant Governor, a state district seat, and a county seat. The County candidate was dismissed from the case.[4] After this Court granted Summary Judgment to Defendant Secretary, the state district candidate did not appeal.[5] Later on, Moore would put himself in the exact same position as his former Co-Plaintiff, adding another twist to this case.

Moore saved his standing via an affidavit, as opposed to amending his Complaint.[6] Moore's first Affidavit was filed 326 days after the filing of his Complaint. At trial in December of 2017, Moore reaffirmed his

---

[3] Doc. No. 111-1 p.2, par. 2.
[4] Doc. No. 24.
[5] Doc. No. 37.
[6] Doc. No. 22-4.

Affidavit and his intent to run as a candidate for the Office of Lieutenant Governor. Moore could have collected signatures for his candidacy in December of 2017, but as we now know from his petition, he did not do so until around mid-late March of 2018.

The Court issued its first Order on January 25, 2018, allowing Moore to file his petition, and presumably just the petition, on May 1, 2018. [7] (Moore originally requested, in writing and in testimony, to file his petition, and only his petition, after the Party Filing Period). As there is a statutory 90 day period to collect signatures, the signature collection period for Moore would thus begin on January 31, 2018. In Par. 6 of the Order, the Court recognized Moore's presumed intention to run as an Independent Candidate for Lieutenant Governor. Despite Moore and his counsel knowing the Order was based on this premise, neither corrected the Court, even though the record will show both knew a significant change of position, as a candidate and for purposes of standing, had taken place.

---

[7] Doc. No. 65. (Doc. No. 67 made a minor amendment *nunc pro tunc* on January 31, 2018.).

When Moore did not file his mandatory paperwork at the end of the Party Filing Period, Defendant filed Motions to Vacate the Injunction.[8] The Order on the Motions to Vacate, and allowing for the filing of the mandatory supplemental candidate filings on May 1, 2018, were made on April 30, 2018.[9] On May 1, 2018, Moore, via proxy, filed paperwork and petition signatures for State Senate District 3.[10] That position required a candidate to collect 573 valid signatures to qualify for the ballot. Only 422 of Moore's signatures were valid, and he did not access the ballot, mooting any claims of a valid candidacy at that point.

Defendant filed another Motion to Vacate the Injunction as Moot on May 18, 2018.[11] Defendant's Second Amended Notice of Appeal was filed on May 22, 2018.[12] Moore filed a Response to Defendant's Motion to Vacate the Injunction on May 31, 2018. This was the first time Plaintiffs acknowledged their change of litigation position (and candidacy) to the Court, via their attached Affidavit.

---

[8] Doc. Nos 83, 84.
[9] Doc. No's 96, 97.
[10] Doc. No. 98.
[11] Doc. No. 98.
[12] Doc. No. 100.

## THE COURT SHOULD DENY THE REQUESTED FEES

The Court should deny Plaintiffs' request, or in the alternative, grant a reduced award of attorney's fees. Under the "American Rule," each party ordinarily bears its own attorney's fees.[13] Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced.[14] Section 1988 provides that a prevailing party in certain civil rights actions *may* recover "a reasonable attorney's fee as part of the costs."

The *Lodestar* standard is used for awards under Section 1988, and is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates.[15] District Courts then adjust attorney's fees upward or downward based on the "degree of success obtained" by plaintiff, which is the most critical factor in determining the fee award.[16] The *Lodestar* calculation is "objective," and thus provides a basis for the exercise of the discretion of trial judges, permits

---

[13] *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).
[14] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).
[15] *Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014).
[16] *Phelps-Roper v. Koster*, 815 F.3d 393, 398 (8th Cir. 2016) (citing *Hensley*, 461 U.S. at 436).

meaningful judicial review, and produces reasonably predictable results.[17]

As Section 1988 does not explain what a "reasonable" fee is, it is within the broad discretion of the court to identify the methodology for determining a reasonable fee.[18] Federal courts possess "'inherent power' to assess fees as sanctions when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[19] The local hourly rate should be used unless the plaintiff can show that in spite of their diligent, good faith effort, they were unable to find local counsel able and willing to take the case.[20]

## A. Plaintiff's Prevailing Status is Questionable

Moore's post-trial actions raise serious questions as to whether he is a prevailing party, and if it would be unjust to award attorney's fees. A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by

---

[17] *Perdue*, 559 U.S. at 552.
[18] *Perdue*, 559 U.S. at 551; *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014).
[19] *Moench v. Marquette Transportation Company Gulf-Inland, L.L.C.*, 838 F.3d 586 (5th Cir. 2016) (*citing Chambers v. NASCO, Inc.*, 501 US 32, 45-46 (1991).
[20] *Snider* at 1159 (*citing Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)).

modifying the defendant's behavior in a way that directly benefits the plaintiff."[21]

While Moore received a limited injunction allowing him to file his petition, and then his other required paperwork, on May 1, 2018, it was contingent upon his candidacy for Lieutenant Governor. Moore never filed for that position. Instead, he filed for a state district candidacy, which required a completely different set of constitutional qualifications and statutory requirements. Furthermore, Moore filed for a state district, replicating a fact scenario already covered by his previous Co-Plaintiff. As there is an order herein regarding a state district candidate in this case, the law of the case doctrine estops Moore from continuing this litigation after his change of legal position.

Plaintiffs are entitled to attorney's fees unless "special circumstances would render such an award unjust."[22]

### 1. Moore's May 31, 2018 Affidavit raises serious questions as to how he obtained his injunction.

---

[21] *Jernigan v. Crane*, 2015 WL 13767093 (E.D. Ark. 2015) (*citing Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)).
[22] *Jernigan v. Crane*, 2015 WL 13767093 (E.D. Ark. 2015) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

Moore's post-trial Affidavit is further evidence that his harm was entirely self-inflicted, calling his standing into question yet again. According to his own Affidavit filed on May 31, 2018, Moore was not committed to running for Lieutenant Governor even in late February, 2018.[23] Moore stated he was out of the state for "***much of this time***," which he says is why he ran for another office. Moore made the excuse that the current Lieutenant Governor "was in a much stronger position" by that time – 1) without providing any evidence for that claim, and 2) the Lieutenant Governors popularity and likeability was well known years before reelection, and received over 57% of the vote in the 2014 General Election.

Moore then made the excuse in his Affidavit that a "long-time friend" of his, Frank Gilbert, decided to run for Lieutenant Governor as a Libertarian Candidate.[24] One question to ask is if Frank Gilbert was Moore's long-time friend, did he not know Moore was planning on a 2018 run for the Office since 2014? Why did Moore come across this dilemma for the first time only a month after the trial? From Moore's

---

[23] Doc. No. 101-1, p.2 par. 3.
[24] Doc. No. 101-1, p. 3 par. 5.

own Affidavit, he admits he was still contemplating this issue as late as February 22, 2018.[25] Or is it that Moore's presence outside of the state, and change of heart, compromised his standing and litigation stance? It is important to note here that Moore's counsel has represented, and is currently representing, the Libertarian Party of Arkansas.

Moore then blames Defendant Secretary's filing of a Notice of Appeal as affecting his decision to run for the Office.[26] Moore also mentions the costs of petitioning, despite the fact that he said he would run again in 2014, and testified to his desire to run again at trial in 2017. Moore then engaged in conspiracy theory in his Affidavit, alleging he could not trust the Secretary of State's Office to provide him with an accurate number of signatures needed to run as an independent candidate for certain offices.[27] Perhaps the Secretary of State would have been put on notice, to which Defendant Secretary would have promptly notified the Court.

Moore clearly had no intention to partake in any campaigning or efforts to gather signatures during the signature collection period,

---

[25] Doc. No. 101-1, p. 2.
[26] Doc. No. 101-2 p. 2 par. No 3.
[27] Doc. No. 101-1 p. 3-4, par. 6.

which was changed by Court Order later. Moore, by his own admission, did not take any action during the month of February, 2018, either. It is also clear that Moore and his counsel had no intention of notifying the Court of this crucial change of position at any point before the Court issued its Order, or even after that point. Between January and May 1, 2018, Moore's Attorney filed seven (7) documents with the Court.[28]

According to his May 31, 2018 Affidavit, Moore had conversations with his counsel as late as March, and had not decided which office to run for, or when to start collecting signatures. It was not until May 21, 2018 that Moore gave any sort of notice to the Court that he decided to run for a different position, in the form of an attached affidavit in a responsive pleading.[29] Opposing Counsel cannot say he was unaware of this change of position. In Moore's Exhibit 11 and Supplemental Time Sheet, Opposing Counsel had billing entries noting contact with Moore on 4/26/2018, 4/30/2018, 5/01/2018, 5/07/2018, 5/23/2018 (to write the Affidavit for Moore), 5/24/2018, and 5/31/2018.[30]

---

[28] Doc. Nos. 68, 69, 70, 71, 74, 85, 95.
[29] Doc. No. 101.
[30] Doc. No 111-2.

Moore's Counsel waited 30 days after May 1, 2018, to notify the Court that his client ran for a different office. The requirements to run for that office were completely different from a statewide office in its qualifications and petition signature amount. Furthermore, a valid order existed against Moore's previous Co-Plaintiff, who was a state district candidate. The facts of this case show that it is a sham, and fraud upon the Court.

Moore's May 31, 2018 Affidavit raised serious questions about his veracity, as well as his qualifications to run for office in the State of Arkansas as either a state-wide, or district candidate, particularly Ark. Const. Art. 5, § 4 and Art. 19 § 3, and their respective residency requirements. These are issues Defendant Secretary was not able to raise at trial, or bring to light at trial, due to the order in which the trial was conducted. To this day, Moore has not proven or shown how he was constitutionally qualified to run for any office in the State of Arkansas. The Defendant has serious doubts as to those qualifications. Defendant Secretary was unable to bring these issues to light at trial, or to address these issues later, as they developed AFTER the Notice of Appeal was filed, and after the deadline for filing a notice of appeal, although

12

Motions to Vacate the Injunction were made. Again, this case is complex due to the way in which the facts developed and which Court had jurisdiction over the case when those particular facts came to light.

### 2. *Judicial Estoppel should bar Moore from receiving any attorney's fees*

Moore's post-trial actions, as shown in his Affidavit, were such a deviation of his position at trial that judicial estoppel should apply. Moore received relief through deception. Judicial Estoppel protects the integrity of the judicial process.[31] The doctrine is appropriate when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court.[32] Parties who take one position, and succeed as a result, are prohibited from assuming a contrary position "simply because his interests have changed," especially if doing so prejudices the opposing party.[33] The doctrine applies here, as Moore assumed inconsistent positions. Moore claimed he wanted to run as an Independent Candidate for Lieutenant Governor, succeeded on that ground, and then filed for a different office. Moore assumed those inconsistent positions to gain an unfair

---

[31] *Stallings v. Hussmann Corp.*, 447 F.3d 1041 (8th Cir. 2006).
[32] *Id.*
[33] *Id.*

13

advantage, and the Court relied on the previous position to its detriment. Moore's change of position was not a good faith mistake.

As a result, all requested attorney's fees should be denied. In the alternative, attorney's fees requested in the supplemental petition should be denied, as should all fees generated post-trial.

### 3. *Reasonable attorney's fees should be reduced to account for Moore's partial success at trial*

The district court may grant a partial fee award to reflect a plaintiffs' partial success.[34] The most critical factor is the degree of success obtained.[35] The Eighth Circuit rejected calculating fee awards based simply on the number of claims in which a plaintiff prevailed.[36] Further, the Eighth Circuit has affirmed a district court's determination that billing for travel during trial amounted to excessive hours and that denial of bill for travel did not amount to abuse of discretion.[37]

---

[34] *Koster*, 815 F.3d at 398 (*citing Wal–Mart Stores, Inc. v. Barton*, 223 F.3d 770, 772 (8th Cir. 2000)).
[35] *Hensley*, 461 U.S. at 436.
[36] *Koster*, 815 F.3d at 398 (where arithmetically simplistic fee awards do not contemplate overall degree of success).
[37] *Fires v. Heber Springs School Dist.*, 565 Fed.Appx. 573, 576 (8th Cir. 2014).

Moore showed no personal injury, other than the fact that his refusal to collect and submit signatures resulted in him not being placed on the 2014 ballot. Moore collected no signatures on candidate petitions, submitted no signatures on candidate petitions, and did not attempt to collect, or attempt to submit, signatures on candidate petitions, by the March 3, 2014 deadline, or even by the older, pre-Act 1356 of 2013 deadline of May 1. In fact, according to his own affidavit, Moore "refused to comply with the petition signature deadline." Moore also did not sign his Notice of Candidacy in 2014.

Moore did not join necessary defendants. He only preserved standing by claiming, in an affidavit for his Motion for Summary Judgment, that he intended to run for Lieutenant Governor in the 2018 cycle. Moore never amended his Complaint to reflect this. Furthermore, Plaintiffs Michael Harrod and William Chris Johnson were not successful in their litigation, and did not appeal their claims.

### B. Counsel's Requested Hourly Rate Should be Reduced

The Court should exclude hours from the fee request that represent work that was "excessive, redundant, or otherwise

unnecessary."[38] The Court should also reduce the loadstar amount in light of Moore's limited success.[39] Local Counsel's attorney's fees should be reduced to reflect his limited involvement as well as to reduce the likelihood of duplicative attorney's fees.[40]

A reasonable hourly rate is usually the ordinary rate for similar work in the community where the parties litigate the case.[41] When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates.[42]

In 2014, the Eighth Circuit upheld the decision of the Eastern District of Arkansas which accepted the proposed $250 rate as reasonable.[43] Defendant Secretary acknowledges that in a case where the [Plaintiff] [does] not use local counsel, the District Court is not limited to the local hourly rate, if the [Plaintiff] has shown that, in spite of his diligent good faith efforts, he was unable to find local counsel able

---

[38] *Hensley*, 461 U.S. at 434.

[39] *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

[40] *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 894 (8th Cir. 1995).

[41] *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 995 (8th Cir. 2012).

[42] *Trickey v. Kaman Indus. Technologies Corp.*, 705 F.3d 788, 807 (8th Cir. 2013) (*quoting Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)).

[43] *Fires v. Heber Springs Sch. Dist.*, 565 Fed.Appx. 573, 576 (8th Cir. 2014).

and willing to take the case.[44] Here, Moore is unable to argue that the ordinary rate in the community is not the rate that applies. Moore secured co-counsel from within the State of Arkansas itself, demonstrating the ability to retain local counsel. Plaintiffs were not required to seek out of state counsel. As a result, while the Court may look to ordinary rates outside the community where the parties litigated the case, it need not do so in the case at bar.

This case was not complex, although Moore's deliberate actions throughout the case created numerous complications. It did not take any particular expertise to file "shotgun pleadings," and the fact that the case wasn't amended, but saved via inappropriate affidavits in responsive pleadings weight heavily against expertise.[45]

Out-of-State Counsel, through his affidavit, "agreed to represent [Plaintiffs] on [this lawsuit after Plaintiffs had provided] $1,750.00 as a retainer for attorney fees and costs, with a contract that would reimburse [Plaintiffs] the $1,750.00 if [they were to succeed and recover] attorney fees and costs pursuant to 42 U.S.C. § 1988, but would

---

[44] *Snider*, 752 F.3d at 1159-1160 (citing *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)).
[45] *See Gurman v. Metro. Hous. & Redevelopment Authority*, 842 F.Supp. 2d 1151, 1153 (D. Minn. 2011).

not charge them further for any attorney fees, costs, or expenses if [Plaintiffs] were unsuccessful in the case." [46] Furthermore, Out-of-State Counsel admits that "it is [his] practice to require significant legal retainers only on those civil rights cases which [he] feels are either long shots or where the clients are financially well off.[47] While it can be argued whether a $1,750.00 retainer is "significant," opposing counsel nonetheless acquired a retainer, as he normally would for cases he normally considers "long shots." Ultimately however, if Counsel truly believed this case to be a "long shot," then his expectation as to fees would be exactly $1,750.00.

Consequently, Defendant Secretary respectfully asks the Court to weigh Counsel's previous fee agreement when applying lodestar calculations.

## CONCLUSION

Defendant Secretary has repeatedly argued that Mark Moore has not maintained standing throughout this litigation. Defendant Secretary preserves this defense, and raises it yet again at this point.

---

[46] Doc. 71-3, p. 3.
[47] *Id.*, at p. 3-4.

Moore does not have an injury, the evidence at trial was insufficient, and Moore's post-trial affidavit proves Defendant Secretary's point.

Regardless, this case is moot: Moore never accessed the ballot; Moore failed to acquire sufficient petitions for his candidacy; and Moore failed to attempt to run for Lieutenant Governor for a second time.

The way this case developed will encourage other parties to attempt to impact public policy by skirting the Rules of Civil Procedure by preserving their cases through self-serving affidavits and by failing to act. Awarding attorney's fees in this matter will encourage abusive and deceptive behavior against government Defendants in the future. It is not only an abuse of the Courts, but an abuse of public funds.

This Court should not award attorney's fees, and in the alternative, should adjust the requested fees, downward, by an appropriate percentage. This Court should deny local counsel's fee request, as it is unsupported by adequate explanation, is duplicative, and is unnecessary.

Respectfully submitted,

HONORABLE JOHN THURSTON,
ARKANSAS SECRETARY OF STATE
In his Official Capacity, Defendant

19

By: /s/ Michael Fincher
Ark. Bar No. 2016037
Staff Attorney

Arkansas Secretary of State's Office
Suite 256- State Capitol
500 Woodlane Avenue
Little Rock, AR 72201
PH: (501) 682-3401
Fax: (501) 682-1213
Email: michael.fincher@sos.arkansas.gov

*Attorneys for John Thurston*