IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARK MOORE, et al.,        Plaintiffs,   )
                                         )
v.                                       )   Case No. 4:14-CV-65-JM
                                         )
JOHN THURSTON, in his official capacity as )
Arkansas Secretary of State,   Defendant. )

<u>PLAINTIFF MOORE'S RESPONSE AND MEMORANDUM BRIEF
IN OPPOSITION TO DEFENDANT'S OBJECTIONS AND RESPONSE
TO PLAINTIFF MOORE'S SUPPLEMENTAL MOTION
TO SET AMOUNT OF REASONABLE ATTORNEY'S FEES</u>

An Order and a Judgment was entered in the above-referenced case on January 25, 2018 [ECF Nos. 65 and 66], as corrected in an Amended Order on January 31, 2018 [ECF No. 67], and further amended after remand from the Eighth Circuit in an Amended Order on April 30, 2018 [ECF No. 96]. Plaintiff Moore previously filed on February 7, 2018, a motion to set amount of reasonable attorney's fees and non-taxable costs and expenses pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d) (2), and L.R. 54.1, along with a Memorandum Brief in Support of his Motion to Set Amount of Reasonable Attorney's Fees and Non-Taxable Costs and Expenses [ECF Nos. 70 and 71]—which the District Court held in abeyance along with the request for costs pending appeal [ECF No. 89]. On July 1, 2019, the U.S. Court of Appeals for the Eighth Circuit issued an opinion and judgment, and Defendant's subsequent appeal was dismissed as moot by the U.S. Court of Appeals for the Eighth Circuit--but with the District Court's decision ordered not to be vacated on equitable grounds [ECF Nos. 108 and 109]. *Moore v. Thurston*, __ F.3d __, (Case No. 18-1382, 8th Cir., July 1, 2019).

Plaintiff Moore filed on July 11, 2019, a Supplemental Motion to Set Amount of Reasonable Attorney's Fees with a supporting brief with an attached Affidavit and Time Sheets [ECF Nos. 110 and 111]. On July 25, 2019, Defendant Secretary of State filed his Objection and Response to Request for Attorney Fees along with a Brief in Objection to Plaintiff's Request for Attorney's Fees [ECF Nos. 112 and 113]. Also on July 25, 2019, the U.S. Court of Appeals for the Eighth Circuit issued its formal mandate, and said formal mandate of the U.S. Court of Appeals in accordance with the opinion and judgment of July 1, 2019, was filed in the Eighth Circuit and in the U.S. District Court for the Eastern District of Arkansas [ECF No. 114]. Defendant's aforesaid objections and supporting brief continue to restate arguments on which Defendant did not prevail in the District Court or in the first appeal, show a misunderstanding of the law of this case, are significantly and factually inaccurate, make highly questionable statements not accurately backed up with facts, reasoning, or legal cases, engage in strawman arguments by asserting positions Plaintiff did not take, and state speculations not based in fact.

## ARGUMENT AND AUTHORITIES

I. <u>Defendant continues to make arguments he was unsuccessful on in the District Court and before the U.S. Court of Appeals for the Eighth Circuit</u>.

Defendant continues to argue numerous issues on which he was unsuccessful in the District Court before the appeal and after the appeal, and unsuccessful before the Eighth Circuit on appeal. *Moore v. Martin*, 854 F.3d 1029 (8th Cir. 2017); and *Moore v. Thurston, Id.* The Eighth Circuit was very specific in its decision as to what questions it wanted answered on remand. *Moore v. Martin*, 854 F.3d at 1028. At the trial on December 12, 2017, the evidence presented on the material issues was overwhelmingly in

2

favor of the Plaintiff and against the Defendant's argument that the March 1 Independent petition deadline was necessary. Early petition deadlines are unconstitutional all by themselves, even if the number of petition signatures required is low, and an unconstitutional petition signature deadline will not be saved by a reduced petition signature requirement. *Anderson v. Celebrezze*, 460 U.S. 780, 790-792 (1983).

However, Defendant continues to argue previously unsuccessful issues as to standing and mootness. All of these issues have previously been decided against Defendant in both the District Court and in the Eighth Circuit. Defendant continues to not understand the law of the case doctrine and its application to the instant case. By seeking to relitigate these arguments, which Defendant raised and lost before the District Court and the Eighth Circuit (and with the Petition for Writ of Certiorari denied by the U.S. Supreme Court), Defendant is acting contrary to the law of the case doctrine.

A bad argument is not made better by continuing repetition. Defendant continues to have a misunderstanding of the difference between standing and mootness—a misunderstanding that is particularly demonstrated by his objection and response and supporting brief filed herein on July 25, 2019. As the U.S. Court of Appeals for the Eighth Circuit said in the second appeal:

> Contrary to the Secretary's contention, Moore's claim did not become moot earlier in the litigation when he failed to file the required candidate paperwork in 2014 and again in 2018. Moore had credibly alleged an intent to run for state office in the future. Had the ballot-access statute not been amended, he would have been subject to the same petition filing deadline, rendering the issue capable of repetition, yet evading review. *See Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 462-63 (2007) (applying exception where nonprofit corporation challenging election advertisement laws credibly claimed that it would run similar advertisements in the future, and thus had a reasonable expectation that the same controversy would occur). We also note that the

3

> Secretary's argument that Moore has lacked standing throughout this litigation is better understood as one of mootness, see *Phelps-Roper*, 697 F.3d at 687 ("Mootness is akin to the doctrine of standing because the 'requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)'" (quoting *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004))), and we have already determined that Moore had standing to bring this lawsuit as a candidate and voter. See *Moore*, 854 F.3d at 1025. *Moore v. Thurston, Id.*, at p. 6.

The Eighth Circuit was simply not convinced by the arguments on standing and mootness brought up by Defendant post-trial in his three motions before the District Court which were denied [ECF Nos. 83, 93, 98], one motion in front of the Eighth Circuit, four separate notices of appeal [ECF Nos. 77, 92, 100, and 104], and the continuing arguments on standing and mootness in propositions I and III of his initial brief submitted to the Eighth Circuit on July 27, 2018, in his reply brief submitted to the Eighth Circuit on October 5, 2018[1], and at oral argument on April 26, 2019, as well as his continued repetition of the same arguments in his most recent brief to this Court.

    II.  <u>Many of the statements made in Defendant's objection and response to request for attorney fees and supporting brief [ECF Nos. 112 and 113] are wrong, inaccurate, show a misunderstanding of the law, engage in speculation, and are not backed up by facts.</u>

The extent of the problems created by Defendant's objection and response and supporting brief objecting to Plaintiff's request for attorney fees necessitate a list of what exactly is wrong with Defendant's statements and argument. First, Defendant complains in paragraph 2 of his objection and response to request for attorney fees about time spent in preparation of the May 27, 2018, affidavit of Mark Moore, preparation and filing of a

---

[1] It is interesting to note that both of the briefs filed by the Defendant in the *Moore v. Thurston* case before the Eighth Circuit on July 27, 2018, and October 5, 2018 (before the challenged election laws were amended in Arkansas in February of 2019), never cited even once the previous Eighth Circuit decision in *Moore v. Martin*, 854 F.3d 1021 (8th Cir. 2017).

4

motion to substitute party defendant, and receiving an order from the court on withdrawal of counsel and substitution of party. Since all of the foregoing was necessary to respond to a motion filed by Defendant—which was denied by the Court, or as to a change in the office of Secretary of State and the withdrawal of one of Defendant's counsel, Plaintiff would submit that the aforesaid work was necessary and Defendant's objection is without merit and borders on the frivolous. Defendant also claims that the $300.00 rate per hour has not been shown to be the prevailing rate in Little Rock. Plaintiff will deal with this more fully in propositions IV and V herein.

Next, paragraph 7 of Defendant's objection and response complains about out of state counsel's nontaxable costs and why they should be reduced because of Plaintiff's limited success at trial and the fact that Plaintiff did not demonstrate that out of state counsel was necessary. Plaintiff will also deal with this more fully in proposition IV of this brief. Also, in paragraph 8 of Defendant's objection and response, Defendant wants the attorney fee reduced because of the limited success at trial of Plaintiff. Since Plaintiff obtained both declaratory and injunctive relief, Defendant's assertion is extremely questionable and has no basis in fact. Plaintiff will also address this more fully in proposition III herein.

Paragraph 8 of Defendant's objection and response incorrectly states that Moore received an injunction for Lt. Governor based off of false statements, seems to imply that there is some significant difference between a statewide office and district office—when the only material difference for this case is the number of signatures required and the area where they can be collected in and complaints about Moore's affidavit. While Mr.

Moore's affidavit will be more fully discussed hereinbelow, and as noted hereinabove, the *Anderson v. Celebrezze, Id.* case, indicates that an unconstitutional deadline will not be saved by a lesser petition signature requirement, the District Court did not limit in its injunctive relief the Plaintiff to filing petitions for Lt. Governor only. Reading the specific wording of this Court's orders in this case shows that the Amended Order of April 30, 2018, stated in part that "Plaintiff may file his petition to run for office as an independent candidate, political practices pledge, affidavit of eligibility, and notice of candidacy on or before May 1, 2018." [ECF No. 96]. Similarly, the earlier orders of this Court on January 25, 2018, and January 31, 2018, both said in paragraph 38 that: "Plaintiff may file his petition to run for office as an independent candidate on or before May 1, 2018." [ECF Nos. 65 and 67]. Nowhere does the Court limit the independent candidacy to Lt. Governor. Further, paragraph 36 of both orders of this Court reads "The Court finds that the Arkansas election laws in question are unconstitutional as a violation of the First and Fourteenth Amendments to the United States Constitution and to 42 U.S.C. § 1983 to the extent they set an unnecessary March 1st deadline which is not narrowly drawn to serve a compelling state interest."

Defendant goes on to complain about Plaintiff Moore not collecting signatures for his candidacy in December of 2017. However, because there was no decision by the Court and petitioning is limited to 90 days, this complaint of the Defendant makes no sense. Plaintiff more fully explains the course of his actions in the affidavit discussed hereinbelow. Another mistake made by Defendant in his latest brief at page 5 is to incorrectly state that Plaintiff filed via proxy his paperwork and petition signatures for

State Senate District 3 on May 1, 2018, rather than the correct date of April 30, 2018. This is a small inaccuracy, but is just one of a number of greater inaccuracies throughout Defendant's pleadings.

In other portions of his brief, Defendant states on page 8 incorrectly that there was a "limited injunction" contingent upon Plaintiff's candidacy for Lt. Governor; on page 8 there is also an argument that because of an order re a state district candidate, the law of the case doctrine estops Moore from continuing this litigation after his change of legal position, and on page 9 a suggestion that because Frank Gilbert was a friend of Plaintiff, that he should have known sooner that he would be running as a Lt. Governor candidate for the Libertarian Party of Arkansas. The foregoing is not only incorrect, but not backed up by any case law and is particularly wrong as to the effect of an order as to a different Plaintiff on another Plaintiff. Finally, while Mr. Linger has represented the Libertarian Party of Arkansas in a previous case before this Court, and in a current case in this Court before Judge Baker (who on July 3, 2019 granted the Libertarian Party of Arkansas a preliminary injunction against a newly passed law), Mr. Linger is not otherwise the attorney for the Libertarian Party of Arkansas and does not know Frank Gilbert or his past or present political plans. Mr. Linger learned about Mr. Gilbert and his political intentions from Plaintiff Moore.

Next, Defendant's brief makes allegations of sham and fraud upon the Court on page 12, allegations of misrepresentation to the Court—along with allegations that Moore took a contrary position on page 13, and that Plaintiff Moore did not join necessary parties on page 15. The allegations of sham, fraud, and misrepresentation are totally false

and not backed up by any credible facts, but simply speculation and accusation. As to not joining necessary parties, this argument was first raised in Defendant's motion to dismiss and alternative motion for more definite statement and supporting brief filed herein on April 8, 2014 [ECF Nos. 6 and 7]. This motion was denied and there is no substance to the argument that other defendants should have been brought into the case. Further, not only were such witnesses not called to testify as to why they were necessary, but no court was convinced there were missing defendants.

Also, Defendant's brief on pages 16 and 17 makes a strawman argument that is not true that Plaintiff is somehow arguing for a different community standard for attorney fee rates than exists in Little Rock, Arkansas. Plaintiff and his counsel are perplexed why Defendant would state this since the attorney fee rates for Tulsa and Little Rock seem to be similar and Plaintiff made no argument to the contrary. Further, Defendant argues on page 17 of his brief that Plaintiffs deliberate actions throughout the case created numerous complications and that it did not take any particular expertise to file "shotgun pleadings". In actuality, if there was any complication in this case, it came from the filing of numerous unsuccessful pleadings by Defendant, unsuccessful pleadings in the Eighth Circuit and Supreme Court of the United States, and numerous exhibits offered which were not particularly material to the issues to be decided by the Court. Similarly, it is suggested to the Court that it is not Plaintiff who has filed "shotgun pleadings" in this case.

An additional point to be brought up is Plaintiff's statements and argument on pages 17 and 18 of his brief which seems to Plaintiff to be arguing that a $1,750.00

retainer for attorney fees and costs is some sort of representation that Mr. Linger considered the case a long shot (which he did not). $1,750.00 is not a significant retainer when one must pay a District Court filing fee, a transcript fee of the summary judgment hearing, the filing fee for the first appeal to the Eighth Circuit, brief and joint appendix printing and binding for the appeal, the cost of binding and copying a brief in opposition to a petition for writ of certiorari to the U.S. Supreme Court, the cost of printing and binding a brief for the second appeal, and other related costs, including travel expenses and lodging. However, Defendant seems to be implying that the $1,750.00 retainer for attorney fees and costs is significant. Frankly, Plaintiff and his counsel are really not sure what Defendant's argument is here.

Finally, because Defendant makes such a to-do about Plaintiff Moore's affidavit, Plaintiff will note its significance. The affidavit of Plaintiff Moore of May 27, 2018, which was filed on May 31, 2018 [ECF No. 101-1], was done to respond to the Defendant's Motion to Vacate the Judgment as Moot and Brief in Support filed on May 18, 2018. The Affidavit of Plaintiff Moore, at ¶ 1, shows the change in circumstances which can occur for an independent candidate for office like Plaintiff Moore (Affidavit ¶ 2), and why he chose to run for State Senator pursuant to the injunctive relief granted him by the District Court (Affidavit p.2, ¶ 2). Plaintiff Moore specifically set forth why he had done that in ¶¶ 2-8 of his Affidavit. It was clear that Plaintiff Moore had purchased a list of voters' files from the Secretary of State's office in July of 2017 for the whole State of Arkansas and was still considering petitioning to run for Lt. Governor at the time of the bench trial on December 12, 2018. (Affidavit p.4, ¶ 7). Contrary to numerous

9

assertions and suggestions in Defendant's latest brief, this Court's orders of January 25 and 31, 2018, and April 30, 2018, refer to the Plaintiff being allowed to file his petitions and other related papers as an independent candidate without specifying a particular office. As Plaintiff stated in paragraph 9 of his Affidavit:

> Now that the law has been declared unconstitutional for Independents filing their petitions and other papers as of March 1 of the election year, and a later date of May 1 of the election year being approved for future elections, my intent to be an independent candidate in Arkansas in a future election will not be subject to the delays and uncertainties caused by the actions of the Secretary of State and the time necessary to have the issues fully litigated in both the trial court and the court of appeals.

Defendant has unjustly accused Plaintiff Moore, who is an honorable man, has done the best he could under difficult circumstances which changed over time, and has through litigation gotten an unconstitutional law struck down and eventually amended this February by the Arkansas General Assembly. Plaintiff can only understand Defendant's actions as the result of a continued misunderstanding as to the difference between standing and mootness as well as the fact that even the ending of specific injunctive relief and the coercive feature of the judgment having gone out of the case, the declaratory judgment of unconstitutionality does not become moot. *MacBride v. Exon*, 558 F.2d 443, 449-450 (8th Cir. 1977).

    III.   <u>The District Court has discretion in awarding attorney fees in considering such factors as degree of success and whether there has been duplication of work effort.</u>

The Eighth Circuit Court of Appeals has stated that plaintiffs that are considered prevailing parties in litigation should be awarded reasonable attorney fees and the 1976 Civil Rights Attorney Fee Act is designed to encourage private enforcement of the public

interest and should be liberally construed to achieve the public purposes involved in the congressional enactment. *Keup v. Hopkins*, 596 F.3d 899 (8th Cir. 2010); *Warnock v. Archer*, 380 F.3d 1076 (8th Cir. 2004); *Cody v. Hillard*, 304 F.3d 767 (8th Cir. 2002); and *Jacobson v. City of Coates*, 171 F.3d 1163 (8th Cir. 1999). "The Supreme Court has held that a 'prevailing' party is one that receives at least some relief on the merits of its claim." [citing, *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980)] [and] "[o]nly 'when a party has prevailed on the merits of at least *some* of his claims . . . has there been a determination of the 'substantial' rights of the parties'"). The United States Supreme Court has noted that a plaintiff is a prevailing party where he "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefits the parties sought in bringing suit.'" *State Teachers Asn'n. v. Garland Indep. Sch. Dist*, 489 U.S. 782, 791-792 (1989), citing *Nadeau v. Helgemoe*, 581 F.2d 275, 278-279 (1st Cir. 1978). Also see, *Hensley v. Eckerhart*, 461 U.S. at 433.

Contrary to the assertions of the Defendant in his latest brief, Plaintiff Moore was not partially successful. Plaintiff Moore achieved both the declaratory relief sought of having the March 1 deadline declared unconstitutional, as well as the injunctive relief he requested to allow him until May 1 to file his independent petitions and related candidacy papers.[2] Plaintiff Moore was 100% successful in having a March 1 petition deadline for independent candidates declared unconstitutional and in receiving the benefit of

---

[2] In the *Libertarian Party of Arkansas v. Martin* case, this Court denied injunctive relief to the Plaintiffs and only granted declaratory relief. *Libertarian Party of Arkansas v. Martin*, Case No. 4:15-cv-635 JM (E.D. Ark. 2016), dismissed as moot but affirmed as to attorney fees and costs award, *Libertarian Party of Arkansas v. Martin*, 876 F.3d 948, 952 (8th Cir. 2017). In contrast, in the instant case the District Court awarded both declaratory relief and injunctive relief. Therefore, Plaintiff Moore is prevailing party for purposes of granting attorney fees and costs.

injunctive relief from the District Court. While the Defendant's appeal was dismissed as moot after briefs were filed with the Eighth Circuit, because the laws in question were changed to set a new deadline of May 1 of the election year, the decision of the District Court was not vacated and was allowed to stand by the Eighth Circuit. *Moore v. Thurston, Id.*, pp. 6-7. In fact, the significance and importance of the case is borne out by the fact that the U.S. Court of Appeals for the Eighth Circuit denied the Defendant Secretary of State's request that the Eighth Circuit vacate the District Court's judgment, and took the unusual step of letting the District Court's decision and judgment to stand. "In considering the public interest, we recognize that judicial precedents are 'presumptively correct and valuable to the legal community as a whole' and generally should be permitted to stand." *Moore v. Thurston, Id.*, p. 7, citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'Ship*, 513 U.S. 18, at 26 (1994) *(*quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting). As the Eighth Circuit went on to state as to its reasons for refusing vacatur:

> We conclude that the equities weigh against vacatur. Although we have not explicitly addressed the issue, our sister circuits have generally considered legislation to be an "intervening, independent event and not voluntary action, particularly when the governmental entity taking the appeal . . . is not part of the legislative branch." *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 452 (1st Cir. 2009) (gathering cases). But even if the Secretary is not at fault for the mootness here, the public interest weights in favor of allowing the district court's judgment to stand. As we previously observed in *Moore*, 854 F.3d at 1026, independent candidates and voters have repeatedly—and successfully—challenged Arkansas's ballot-access requirements. We thus conclude that the public interest is best served by a substantial body of judicial precedents limiting the burden that those requirements may place on candidates' and voters' First and Fourteenth Amendment rights. *Moore v. Thurston, Id.*

Because of the importance of judicial precedents and the public interest, Plaintiff Moore requests the District Court to submit to West Publishing its decision of last year herein for publication in the Federal Supplement 3d.[3]

> IV. The $300 per hour attorney fee request for work in this case, along with $250 per hour for travel, for Mr. Linger, is reasonable as supported by evidence in the case and this Court's prior decision in *Libertarian Party of Arkansas v. Martin*.

Defendant actually objects to Mr. Linger's request for $300.00 per hour for regular work done in the case by claiming that the record does not support it. Further, Defendant seems to be insinuating that Mr. Linger is requesting an attorney fee rate which is higher because he is using the attorney fee rates for Tulsa, Oklahoma, rather than Little Rock, Arkansas. Plaintiff Moore is at a loss as to why the Defendant has made the foregoing assertions since there is evidence in the record in another case justifying the $300.00 per hour regular rate and $250.00 per hour travel rate for Mr. Linger, there is nothing in the record to the contrary that has been presented by Defendant, and Plaintiff is not asserting any request for a higher rate based on Tulsa attorney fees as opposed to Little Rock attorney fees since it seems that the attorney fee hourly rates for Tulsa and Little Rock are compatible and essentially the same. In regard to Defendant's objections to Mr. Linger's $300.00 per hour rate requested for most of his work, and $250.00 per hour rate for travel time, Plaintiff Moore would point the Court to this Court's decision on September 12, 2016, in the district court case of *Libertarian Party of Arkansas v. Martin*, Case No. 4:15-cv-00635 JM (E.D. Ark. 2016) [ECF No. 65], which found the aforesaid $300.00 per

---

[3] Considering the Eighth's Circuit's denial of the request for vacatur on July 1, 2019, Plaintiff Moore would request that the District Court's orders of January 25, 2018, as corrected on January 31, 2018, and the Amended Order of April 30, 2018 [ECF Nos. 67, and 96], be submitted for publication in the Federal Supplement 3rd.

13

hour regular rate and $250.00 per hour travel rate appropriate and reasonable as to Mr. Linger. This Court specifically stated: "Mr. Linger charged $300.00 per hour for the hours he spent working on the case and $250.00 per hour for his travel time." *Libertarian Party of Arkansas v. Martin*, Case No. 4:15-cv-635 JM, Docket No. 65, p. 1. As this Court further stated in its order of September 12, 2016, on attorney fees and costs in the case of *Libertarian Party of Arkansas v. Martin*, Case No. 4:15-cv-635 JM, at ECF No. 65, page 3:

> As stated above, the Court finds Plaintiffs substantially advanced their interests by succeeding on their constitutional claim. The constitutional issues involved were difficult. Few attorneys had the expertise in this area of the law or the willingness to take on such a case. Mr. Linger deducted a total of 43.1 hours from his work hours based upon the fact that Plaintiffs did not receive the injunctive relief requested in the complaint. For these reasons, the Court finds Mr. Linger's hourly fee and the number of hours billed to be reasonable.[4]

Of further note, this Court's aforesaid decision as to attorney fees and costs was affirmed by the U.S. Court of Appeals for the Eighth Circuit on November 30, 2017. *Libertarian Party of Arkansas v. Martin*, 876 F.3d 948, 952-953 (8th Cir. 2017). Additionally, on December 29, 2017, the Eighth Circuit in the aforesaid *Libertarian Party of Arkansas* case ordered Appellee's Motion for Costs and Attorney Fees granted in the respective amounts of $166.22 and $14,040.00 (see Plaintiff's Exhibit "8", previously presented herein, Order of the Eighth Circuit in the case of *Libertarian Party*

---

[4] In the instant case, Mr. Linger deducted 25.2 hours from his total hours worked on the case in the original attorney fee motion and 3.0 hours from his total hours worked on the case in the supplemental attorney fee motion, for a total number of deducted (no charge) hours of 28.2, reduced his hourly rate of $300.00 per hour to $150.00 an hour for 8.8 hours for work done relating to Plaintiffs' motion for summary judgment, briefs, and related matters and pleadings, charged $250.00 per hour for his necessary travel time, and requested nothing for his work on the second appeal in the Eighth Circuit or for the preparation of the instant response and memorandum brief.

14

*of Arkansas* v. *Martin*). The aforesaid appellee attorney fee was also requested at the $300.00 per hour rate amount.

Finally, Defendant seems to imply that Plaintiff Moore is requesting a higher hourly rate based on higher attorney fee rates in regard to Tulsa, Oklahoma, as compared to Little Rock, Arkansas. There are two problems with what Defendant seems to be implying. First, Plaintiff Moore is not requesting a supposed higher rate charged in Oklahoma. There is nothing in the record that indicates a higher rate existing in Oklahoma as opposed to Arkansas. In fact, Plaintiff Moore is not aware of any such disparity. Secondly, as Mr. Rosenzweig noted in his Affidavit (see Plaintiff's Exhibit "1" previously presented herein), his normal hourly rate is $300.00 per hour as an attorney in Little Rock, Arkansas, which would indicate there is, in fact, no difference in Mr. Linger's requested rate and Mr. Rosenzweig's normally requested rate. Therefore, there is ample evidence in the record justifying a $300.00 per hour normal rate for work done by Mr. Linger and $250.00 for necessary travel time for Mr. Linger. Defendant has presented nothing to the contrary. Because of the foregoing, the trial court is in a position to determine the appropriate hourly rate for the attorneys involved herein.

> V. <u>Mr. Rosenzweig's request for $250 per hour for his hours worked as local counsel in the instant case are reasonable and not the result of work duplication.</u>

Defendant has failed to show that Mr. Rosenzweig's work hours requested on the case were duplications. The duties of a local counsel are a necessary part of the case and are required by the local rules of this Court when the lead counsel is from another state and is admitted *pro hac vice*. If Defendant's request of denying or substantially reducing

15

Mr. Rosenzweig's fee request was followed, it could not help but have a negative effect on the retention of local counsel who only expect a reduced rate of compensation and do a good job in assisting lead counsel. As stated before, Mr. Rosenzweig's requested hourly rate and work hours complained of by Defendant, are the result of Mr. Rosenzweig not claiming numerous hours reviewing documents and pleadings, and only partially claimed certain time spent on the phone, email, etc. More importantly, the fact that despite having a normal hourly rate of $300.00 an hour, Mr. Rosenzweig requested a reduced hourly rate of $250.00 an hour, despite having been an attorney for over 41 years and having experience in other election cases. Mr. Rosenzweig said on page 2, ¶ 6, of his affidavit (Plaintiff Moore's Exhibit "1"), that he did so ". . . because of my inferior and assisting status on this case . . . ." However, because of his reduction in his hourly rate and the non-inclusion of much time he was required to spend in his duties as local counsel, Mr. Rosenzweig's request for attorney fees is reasonable.

VI.   Conclusion.

In the instant case, after the partial reversal in the Eighth Circuit, the Eighth Circuit's decision to deny the Defendant Secretary's Motion to Stay and Recall the Eighth Circuit's decision, and then the denial by the U.S. Supreme Court of the Defendant Secretary's Petition for Writ of Certiorari, the Plaintiff Moore prevailed after the trial on remand because the District Court declared the election laws in question unconstitutional as to setting an unnecessary March 1 deadline for Independent candidate petitions and granted Plaintiff Moore the injunctive relief he requested. Therefore, Plaintiff Moore should be awarded his attorney fees and costs for work done by his

attorneys in the District Court both before and after the first appeal, as well as his attorney fees for the work done by his attorney before the Eighth Circuit and the Supreme Court of the United States as to the first appeal, since Plaintiff Moore is now the prevailing party.

WHEREFORE, Plaintiff Moore respectfully requests the relief prayed for in his original Motion to Set Amount of Reasonable Attorney's Fees, Bill of Costs, and his Supplemental Motion to Set Amount of Reasonable Attorney's Fees.

Respectfully submitted this 31st day of July, 2019.

Mark Moore, Plaintiff

/s/ James C. Linger
James C. Linger, OBA No. 5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797 Telephone
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com

Jeff Rosenzweig, AB No. 77115
300 Spring Street, Suite 310
Little Rock, Arkansas 72201
(501) 372-5247 Telephone
(501) 376-0770 Facsimile
jrosenzweig@att.net

*Counsel for Plaintiff Mark Moore*